

FILED

DEC 0 8 2005

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

THOMAS L. REMPFER
3811 Phelps Road
West Suffield, CT 06093

and

JANE DINGLE as Executor for the
Estate of RUSSELL E. DINGLE
71 Shaughnessy Drive
East Hartford, CT 06118

    Plaintiffs,

v.

U.S. DEPARTMENT OF AIR FORCE
BOARD FOR CORRECTION OF
MILITARY RECORDS
SAF/MRBR 550-C Street West, Suite 40
Randolph AFB, TX 78150-4742

and

U.S. DEPARTMENT OF AIR FORCE
Washington, D.C. 20330

and

U.S. DEPARTMENT OF DEFENSE
Washington, D.C. 20301

and

UNITED STATES OF AMERICA

    Defendants.

CASE NUMBER   1:05CV02350

JUDGE: James Robertson

DECK TYPE: Administrative Agency Rev

DATE STAMP: 12/08/2005

## COMPLAINT

Plaintiffs Thomas L. Rempfer and Russell E. Dingle (now deceased and represented through his Estate Executor, Jane Dingle), were both former officers and pilots with the Connecticut Air National Guard. They were forced to resign their positions after being

ordered to take the anthrax vaccine and to avoid unfair punishment. Those orders were unlawful due to the illegal status of the vaccine.

Plaintiffs seek relief pursuant to the Administrative Procedures Act, 5 U.S.C. § 702, et seq., 10 U.S.C. § 1552, the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 and the All Writs Act, 28 U.S.C. § 1651.

## PARTIES

1. Thomas L. Rempfer ("Rempfer") was a Captain and pilot in the Connecticut Air National Guard until he was forced out due to the Department of Defense's anthrax vaccine policy.

2. Russell E. Dingle ("Dingle"), who died in September 2005 and is represented by Jane Dingle as the Executor of his Estate, was a Major and pilot in the Connecticut Air National Guard until he was forced out due to the Department of Defense's anthrax vaccine policy.

3. The defendant U.S. Department of the Air Force's Board for Correction of Military Records ("AFBCMR") is part of the defendant U.S. Department of Air Force, an agency within the defendant Department of Defense ("DoD") and the United States Government. The DoD implemented the Anthrax Vaccination Immunization Program ("AVIP") that led to the issuance of unlawful orders by the Connecticut Air National Guard ("CT ANG").

## JURISDICTION AND VENUE

4. Jurisdiction and venue is proper in this Court under the Administrative Procedures Act, 5 U.S.C. § 702, the Declaratory Judgment Act, 28 U.S.C. § 2201, and under 28 U.S.C. §§ 1331, 1346.

2

## BACKGROUND

5. In December 1997, DoD announced a multi-service vaccination program for all active duty, Reserve and National Guard service members using the Anthrax Vaccine Adsorbed ("AVA") as a preventative for inhalation anthrax.

6. In or around March 1998, upon orders issued by the DoD, the AVIP began. The CT ANG was one of the first National Guard Units in the United States to have its members face inoculation with the anthrax vaccine.

7. As part of the AVIP, Rempfer and Dingle were ordered to submit to involuntary anthrax vaccinations. Refusing to comply with orders to take the AVA inoculations subjected servicemembers to military disciplinary actions, including courts-martial or administrative discharges.

8. In September 1998, the CT ANG Fighter Wing Commander (FW/CC), Col Walter Burns, officially tasked Rempfer and Dingle, as members of what was called "Tiger Team Alpha", to investigate the AVIP in order to allay unit concerns. At the time, and during all relevant times, Col Burns held the unique status as a federal active duty Air Force officer commanding the first state Guard unit to implement the federal AVIP mandate.

9. Tiger Team Alpha's charter was to research the safety, efficacy and legality of the anthrax vaccine, and report findings to chain of command, so that Col Burns could relay any concerns to Higher Headquarters (HHQ). Over the ensuing months Tiger Team Alpha questioned the "off label" and the "investigational" and "experimental" use of the vaccine without providing "informed consent" as required by applicable DoD regulations and United States law. Col Burns took the input and "condensed it into a memo" and sent

3

it "to MGen Weaver and BGen McKinley, who were the Director and the Deputy Director [of the Air National Guard] at the time." Col Burns later told DoD investigators that he was "not equipped to answer the issues and the questions that [were] outlined in [the] attachment," and asked for HHQ: "Please give me some help." In this memo to HHQ Col Burns acknowledged that an "official government position on some of their issues does not exist."

10. Despite the unanswered questions, Col Burns referred to anyone questioning the AVIP as "hardliners." Col Burns also verbally and publicly communicated intolerance toward anyone who questioned the DoD's policy. He even used the term "traitor", which was captured on film, for those who would not take the vaccine.

11. In December 1998, pilots that expressed concerns about the AVIP were encouraged to leave the unit ASAP, or their fate might be out of their commander's hands. Rempfer was also relayed this threat by the 103rd FW Vice Commander, Col Daniel Scace, from the CT Adjutant General that officers would never serve in the military again if they caused any problems regarding challenging the anthrax vaccine mandate.

12. Unit leaders issued a policy letter establishing a deadline of the January Unit Training Assembly (UTA, or "drill") to submit to the vaccine. Any CT ANG pilot that did not comply with the anthrax vaccine mandate was grounded and their resignations ordered by Col Burns. Those that spoke publicly were also ordered to resign via phone calls to their homes on January 22, 1999.

13. Both Remper and Dingle were thus forced to resign their commissions as CT ANG officers as a direct result of the anthrax vaccine controversy. Although they

4

resisted, they were constructively discharged. But for the anthrax vaccine, Rempfer and Dingle (had he lived) would still be officers in the CT ANG today. In fact, a Connecticut State Commission later issued a finding of fact that Rempfer and Dingle were ordered to resign following their Tiger Team Alpha duties.

14. During and after the time Rempfer and Dingle were forced out of the CT ANG, Col Burns and other top CT ANG commanders continued to defame their character. Slanderous accusations, communicated to enlisted personnel in the unit, included terms such as "cowards." Other allegations characterized Tiger Team Alpha's well-researched findings as "propaganda," originating from "Nazi websites." One of the CT ANG leaders even published an article in a local newspaper, the *Journal Inquirer*, denigrating the officer's actions and claiming they did "not uphold their oath."

15. By April 1999, both Rempfer and had been officially forced out of the CT ANG simply because of their stance against the anthrax vaccine, and their refusal to be inoculated under the guise of a patently illegal order.

16. On December 22, 2003, the Honorable Emmet Sullivan of the U.S. District Court for the District of Columbia issued a Preliminary Injunction on the basis that "because the record is devoid of an FDA decision on the investigational status of AVA ... [it] is persuaded that AVA is an investigational drug and a drug being used for an unapproved purpose. As a result of this status, the DoD is in violation of 10 U.S.C. § 1107, Executive Order 13139, and DoD Directive 6200.2."

17. On October 27, 2004, Judge Sullivan issued a permanent injunction and ruled that "Unless and until FDA properly classifies AVA as a safe and effective drug for its intended use, an injunction shall remain in effect prohibiting defendants' use of AVA on

the basis that the vaccine is either a drug unapproved for its intended use or an investigational new drug within the meaning of 10 U.S.C. § 1107. Accordingly, the involuntary anthrax vaccination program, as applied to all persons, is rendered illegal absent informed consent or a Presidential waiver."

18. Thus, at the time Rempfer and Dingle, and others of the CT ANG, were ordered to take the anthrax vaccinations, such order was facially unlawful. Therefore, Rempfer and Dingle were illegally and unfairly forced out of the CT ANG.

19. Both Rempfer and Dingle requested specific relief from the AFBCMR. Rempfer's case was submitted by letter March 20, 2004, and assigned Docket #BC-2004-00944, and Dingle filed his case by letter dated March 29, 2005 and was assigned Docket #BC-2005-01103.

20. Rempfer's request was denied by the AFBCMR by letter dated April 25, 2005, without addressing substantiated allegations of coercion and the legality of the chain of command's orders for resignations. No decision has been rendered in Dingle's case.

## FIRST CAUSE OF ACTION
### (VIOLATION OF ADMINISTRATIVE PROCEDURE ACT)

21. Plaintiffs reallege the facts in Paragraphs 1 through 20 as if fully set forth in this Count.

22. The United States Government, acting through the DoD and CT ANG, violated a federal statute, namely 10 U.S.C. § 1107, as well as Executive Order 13139 and DoD Directive 6200.2, when it illegally required the plaintiffs to submit to anthrax vaccinations.

23. The Defendants' failure to follow federal law, a presidential executive order and regulations creates a legal wrong against the Plaintiffs.

6

24. As a result of the defendants' unlawful actions, the plaintiffs suffered damages including, but not limited to, being forced out of the CT ANG and all associated financial losses incurred as a result.

## SECOND CAUSE OF ACTION
## (VIOLATION OF ADMINISTRATIVE PROCEDURE ACT)

25. Plaintiffs reallege the facts in Paragraphs 1 through 20 as if fully set forth in this Count.

26. Rempfer sought relief from the AFBCMR by letter DATE and his case was assigned Docket #BC-2004-00944. The AFBCMR denied Rempfer any relief by letter dated April 25, 2005. The AFBCMR's decision was arbitrary, capricious, contrary to law, or unsupported by the evidence. It either relied on factors which Congress had not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for the decision that runs counter to the evidence before the agency, and/or was so implausible that it could not be ascribed to a difference in view of the product of agency expertise.

27. Dingle filed his request for relief with the AFBCMR by letter dated March 29, 2005 and it was assigned Docket #BC-2005-01103. The AFBCMR has unreasonably delayed issuing any decision.

28. As a result of the AFBCMR's action or inaction, Rempfer and Dingle have suffered harm.

## THIRD CAUSE OF ACTION
## (DECLARATORY JUDGMENT ACT)

29. Plaintiffs reallege the facts in Paragraphs 1 through 20 as if fully set forth in this Count.

30. This case involves an actual controversy surrounding the legality of the AVIP.

31. The United States Government, acting through the DoD and CT ANG, violated a federal statute, namely 10 U.S.C. § 1107, as well as Executive Order 13139 and DoD Directive 6200.2, when it illegally required the plaintiffs to submit to anthrax vaccinations.

32. As a result of the defendants' unlawful actions, the plaintiffs suffered damages including, but not limited to, being forced out of the CT ANG and all associated financial losses incurred as a result.

WHEREFORE, Plaintiffs respectfully ask this Court to:

A. Reverse and remand Rempfer's case to the Air Force Board for Correction of Military Records for further proceedings;

B. Order the Air Force Board for Correction of Military Records to issue a decision in Dingle's case;

C. Order the defendants to provide any appropriate compensation;

D. Find and declare that AVA, as it is/was being used by DoD and the CT ANG, is/was an investigational new drug within the meaning of 10 U.S.C. § 1107, Executive Order 13139 and DoD Directive 6200.2;

E. Find and declare that AVA was in investigational new drug status when the DoD and CT ANG were requiring the plaintiffs to receive AVA inoculations;

F. Find and declare that any order issued by DoD and/or CT ANG requiring the plaintiffs to receive inoculation with AVA was unlawful on its face; and

G. Find and declare that the orders issued to Rempfer and Dingle to resign were unlawful; and

H. Award Plaintiffs their costs and attorneys' fees and any other relief this Court may find appropriate.

Date:  December 8, 2005

Respectfully submitted,

/s/ Mark S. Zaid

Mark S. Zaid, Esq.
D.C. Bar #440632
Krieger & Zaid, PLLC
1920 N Street, N.W., Suite 300
Washington, DC 20036
(202) 454-2809
(202) 293-4827 fax
ZaidMS@aol.com

Attorney For The Plaintiffs