UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____

|  |  |
|---|---|
| THOMAS L. REMPFER, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| UNITED STATES DEPARTMENT | ) |
| OF THE AIR FORCE BOARD FOR THE | ) |
| CORRECTION OF MILITARY RECORDS, *et al.*, | ) |
| | ) |
| Defendants. | ) |

Civil Action No. 05-2350 (JR)

_____

## DEFENDANTS' MOTION TO DISMISS

Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), defendants hereby

move the Court to dismiss plaintiffs' Complaint with prejudice.  The bases for this Motion are

set forth in the accompanying Memorandum.

Dated:  March 12, 2007          Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General
JEFFREY A. TAYLOR
United States Attorney
VINCENT M. GARVEY
Deputy Branch Director


_____/s/_____
Jonathan E. Zimmerman (MA Bar #654255)
Trial Attorney – U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., N.W., Room 6134
Washington, D.C., 20001
Telephone: (202) 353-0441 / Fax: (202) 318-7610
jonathan.zimmerman@usdoj.gov
*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

|  |  |  |
|---|---|---|
| THOMAS L. REMPFER, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Civil Action No. 05-2350 (JR) |
| v. | ) | |
| | ) | |
| UNITED STATES DEPARTMENT | ) | |
| OF THE AIR FORCE BOARD FOR THE | ) | |
| CORRECTION OF MILITARY RECORDS, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

_____

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

JEFFREY A. TAYLOR
United States Attorney

VINCENT M. GARVEY
Deputy Branch Director

JONATHAN E. ZIMMERMAN (MA Bar #654255)
Trial Attorney – U.S. Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Ave., N.W., Room 7116
Washington, D.C., 20001
Telephone: (202) 353-0441 / Fax: (202) 318-7610
jonathan.zimmerman@usdoj.gov
*Attorneys for Defendants*

## TABLE OF CONTENTS

PAGE(S)

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

FACTUAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

STATUTORY, REGULATORY, AND OTHER BACKGROUND . . . . . . . . . . . . . . . . . . . . . . 6

I.    THE AFBCMR . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

II.   LEGAL CHALLENGES TO THE ANTHRAX VACCINATION
      PROGRAM . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

      A.    *Doe v. Rumsfeld* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

      B.    Other Legal Challenges To The AVIP . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

III.  PLAINTIFFS' PREVIOUS LITIGATION BEFORE THE COURT
      OF FEDERAL CLAIMS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

I.    LEGAL STANDARDS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

II.   PLAINTIFFS' FIRST AND THIRD CAUSES OF ACTION MUST
      BE DISMISSED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

      A.    Plaintiff's First and Third Causes of Action Must Be Dismissed
            As They Fall Outside The Applicable Statute of Limitations . . . . . . . . . . . . . . 14

      B.    Plaintiffs' Claims For Damages In the First And Third Causes
            Of Action Must Also Be Dismissed . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

            1.    Plaintiffs Have Failed To Establish A Little Tucker
                  Act Claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

            2.    Plaintiffs' Claims For Damages Are Barred By The
                  Applicable Statute of Limitations . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

III.  PLAINTIFFS' FIRST AND THIRD CAUSES OF ACTION MUST
      BE DISMISSED BECAUSE PLAINTIFFS' LACK STANDING TO
      BRING THOSE CLAIMS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

      A.   Plaintiffs Lack Standing To Bring Claims Under Their First
           And Third Causes Of Action Because Their Alleged Injuries
           Are Not Fairly Traceable To Defendants . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

           1.   Plaintiffs Voluntarily Resigned Thereby Themselves
                Causing Any Alleged Injury Resulting From Their
                Discharge From The CTANG . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

           2.   The State Of Connecticut, Not Defendants, Caused Any
                Alleged Injury Related To Plaintiffs' Discharge From
                The CTANG . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

                a.   The Court Of Federal Claims Holding That Plaintiffs
                     Were State Employees Has *Res Judicata* Effect . . . . . . . . . . . . . 26

                b.   Even If The Court Of Federal Claims' Decision Is Not
                     Given Preclusive Effect, This Court Should Conclude
                     That Plaintiffs Were State Employees At The Time They
                     Were Discharged . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

IV.  PLAINTIFFS' SECOND CAUSE OF ACTION MUST BE DISMISSED BECAUSE TO
      THE EXTENT IT CHALLENGES PLAINTIFFS' DISCHARGES IT IS TIME BARRED
      AND BECAUSE TO THE EXTENT IT IS NOT TIME BARRED PLAINTIFFS HAVE
      FAILED TO STATE A CLAIM . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

      A.   To The Extent Plaintiffs' Challenge To The AFBCMR's Decision Constitutes A
           Direct Challenge To Their Underlying Discharges, Plaintiffs' Claims Are Time
           Barred . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

      B.   Plaintiffs' Claims Pursuant To The APA Fail Because Defendant
           AFBCMR Did Not Act Arbitrarily, Capriciously Or In Contravention
           Of Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

           1.   The AFBCMR Did Not Act Arbitrarily, Capriciously, Or
                In Violation Of Law In Denying Plaintiff Rempfer's
                Application . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

2.   The AFBCMR Did Not Act Arbitrarily, Capriciously, Or
        In Violation Of Law In Denying Plaintiff Dingle's Application  . . . . . . 43

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45

# TABLE OF AUTHORITIES

**CASES**                                                                              **Page(s)**

Allen v. Wright,
    468 U.S. 737 (1984) ............................................................................. 22, 23, 26

Am. Bioscience, Inc., v. Thompson,
    269 F.3d 1077 (D.C. Cir. 2001) ........................................................ 14

Amato v. Chafee,
    337 F. Supp. 1214 (D.D.C. 1972) .................................................... 34

Amoco Production Co. v. Watson,
    410 F.3d 722 (D.C. Cir. 2005) .......................................................... 33

Auction Co. of America v. F.D.I.C.,
    132 F.3d 746 (D.C. Cir. 1997) .......................................................... 21

Bates v. Rumsfeld,
    271 F. Supp. 2d 54 (D.D.C. 2002) .................................................... 41

Bittner v. Sec'y of Defense,
    625 F. Supp. 1022 (D.D.C. 1985) ............................................... 17, 32

Brown v. United States,
    30 Fed. Cl. 227 (1993) ...................................................................... 25

Caesar v. United States,
    258 F. Supp. 2d 1 (D.D.C. 2003) ..................................................... 14

Carter v. Dep't of the Navy,
    2006 WL 2471520 (D.D.C. Aug. 24, 2006) ............................... 17, 32

Chevron Oil v. Huson,
    404 U.S. 97 (1971) ............................................................................ 41

Christie v. United States, 207 Ct. Cl. 333 (Cl. Ct. 1975) ............................................ 24

Ciralsky v. Central Intelligence Agency,
    355 F.3d 661 (D.C. Cir. 2004) .......................................................... 18

Clark v. United States,
   322 F.3d 1358 (Fed. Cir. 2003) ................................................ 28

Cone v. Caldera,
   223 F.3d 789 (D.C. Cir. 2000) ............................................ 34, 35

Conley v. Gibson,
   355 U.S. 41 (1957) ...................................................... 13

Cottrell v. United States,
   42 Fed. Cl. 144 (Fed. Cl. 1998) ......................................... 17

Croskey v. U.S. Office of Special Counsel,
   132 F.3d 1480 (Table) (D.C. Cir. 1997) ................................... 26

Daingerfield Island Protective Society v. Babbitt,
   40 F.3d 442 (D.C. Cir. 1994) ............................................ 21

Department of Navy v. Egan,
   484 U.S. 518 (1988) ..................................................... 22

Dingle v. BioPort Corp.,
   388 F.3d 209 (6th Cir. 2000) ............................................ 13

Doe v. Rumsfeld,
   297 F. Supp. 2d 119 (D.D.C. 2003) .................................. passim

Doe v. Rumsfeld,
   297 F. Supp. 2d 200 (D.D.C. 2004) .................................. passim

Doe v. Rumsfeld,
   341 F. Supp. 2d 1 (D.D.C. 2004) ................................... passim

Doe v. Rumsfeld,
   172 Fed. Appx. 327 (D.C. Cir. 2006) ............................... passim

Dozier v. Ford Motor Co.,
   702 F.2d 1189 (D.C. Cir. 1983) .......................................... 26

E.I. du Pont de Nemours & Co. v. Davis,
   264 U.S. 456 (1924) ..................................................... 33

Elmore v. Henderson,
   227 F.3d 1009 (7th Cir. 2000) ........................................... 18

Gallucci v. United States,
    41 Fed. Cl. 631 (1998) ........................................................ 25

Garcia v. United States,
    996 F. Supp. 39 (D.D.C. 1998) ............................................ 19

Gillett v. Dern,
    74 F.2d 485 (D.C. Cir. 1934) .............................................. 28

Gilliam v. Miller, 973 F.2d 760 (9th Cir. 1992) ........................... 30

Gilligan v. Morgan,
    413 U.S. 1 (1973) ............................................................... 22

Gnagy v. United States,
    634 F.2d 574 (Ct. Cl. 1980) ............................................... 28

Goldman v. Weinberger,
    475 U.S. 503 (1986) .......................................................... 22

Hoffman v. United States,
    266 F. Supp. 2d 27 (D.D.C. 2003) ..................................... 21

Kasap v. Folger Nolan Fleming & Douglas, Inc.,
    166 F.3d 1243 (D.C. Cir. 1999) ......................................... 26

Kendall v. Army Board For Correction of Military Records,
    996 F.2d 362 (D.C. Cir. 1993) ..................................... 15, 18

Kowal v. MCI Communications Corp.,
    16 F.3d 1271 (D.C. Cir. 1994) ........................................... 14

Kreis v. Secretary of the Air Force,
    866 F.2d 508 (D.C. Cir. 1989) ........................................... 34

Lebrun v. England,
    212 F. Supp. 2d 5 (D.D.C. 2002) ............................. 24, 32, 35

Lujan v. Defenders of Wildlife,
    504 U.S. 555 (1992) ..................................................... 21, 22

Marshall County Health Care Authority v. Shalala,
    988 F.2d 1221 (D.C. Cir. 1993) ...................................... 4, 14

Martinez v. United States,

333 F.3d 1295 (Fed. Cir. 2003) .................................................................. 17

Maryland v. United States,
    381 U.S. 41 (1965) ........................................................... 27, 28, 29

Marzares v. Dep't of the Navy,
    302 F.3d 1382 (Fed. Cir. 2002) .......................................... 11, 40, 41

Moody v. United States,
    58 Fed. Cl. 522 (2003) ........................................................... 24

Morris v. Manufacturers Life Ins. Co.,
    1997 WL 534156 (S.D. Ind. Aug. 6, 1997) ................................. 15

Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,
    463 U.S. 29 (1983) ................................................................. 34

Musengo v. White,
    286 F.3d 535 (D.C. Cir. 2002) .................................................. 35

Nat'l Tank Truck Carriers, Inc. v. EPA,
    907 F.2d 177 (D.C. Cir. 1990) .................................................. 34

Nat'l Treasury Employees' Union v. United States,
    101 F.3d 1423 (D.C. Cir. 1996) ................................................ 21

North Carolina v. FERC,
    112 F.3d 1175 (D.C. Cir. 1997) ................................................ 34

Novell, Inc. v. United States,
    109 F. Supp. 2d 24 (D.D.C. 2000) ....................................... 26, 27

O'Neil v. Secretary of the Navy,
    76 F. Supp. 2d 641 (W.D. Pa. 1999) ............................ 10, 11, 40, 41

Omnipoint Corp. v. FCC,
    78 F.3d 620 (D.C. Cir. 1996) ................................................... 34

Orloff v. Willoughby,
    345 U.S. 83 (1953) ................................................................. 22

Perpich v. Dep't of Defense,
    496 U.S. 334 (1990) ........................................................... 27, 28

Reale v. United States,
    529 F. 2d 533 (1976) ........................................................................... 37

Sawyer v. U.S., 18 Cl. Ct. 860 (Cl. Ct. 1989) ........................................ 37

Schultz v. Wellman,
    717 F.2d 301 (6th Cir 1983) ............................................................. 30

Smalls v. United States,
    471 F.3d 186 (D.C. Cir. 2006) .......................................................... 20

Soriano v. United States,
    352 U.S. 270 (1957) .......................................................................... 18

Spannaus v. U.S. Dept. of Justice,
    824 F.2d 52 (D.C. Cir. 1987) ............................................................ 15

Steel Co. v. Citizens for a Better Env't,
    523 U.S. 83 (1998) ........................................................................ 21,22

Teague v. Lane,
    489 U.S. 288 (1989) .......................................................................... 41

Tippett v. United States,
    185  F.3d 1250 (Fed. Cir. 1999) .................................................... 23, 24

Trudeau v. FTC,
    456 F.3d 178 (D.C. Cir. 2006) ............................................................ 4

U.S. ex rel. Dingle v. Bioport Corp.,
    544 U.S. 949 (2005) .......................................................................... 13

United States v. Kisala,
    64 M.J. 50 (C.A.A.F. 2006) ...................................................... 11, 12, 13

United States v. New,
    55 M.J. 95 (C.A.A.F. 2001) ............................................................... 40

United States v. Shearer,
    473 U.S. 52 (1985) ............................................................................ 22

United States v. Washington,
    57 M.J. 394 (C.A.A.F. 2002) ....................................................... 11, 40

Van Dresek v. Lehman,
    762 F.2d 1065 (D.C. Cir. 1985) ................................................. 19

Veitch v. England,
    471 F.3d 124 (D.C. Cir. 2006) ................................................. 23

Waters v. Rumsfeld,
    320 F.3d 265 (D.C. Cir. 2003) ................................................. 20

Zitser v. Walsh,
    352 F. Supp. 428 (D. Conn. 1972) ............................................. 31

## STATUTES

5 U.S.C. § 552 *et seq* ......................................................... 1, 15, 19

10 U.S.C. § 1107 .............................................................. 8, 9

10 U.S.C. 1552 ......................................................... 7, 33, 37, 43

28 U.S.C. § 1346 ........................................................... 2, 18,19

28 U.S.C. § 1491 ............................................................... 20

28 U.S.C. § 1651 ............................................................... 19

28 U.S.C. § 2201 .............................................................. 1,19

28 U.S.C. § 2401(a) ...................................................... *passim*

## REGULATIONS

32 C.F.R. § 865.2(c) ......................................................... 7, 36

32 C.F.R. §865.3(f)(1) .......................................................... 7

32 C.F.R. § 865.4(a) ........................................................ 7, 8, 37

## MISCELLANEOUS

S. Res. 278, 108th Cong (2003) ............................................. 36, 39

## INTRODUCTION

Despite voluntarily resigning from the Connecticut Air National Guard (CTANG) in 1999 and immediately transferring to the Air Force Reserves (AFR), plaintiffs now, more than six years later, bring suit against the United States Department of the Air Force Board For Correction of Military Records (AFBCMR), the United States Department of the Air Force (AF), the United States Department of Defense (DoD), and the United States, claiming that they were constructively discharged from the CTANG because they refused to be inoculated against exposure to anthrax.

Plaintiffs bring three claims, styled "causes of action" in their complaint. First, they allege the AF, DoD, and the United States, violated the Administrative Procedure Act (APA), 5 U.S.C. § 702, by ordering them to take the anthrax vaccine in violation of federal statutory and regulatory law. Compl. ¶¶ 21-24. Second, they claim that the AFBCMR acted arbitrarily, capriciously, or in violation of law, and thereby violated the APA, in denying plaintiff Rempfer's request for correction of his military records, and in delaying a decision on plaintiff Dingle's application for the same. Compl. ¶¶ 25-28. Finally, they claim the AF, DoD, and the United States violated federal statutory and regulatory law in ordering them to take the anthrax vaccine. This third claim, which is substantively identical to plaintiffs' first claim, is brought pursuant to the Declaratory Judgement Act, 28 U.S.C. § 2201. Plaintiffs seek a declaratory judgment that they were illegally ordered to take the anthrax vaccine in violation of federal statutory and regulatory law, remand to the AFBCMR, and unspecified damages and costs.

As explained below, all of plaintiffs' claims suffer from significant defects and should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) and (b)(6). The claims brought pursuant to the APA and the Declaratory Judgment Act in plaintiffs' First and Third Causes of Action have been filed out

1

of time, well after the applicable statute of limitations has run. Even if they had not been, plaintiffs lack standing to bring these claims because they voluntarily resigned from the CTANG. Even if they had not voluntarily resigned, plaintiffs' claims in their First and Third Causes of Action would still fail because, as the Court of Federal Claims has already ruled with respect to plaintiffs, any injury resulting from their discharges from the CTANG was caused by the State of Connecticut, not the federal government. Finally, plaintiffs' claims for damages set forth in their First and Third Causes of Action must be dismissed because plaintiffs have not properly pled a suit for damages under the Little Tucker Act, 28 U.S.C. § 1346, the sole basis upon which they could seek damages in this case, and even if they had, such claims are time barred.

Plaintiffs' claims against the AFBCMR, brought under their Second Cause of Action, must also be dismissed. As with plaintiffs' First and Third Causes of Action, to the extent plaintiffs challenge the AFBCMR's decision on the merits of their underlying discharges, their claims are time barred. Furthermore, the Court must also dismiss plaintiffs' Second Cause of Action for failure to state a claim upon which relief may be granted because the decision of the AFBCMR was not delayed with respect to plaintiff Dingle, nor was the AFBCMR's denials of both plaintiffs' applications arbitrary, capricious, or in violation of law.

Plaintiffs' claims under their First and Third Causes of Action concern only actions and decisions allegedly undertaken by the AF, DoD, and the United States, while plaintiffs' claims under their Second Cause of Action exclusively challenge the actions of the AFBCMR. Accordingly, this memorandum will first address plaintiffs' claims under their First and Third Causes of Action, and will then focus on plaintiffs' claims under their Second Cause of Action.

2

# FACTUAL BACKGROUND

This action is brought by two plaintiffs who, in the late 1990s, were pilots in the CTANG. Compl. ¶¶ 1, 2. Plaintiff Rempfer was a Captain, and plaintiff Dingle was a Major.[1] According to plaintiffs' complaint, in September 1998, the Wing Commander of their CTANG unit, Colonel Walter Burns (Col. Burns), announced a policy requiring all officers in the unit to receive inoculation against anthrax irrespective of their deployment status. Compl. ¶ 12. *See also* AR 0004TLR.[2] At that time, defendant DoD was engaged in vaccinating active duty personnel engaged in Southwest and Northeast Asia, as well as "early deploying forces." *Department of Defense Press Release* (May 22, 1998), *at*: http://www.defenselink.mil/Releases/Release.aspx?ReleaseID=1696 (attached as Exhibit 1). National Guard personnel were third-in-line for the vaccination after those groups. *Id.* As noted in a letter from the CTANG Safety Officer that plaintiff Rempfer submitted to the AFBCMR, under the DoD inoculation plan in 1998, only Air National Guard (ANG) pilots called up to federal service who would be in particular theaters for more than 30 days were required to be inoculated against anthrax. AR 0296TLR. Nonetheless, plaintiffs claim, the CTANG decided all

---

[1]Plaintiff Dingle died in September 2005, and is represented in this action by Jane Dingle, as executor of his estate.

[2]Two certified administrative records have been filed in this case. The administrative record from plaintiff Rempfer's case before the AFBCMR is numbered with his initials, TLR, so that page numbers appear as AR 00001TLR. The administrative record from plaintiff Dingle's case before the AFBCMR is numbered with his initials, RED, so that numbers appear as: AR 00001RED. Citations to either record in this memorandum will refer to the relevant page numbers differentiating between the two records by use of the initials following the page numbers. In the interests of privacy, plaintiffs' master personnel records have been withheld from the Administrative Records except for the Officer Performance Reports (OPRs) that were at issue before the AFBCMR. Plaintiff Rempfer's OPR is at AR 0019TLR-0020TLR. The OPR at issue in plaintiff Dingle's case is at AR 0014-0015RED. Additionally, plaintiffs', and other individuals', social security numbers were redacted where they appear in the records.

pilots were to be vaccinated irrespective of their deployment status. *Id.*    Before inoculation commenced at the CTANG, Col. Burns placed plaintiffs on a panel, called "Tiger Team Alpha" to investigate the anthrax vaccination policy, "and [to] try to capture the attitude of the unit."  AR 0004TLR. *See also* Compl. ¶ 8.  After conducting their investigation, Tiger Team Alpha allegedly provided Col. Burns with a report questioning the efficacy of the anthrax vaccine, and the legality of the inoculation program.  AR 0004TLR.  Despite Tiger Team Alpha's report, plaintiffs say, inoculation of all CTANG officers began in November and December 1998.  Plaintiffs claim that they were ordered to take the vaccine as part of this vaccination program.  Faced with taking the anthrax vaccine, and cognizant that if they refused the order to take the vaccine they could be subject to disciplinary action, plaintiffs resigned from the CTANG.  Compl. ¶¶ 7, 13.

On December 22, 1998, plaintiff Rempfer filed an Application for Ready Reserve Assignment, seeking reassignment from the CTANG to the AFR.  His commander, Lt Col John S. Swift, recommended approval, and Rempfer was honorably discharged from the CTANG, effective March 25, 1999, and transferred to the AFR as of March 26, 1999. *See* Memorandum and Order at 2, *Rempfer, et al., v. United States, et al.*, (Fed. Cl. May 20, 2005) (No. 05-396C) (attached as Exhibit 2).  His dismissal from the CTANG was signed "by the Order of the Governor" of Connecticut. Ex. 2 at 4. *See also* Appendix to Defendants' Motion to Dismiss at 3, *Rempfer, et al., v. United States, et al.*, (Fed. Cl. May 20, 2005) (No. 05-396C) (attached as Exhibit 3).[3]  Following

_____

[3]The Court may take judicial notice of facts on the public record, and consider documents incorporated by reference in a complaint, and records and reports of administrative bodies without converting a motion to dismiss into a motion for summary judgment. *See Marshall County Health Care Authority v. Shalala*, 988 F.2d 1221, 1222 (D.C. Cir. 1993); *Trudeau v. FTC*, 456 F.3d 178,183 (D.C. Cir. 2006) ("In determining whether a complaint fails to state a claim, we may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which we may take judicial notice.") (quoting

his transfer, plaintiff Rempfer was promoted to the rank of Major (O-4) with a date of rank set at October 1, 1999.  AR 0004TLR.

Plaintiff Dingle also submitted an Application for Ready Reserve Assignment.  Like Rempfer, his dismissal was signed "by order of the Governor of Connecticut."  Ex. 2 at 4; Ex. 3 at 4.  Plaintiff Dingle was honorably discharged from the CTANG, effective April 3, 1999.  Like Rempfer, Dingle also transferred immediately to the AFR, effective April 4, 1999.  Ex. 2 at 2; Ex. 3 at 4.  Plaintiff Dingle continued in that capacity until June 28, 2003, at which time he was assigned, at his request, to the Retired Reserve.  Ex. 3 at 5-6.

At the time plaintiffs Rempfer and Dingle resigned from the CTANG and transferred to the AFR, their Officer Performance Reports (OPR) were completed by their superiors at the CTANG without reference to their duties on Tiger Team Alpha and their objections to the anthrax immunization program. *See* AR 0019TLR-0020TLR; 0014RED-0015RED.  Both plaintiffs subsequently filed applications for the correction of their military records with the AFBCMR.  Rempfer filed his application on March 22, 2004, and Dingle filed his application on March 29, 2005.  AR 0010TLR; AR 0008RED. In their applications to the AFBCMR, both plaintiffs sought three distinct remedies.  *Id.*  First, they requested that the AFBCMR amend their OPRs to reflect their involvement with Tiger Team Alpha.  Second, they sought a decision by the AFBCMR that the anthrax vaccination program was illegal and that they were improperly discharged due to their refusal to be vaccinated.  *Id.*  Third, they sought compensatory relief, both requesting that the AFBCMR provide them with back pay, allowances, longevity, lost rank and promotion.  AR 0003TLR, 0010TLR, 0005RED, 0008RED.  Plaintiff Rempfer additionally requested that the

_____

*EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624-25 (D.C. Cir. 1997)).

AFBCMR reinstate him in the CTANG flying program.  AR 0010TLR.  In support of their applications, they both claimed that a preliminary injunction issued by this Court in *Doe v. Rumsfeld*, 297 F. Supp. 2d 119 (D.D.C. 2003), which, in 2003, preliminarily enjoined the military from proceeding with the anthrax vaccination program, rendered illegal the order they had received to take the vaccine.  AR 0003TLR; AR 0005RED.

Following review of the extensive record before it, including recommendations made by the Administrative Law Division of the Office of the Judge Advocate General for Headquarters Air Force (USAF/JAA), AR 0272TLR, the Policy and Legislative Initiatives Division of the ANG (ANG-DPPI), AR 0148TLR, which itself solicited an opinion from the Headquarters Legal Office of the National Guard Bureau (NGB-JA), AR 0150TLR, Rempfer's various filings, AR 0011TLR-0052TLR, AR 0198TLR-0222TLR, AR 0276TLR-0293TLR, and the significant documentation submitted by plaintiff Rempfer in support of his application, the AFBCMR concluded that there was insufficient evidence of error or injustice in Rempfer's record to require amendment of his OPR, and that the AFBCMR lacked authority to reinstate him in the CTANG.  AR 0008TLR-0009TLR.  The AFBCMR notified Rempfer of its decision by letter on April 25, 2005.  Compl. ¶ 20.

Plaintiff Dingle submitted only his Application for Correction of Military Record, and the AFBCMR solicited the opinion of the ANG-DPPI on his file.  AR 0010RED.  After reviewing the record before it, the AFBCMR denied plaintiff Dingle's application, providing him notice of that denial on March 8, 2006.  AR 0003RED - 0007RED.

## STATUTORY, REGULATORY, AND OTHER BACKGROUND

### I.    THE AFBCMR

The AFBCMR acts under authority delegated to it by the Secretary of Defense, who is

empowered to amend military records. 10 U.S.C. § 1552. In most circumstances, the Secretary is to accomplish these corrections, by "acting through boards of civilians of the executive part of that military department." *Id*. In a few limited circumstances not at issue in this case– namely corrections favorable to a person with respect to issues of enlistment or reenlistment, promotion or appointment– the Secretary may act without resort to the civilian board. *Id.* at § 1552(a)(2). Whether acting alone, or through the civilian board, the authority to correct records is statutorily limited to those instances in which the Secretary "considers it necessary to correct an error or remove an injustice." *Id.* at § 1552(a)(1). Both the Secretary and the civilian board are limited in the types of remedies they may provide. Besides correcting military records, they are statutorily authorized to order compensation to an applicant for loss of pay, allowances, compensation, emoluments, or other pecuniary benefits, or repayment of fines or forfeitures if such payment is due as a result of correcting the applicant's record. 10 U.S.C. § 1552(c).

The AFBCMR is the civilian board through which the Secretary acts for matters related to the correction of AF records. The AFBCMR typically renders decisions based on the record before it. 32 C.F.R. § 865.2(c). It is not an investigative body, though it may hold hearings, or call for additional evidence or opinions in any case. *Id.*

Any member of the AF is permitted to apply for correction of his or her military records. Applicants have three years from the time the alleged error or injustice is discovered to file their application, but the AFBCMR may waive untimely filing "in the interest of justice." 32 C.F.R. § 865.3(f)(1). Applying to the AFBCMR does not stay other proceedings. 32 C.F.R. § 865.3(g).

An applicant bears the burden of providing "sufficient evidence of probable material error or injustice," 32 C.F.R. § 865.4(a), but once an application is received, the AFBCMR may solicit

7

additional information and advisory opinions from any AF organization or official, *id.* at §
865.4(a)(1), require the applicant to furnish additional information, *id.* at § 865.4(a)(2), and order
a hearing at which the applicant may choose to have counsel represent him, *id.* at § 865.4(f), (h).
The AFBCMR typically gives the applicant an opportunity to review and comment on the advisory
opinions received before issuing its written decision. *Id.* at § 865.4(b).

## II.    LEGAL CHALLENGES TO THE ANTHRAX VACCINATION PROGRAM

### A.    *Doe v. Rumsfeld*

Both plaintiffs Rempfer and Dingle relied heavily on their reading of *Doe v. Rumsfeld*, 297
F. Supp. 2d 119 (D.D.C. 2003), in arguing before the AFBCMR that they were illegally ordered to
submit to the anthrax vaccination.  AR 0003TLR *and* AR 0005RED.   In their complaint, they
reiterate their belief that the preliminary and permanent injunctions issued in that case retroactively
rendered illegal the order they received to take the anthrax vaccination.  Compl. ¶¶ 16-18.   In
understanding this issue some background is helpful.

In 2003, six unnamed plaintiffs who had been ordered to submit to anthrax vaccinations in
connection with their military service, filed suit in this Court claiming that the military's Anthrax
Vaccine Immunization Program ("AVIP") was illegal.   They argued that the vaccine being
administered in AVIP, the Anthrax Vaccine Adsorbed ("AVA"), was, so far as it was used against
inhalation exposure to anthrax, either an experimental drug or an approved drug being used for an
unapproved purpose. Therefore, they claimed, the AVIP violated 10 U.S.C. § 1107, which precludes
the administration of experimental drugs to service members absent their informed consent or a
Presidential waiver. *Doe v. Rumsfeld*, 297 F. Supp. 2d 119, 122-23 (D.D.C. 2003).  Plaintiffs moved
for a preliminary injunction barring the military from continuing the AVIP.  *Id.* at 122.

Although the AVA had been approved for use in inoculating individuals against exposure to anthrax, and its license was silent as to the route of exposure, the drug had been the subject of an Investigational New Drug (IND) application seeking to amend the drug's label to specifically state that it was safe for use against inhalation exposure to anthrax. *Id.* at 124. Granting the plaintiffs' motion for a preliminary injunction, the district court found a likelihood of success on the merits because, the Court held, the AVIP's use of the AVA for inoculation against inhalation exposure to anthrax violated 10 U.S.C. § 1107. *Id.* at 135. As the Court wrote: "In sum, because the record is devoid of an FDA decision on the investigational status of AVA, this Court must determine AVA's status for itself. This Court is persuaded that AVA is an investigational drug and a drug being used for an unapproved purpose." *Id.*

Shortly after the Court entered a preliminary injunction in the case, the FDA published a final rule categorizing AVA as safe and effective for use against inhalation exposure to anthrax. *See Doe v. Rumsfeld*, 297 F. Supp. 2d 200 (D.D.C. 2004). Defendants moved to have the Court's preliminary injunction stayed as to all parties other than the named plaintiffs. *Id.* at 201. Finding the preliminary injunction was premised on the Court's finding that the evidence was "devoid of an FDA final decision on the investigational status of [AVA]," the Court lifted the injunction as to all parties except the named plaintiffs. *Id.* at 200-01.

Nearly a year later, following further briefing, the Court considered the FDA's final rule on AVA in *Doe v. Rumsfeld*, 341 F. Supp. 2d 1 (D.D.C. 2004). After addressing a number of procedural arguments not relevant to the instant lawsuit, the Court concluded that the FDA's final rule on AVA violated the APA because the FDA had not followed its own internal guidelines by failing to provide the public "an opportunity to comment on the safety and efficacy of AVA as it

9

pertains to inhalation anthrax." *Id.* at 15. Although the Court had not certified a class of plaintiffs, it issued a permanent injunction barring the use of AVA on any individual subject to the AVIP program. *Id.* at 19. The Court also remanded the final rule to the FDA for "reconsideration following an appropriate notice-and-comment period in accordance with the APA, [and] the Agency's own regulations. . . ." *Id.* at 16.

Soon after the district court entered the permanent injunction, defendants appealed to the D.C. Circuit. While the appeal was pending, the FDA engaged in the notice and comment period ordered by the district court, and on December 19, 2005, issued a new final rule, again classifying AVA as safe and effective for use against inhalation anthrax. *See Doe v. Rumsfeld*, 172 Fed. Appx. 327, *1 (D.C. Cir. Feb. 9, 2006) (*per curiam*). In examining defendants' appeal, the D.C. Circuit concluded that the FDA's compliance with the district court's order had the effect of dissolving the district court's injunction which by its own terms remained in effect "unless and until FDA classifies AVA as a safe and effective drug for its intended use." *Id.* at 327. The D.C. Circuit also explicitly noted that the district court's order "never granted . . . declaratory relief, nor any other relief except the injunction." *Id.* at 328. Finding that the dissolution of the injunction, and the lack of any other relief in the district court's order, meant there was no longer a live case or controversy before the circuit court, the D.C. Circuit remanded the case to the district court.

### B.    Other Legal Challenges To The AVIP

Before *Doe v. Rumsfeld*, a number of other courts examined the legality of the AVIP, upholding orders given to military personnel to take the anthrax vaccine in connection with that program. Directly conflicting with the district court's ruling in *Doe v. Rumsfeld*, in *O'Neil v. Secretary of the Navy*, 76 F. Supp. 2d 641 (W.D. Pa. 1999), the United States District Court for the

Western District of Pennsylvania held that because the FDA licensed the AVA in 1970, it was not an experimental drug, and the AVIP was therefore a "lawful response by defendants to the dangers with which the military personnel of the United States may be confronted in the future." *Id.* at 645.

In *Marzares v. Dep't of the Navy*, 302 F.3d 1382 (Fed. Cir. 2002), the Federal Circuit examined a claim brought by civilian members of the Navy who were removed after refusing to comply with an order to take the anthrax vaccine. Though it did not address the investigational status of the AVA, the Federal Circuit held that "[t]he military has broad authority and discretion in dealing with its personnel, both military and civilian, including the protection of their health. The Navy did not exceed its authority or otherwise abuse its discretion by ordering [plaintiffs] to undergo anthrax vaccination." *Marzares*, 302 F.3d at 1385. *See also United States v. Washington*, 57 M.J. 394, 398 (C.A.A.F. 2002) (upholding, over his defense of duress, the conviction of a service member who refused to receive the last in the series of vaccinations administered under the AVIP, noting "[w]hen a commander gives an order that is reasonably necessary to accomplish the mission– including an order involving protective measures, such as defensive positioning, wearing protective armor, or taking a vaccine to counter a biological weapon– the servicemember is obligated to obey or face punishment under Articles 90, 91, or 92, UCMJ.").

Finally, in *United States v. Kisala*, 64 M.J. 50 (C.A.A.F. 2006), a case post-dating *Doe v. Rumsfeld*, the U.S. Court of Appeals for the Armed Forces upheld the conviction of a service member who refused to take the anthrax vaccine. The service member, Kisala, claimed that the order to take the anthrax vaccine was illegal because at the time he received the order, the FDA had not issued a final rule approving the vaccine for use against inhalation anthrax, and the vaccine was the subject of a pending IND application. In support of his argument, Kisala cited *Doe v. Rumsfeld*.

11

The Court of Appeals for the Armed Forces rejected Kisala's claims, finding that he had failed to "overcome the presumption that the order to receive the Vaccine was lawful." *Id.* at 54. The court distinguished *Doe v. Rumsfeld* noting that while *Doe* was a civil case challenging the legality of the AVIP, Kisala's case concerned instead the legality of the order he received to take the AVA and his criminal disobedience of that presumedly lawful military order. *Id.* at 53. "The linchpin of this case is the presumed legality of the military order to receive the Vaccine. The district court opinions neither recognize nor address this critical presumption." *Id.* Furthermore, the Court of Appeals for the Armed Forces held, "[t]he D.C. Circuit highlighted that the injunction issued by the district court in 2004, by its own terms, remained in effect until the FDA classified the Vaccine as safe and effective for its intended use. The D.C. Circuit also noted that after the district court issued the permanent injunction, the FDA issued a classification on December 19, 2005. Therefore, once this classification was issued, the injunction was dissolved." *Id.* at 53.

## III. PLAINTIFFS' PREVIOUS LITIGATION BEFORE THE COURT OF FEDERAL CLAIMS

On March 23, 2005, plaintiffs filed a complaint in the Court of Federal Claims almost identical to the one filed in this case seeking compensatory and declaratory relief against the United States for injuries allegedly growing out of plaintiffs' refusals to take the anthrax vaccine and their subsequent resignations from the CTANG. Defendant, the United States, moved to dismiss and plaintiffs moved to have their case transferred to the district court. On December 8, 2005, while the motions before the Court of Federal Claims were still pending, plaintiffs filed the instant action in this court but did not make any attempt to serve the United States Attorney for the District of Columbia with the district court complaint until October 2006. *See* Pls' Notice of Filing of Proof

of Service (Nov. 27, 2006) [docket #4]. On April 19, 2006, the Court of Federal Claims dismissed plaintiffs' case without transferring it to the district court. The Court of Federal Claims held that because plaintiffs were state employees their claims for damages lay against the State of Connecticut and not the United States:

> Here, Plaintiffs have not alleged that they were called into the service of the United States. The fact that the Connecticut Air National Guard was implementing a federal DoD program in directing reservists to take the anthrax vaccine does not convert Plaintiffs' employment status from state to federal. Plaintiffs' discharge orders from CTANG were signed "by order of the Governor.". . . Because Plaintiffs are state employees seeking monies attributable to their constructive discharge by the state, the relief sought is not from the United States, and this Court lacks subject matter jurisdiction over this action.

Ex. 2 at 4-5. With respect to the plaintiffs' motion to transfer their case, the court found that plaintiffs' failure to identify any claims which would be time barred if not transferred to the district court left the court with no choice but to dismiss their action. *Id.* at 5-6.[4]

## ARGUMENT

### I. LEGAL STANDARDS

A motion to dismiss for failure to state a claim should be granted when a complaint fails to "state a claim upon which relief can be granted." Fed. R. Civ12(b)(6). The Court may grant the motion when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). Although

---

[4]Plaintiffs also brought a *qui tam* False Claims Act suit against BioPort Corporation, the manufacturer of the AVA, in October 2000, claiming BioPort made false statements to the United States government when it supplied anthrax vaccines manufactured in a way that was inconsistent with the process approved by the FDA. *See Dingle v. BioPort Corp.*, 388 F.3d 209, 210 (6th Cir. 2000). Plaintiffs' claims were dismissed by the district court for lack of jurisdiction, and that decision was upheld by the Sixth Circuit Court of Appeals. *Id.* Plaintiffs' petition for *certiorari* was denied. *See U.S. ex rel. Dingle v. Bioport Corp.*, 544 U.S. 949 (2005).

the plaintiff is entitled to all reasonable inferences, "the court need not accept inferences drawn by [the] plaintiff[] if such inferences are unsupported by the facts set out in the complaint. Nor must the court accept legal conclusions cast in the form of factual allegations." *Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). The standard of review is substantially the same for subject matter jurisdiction challenges pursuant to Fed. R. Civ. P. 12(b)(1), but the Court may also consider materials outside of the pleadings to determine whether jurisdiction exists. *Caesar v. United States*, 258 F. Supp. 2d 1, 2-3 (D.D.C. 2003).

In ruling on a motion to dismiss for failure to state a claim in the APA context, the district court may rely on the administrative record and any information in the public record without converting the motion to one for summary judgment. When a district court sits in review of an agency decision and the record is not used to test any factual allegations in the complaint "it is no different from an agency record or district court opinion before the court of appeals for review. Thus, the district court can consult the record to answer the legal question before the court – in this case whether the agency adhered to the standards of decision making required by the APA." *Marshall Cty. Health Care Auth. v. Shalala*, 988 F.2d 1221, 1226 (D.C. Cir. 1993). *See also Am. Bioscience, Inc., v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001) ("As we have repeatedly recognized, however, when a party seeks review of agency action under the APA, the district judge sits as an appellate tribunal. The 'entire case' on review is a question of law.").

## II.    PLAINTIFFS' FIRST AND THIRD CAUSES OF ACTION MUST BE DISMISSED

### A.    Plaintiff's First and Third Causes of Action Must Be Dismissed As They Fall Outside The Applicable Statute of Limitations

The Court lacks subject matter jurisdiction over the claims in plaintiffs' First and Third Causes of Action, because those claims were brought after the applicable statute of limitations had run.  Pursuant to 28 U.S.C. § 2401(a) civil actions against the United States "shall be barred unless the complaint is filed within six years after the right of action first accrues." *Id.*    "Unlike an ordinary statute of limitations, § 2401(a) is a jurisdictional condition attached to the government's waiver of sovereign immunity, and as such must be strictly construed." *Spannaus v. U.S. Dept. of Justice*, 824 F.2d 52, 55 (D.C. Cir. 1987).  The § 2401(a) statute of limitation applies to actions, like plaintiffs', brought pursuant to the Administrative Procedure Act (APA), 5 U.S.C. § 552 *et seq*.  The D.C. Circuit has found § 2401(a) equally applicable to claims "seeking to correct or upgrade the discharge of former service members." *Kendall v. Army Board For Correction of Military Records*, 996 F.2d 362, 365 (D.C. Cir. 1993).  And because the declaratory relief plaintiffs seek is entirely based on the events that underlie their APA claim, § 2401(a)'s six year statute of limitations applies to their claims for declaratory relief as well. *See Morris v. Manufacturers Life Ins. Co.*, 1997 WL 534156, *10 (S.D. Ind. Aug. 6, 1997) ("Plaintiffs do not seek a declaration as to the validity of a defense to a threatened action for coercive relief against them.  Instead, plaintiffs' claims for declaratory relief simply request the court to declare that defendants are liable for fraud and/or breach of an oral contract, and that plaintiffs are entitled to all the coercive relief they seek.  This mere re-labeling of plaintiffs' claims for coercive relief cannot avoid the bar of the statute of limitations.").

Actions arising from discharge from the military are considered final, for purposes of the

statute of limitations, when the service member's discharge is final. *See Kendall*, 996 F.2d at 365-66

(citing *Walters v. Sec'y of Defense*, 725 F.2d 107, 114 (D.C. Cir. 1983)). Plaintiff's First and Third

Causes of Action are rooted in plaintiffs' claims that they were illegally ordered to take the anthrax

vaccine and when they refused they were allegedly forced out of the CTANG. Compl. ¶¶ 21-24 and

29-31. Plaintiffs' First Cause of Action seeks APA review of these actions. Compl. ¶¶ 21-24.

Plaintiffs' Third Cause of Action seeks essentially the same thing as the First Cause of Action but

in a different guise: a declaration from the Court that the actions the defendants allegedly took which

led to plaintiffs' purported constructive discharge were illegal. Compl. ¶¶ 29-31. While plaintiffs

characterize the Third Cause of Action as brought pursuant to the Declaratory Judgment Act, it is

no different than the APA's analysis of whether an agency acted contrary to the law, which is the

crux of plaintiffs' First Cause of Action. The underlying actions, upon which both causes of action

are based, are identical. The statute of limitations on plaintiffs' claims in the First and Third Causes

of Action, therefore, began to run when their resignations were final.

Plaintiff Rempfer voluntarily resigned from the CTANG on March 25, 1999.[5] Ex. 2 at 2; Ex.

3 at 3. Plaintiff Dingle voluntarily resigned from the CTANG on April 3, 1999. Ex. 2 at 2; Ex. 3 at

4. Even if, as they allege in the complaint, they were "constructively discharged," *see* Compl. ¶ 13,

their claims against the AF, DoD, and the United States, accrued as of the dates of their resignations.

The statute of limitations on Rempfer's claims related to his discharge from the CTANG ran,

therefore, in March 2005, and on Dingle's claims in April 2005. Plaintiffs did not file this lawsuit

---

[5]Plaintiffs' complaint does not make any allegation concerning the specific dates on which plaintiffs were discharged from the CTANG.

until December 8, 2005, well after § 2401(a)'s six year statute of limitations had run.[6]

The statute of limitations on plaintiffs' First and Third Causes of Action is not tolled by their choice to pursue permissive administrative remedies in the AFBCMR.  In *Bittner v. Sec'y of Defense*, 625 F. Supp. 1022, 1029 (D.D.C. 1985), this Court examined this very question with respect to eight plaintiffs, all from different branches of the military, who more than 6 years after they were discharged from the military challenged both the characteristics of their discharges, and the relevant board for correction of military records' decisions not to upgrade their discharges. *Id.* at 1027.  This court found that because the various boards for correction of military records had issued their decisions as to plaintiffs within 6 years of the filing of plaintiffs' complaint, those claims were not time barred.  The court, however, explicitly distinguished plaintiffs' claims that they were improperly discharged, finding that because all of the plaintiffs had been discharged more than 6 years before they commenced their action in federal court, "[t]he Court must emphasize the fact, however, that it does not and cannot review the actual discharges of these plaintiffs." *Id.* at 1029.  *See also Carter v. Dep't of the Navy*, 2006 WL 2471520, at *4-5 (D.D.C. Aug. 24, 2006)  (finding plaintiff's constitutional and statutory based claims of wrongful discharge time barred because they accrued with plaintiff's dismissal, which occurred more than 6 years prior to filing, but finding plaintiff's APA challenge to the decision of the Board for Correction of Naval Records not time barred because decision of the board was less than 6 years old); *Martinez v. United States*, 333 F.3d 1295, 1310-11

---

[6]Even after filing their complaint in this case, plaintiffs further delayed its prosecution, failing to make any effort to serve the United States Attorney for the District of Columbia until October 16, 2006.  *See* Pls' Notice of Filing of Proof of Service (Nov. 27, 2006) [docket #4].  Fed. R. Civ. P. 4(m) permits for dismissal of a case if a plaintiff fails to effect service within 120 days of the filing of the complaint.  Plaintiffs were grossly out of time in their attempts to effect service in this case, and while the United States agreed to respond to the complaint nonetheless, it continues to believe that proper service was never effected in this case.

(Fed. Cir. 2003) (applying same rule in Tucker Act context), *cert. denied*, 540 U.S. 1177 (2004);

*Cottrell v. United States*, 42 Fed. Cl. 144, 154 (Fed. Cl. 1998) ("This means that the six-year clock

continues to run during the period when an application is pending before the ABCMR").

Nor is the statute of limitations tolled by plaintiffs' filing in the Court of Federal Claims.

Plaintiffs' case in the Court of Federal Claims was dismissed for lack of jurisdiction. Ex. 2 at 2. The

dismissal was therefore without prejudice. "[W]hen a suit is dismissed without prejudice, the statute

of limitations is deemed unaffected by the filing of the suit, so that if the statute of limitations has

run the dismissal is effectively with prejudice." *Ciralsky v. Central Intelligence Agency,* 355 F.3d

661, 672 (D.C. Cir. 2004) (quoting *Elmore v. Henderson*, 227 F.3d 1009, 1011 (7th Cir. 2000)).

Plaintiffs appear to have recognized this fact. They claimed before the Court of Federal Claims that

if their case was not transferred to the district court, which it was not, "any claim that is necessarily

and inextricably linked to the plaintiffs' discharges may, or will, be lost as potentially outside the six-

year statute of limitations." Ex. 2 at 5 (quoting from plaintiffs' Supp. Response to Order Dated Nov.

27, 2005, filed in that case).[7]

Plaintiffs' claims of constructive discharge based on an allegedly illegal order in their First

and Third Causes of Action were filed after the six-year statute of limitations set forth in § 2401(a)

had run. Accordingly, this Court must dismiss those claims for lack of jurisdiction.[8] *See Kendall*,

---

[7]Although when the Court of Federal Claims Judge asked them to name any specific
claims that would be time barred if not transferred, they were inexplicably unable to do so. Ex. 2
at 6.

[8]Though it is not clear from their complaint, Plaintiffs cite The Tucker Act, 28 U.S.C. §
1346, as a basis for jurisdiction and make claims for non-specific damages in their First and
Third Causes of Action. As discussed later in this memorandum, these claims also fall outside
the applicable statute of limitations and should be dismissed.

996 F.2d at 366 ("Compliance with the limitations period is a condition of federal court jurisdiction) (citing *Soriano v. United States*, 352 U.S. 270 (1957)).

### B.    Plaintiffs' Claims For Damages In The First And Third Causes Of Action Must Also Be Dismissed

Though plaintiffs style their First Cause of Action as an APA claim, and their Third Cause of Action as a Declaratory Judgment Act claim, in both causes of action plaintiffs allude to damages "including, but not limited to, being forced out of the CTANG and all associated financial losses incurred as a result," Compl. ¶¶ 24, 32, and seek, as remedy, "appropriate compensation," Compl. ¶ 32(c). Plaintiffs' claims for damages must be dismissed as plaintiffs have failed to properly establish a claim under the Little Tucker Act, and even if they had, such claims are time barred.

### 1.    Plaintiffs Have Failed To Establish A Little Tucker Act Claim

The only conceivable basis upon which plaintiffs could claim a waiver of the United States' sovereign immunity to suit for money damages is the Little Tucker Act, 28 U.S.C. § 1346, which plaintiffs cite as a basis for jurisdiction.[9] *See* Compl. ¶ 4. While that statute does waive the United States' sovereign immunity to suit for damages based on contracts or constitutional or statutory violations, it does not apply in this case because plaintiffs have failed to properly establish a claim pursuant to the Little Tucker Act.

First, plaintiffs' complaint fails to cite any statutory or constitutional basis for their damages

---

[9]In their complaint plaintiffs cite three statutes as the basis for their claims for relief: (1) the APA; (2) the Declaratory Judgment Act; and (3) The All Writs Act, 28 U.S.C. § 1651. None of these statutes, however, waive the United States' sovereign immunity to suit for money damages. *See* 5 U.S.C. § 702 (waiving sovereign immunity only for suits seeking "other than money damages"); 28 U.S.C. § 2201 (stating only that courts may "may declare the rights and other legal relations of any interested party seeking such declaration"); 28 U.S.C. § 1651 (authorizing courts to issue writs).

claims. "Although it waives sovereign immunity, the Tucker Act does not create any substantive right enforceable against the United States for money damages. Thus, for a claim to be based on the Tucker Act, it must be founded either upon a contract or upon a provision in the Constitution, or any Act of Congress, or any regulation of an executive department, that can fairly be interpreted as mandating compensation by the Federal Government for the damages sustained." *Van Dresek v. Lehman*, 762 F.2d 1065, 1070 (D.C. Cir. 1985) (internal quotation marks and citations omitted). *See also Garcia v. United States*, 996 F. Supp. 39, 43 (D.D.C. 1998). As plaintiffs transferred to the ANG as soon as their discharges from the CTANG were complete, it is unclear what, if any, claims they would have for back pay or lost wages. In fact, in their case before the Court of Federal Claims plaintiffs "abandoned their claims for back pay . . . and failed to identify any other monetary damages stemming from their refusal to be inoculated." Ex. 2 at 3. Having failed to cite any statutory or other basis for their damages claims, plaintiffs have failed to properly plead a Little Tucker Act claim.

Second, the Little Tucker Act creates concurrent jurisdiction in the district courts and the Court of Federal Claims over claims against the government for less than $10,000. Under the (Big) Tucker Act, however, the Court of Federal Claims retains exclusive jurisdiction over non-tort claims against the United States for money damages in excess of $10,000. 28 U.S.C. § 1491. *See also Smalls v. United States*, 471 F.3d 186, 189 (D.C. Cir. 2006). The monetary limitation on Little Tucker Act claims is jurisdictional. *Smalls*, 471 F.3d at 189. Therefore, in order for a district court to maintain jurisdiction over a claim that might otherwise exceed $10,000, "a plaintiff's waiver of amounts over that threshold must be clearly and adequately expressed." *Waters v. Rumsfeld*, 320 F.3d 265, 271 (D.C. Cir. 2003) (internal quotation marks and citation omitted). Plaintiffs have not "clearly and adequately" expressed their intention to waive any claims they may have to money

damages in excess of $10,000. Accordingly, their claims for damages alluded to in their First and Third Causes of Action must be dismissed.

### 2. Plaintiffs' Claims For Damages Are Barred By The Applicable Statute of Limitations

Finally, even if the Court were to find that plaintiffs have properly established a Little Tucker Act claim, their claims for damages must still be dismissed because they are time barred by the § 2401(a) statute of limitations. The Little Tucker Act carries the typical § 2401(a) statute of limitations. *See Daingerfield Island Protective Society v. Babbitt*, 40 F.3d 442, 444 (D.C. Cir. 1994) (recognizing Tucker Act's six-year statute of limitations); *Auction Co. of America v. F.D.I.C.*, 132 F.3d 746, 749-50 (D.C. Cir. 1997) (applying § 2401(a) six-year statute of limitations to Tucker Act claim). With respect to Little Tucker Act claims, the statute of limitations is jurisdictional. *See Hoffman v. United States*, 266 F. Supp. 2d 27, 40 (D.D.C. 2003). As discussed above, the events underlying any claims for damages which plaintiffs could possibly assert took place more than six years before plaintiffs filed the instant complaint. Accordingly, this Court lacks jurisdiction over their damages claims and those claims should be dismissed.

## III. PLAINTIFFS' FIRST AND THIRD CAUSES OF ACTION MUST BE DISMISSED BECAUSE PLAINTIFFS' LACK STANDING TO BRING THOSE CLAIMS

Even if plaintiffs' claims under the First and Third Causes of Action were not time barred by the applicable statute of limitations, plaintiffs lack standing to bring these claims because they have failed to articulate an injury in fact that is readily traceable to the defendants.

Article III, § 2, of the Constitution "extends the 'judicial power' of the United States only to 'Cases' and 'Controversies.'" *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102 (1998). Article III standing requires that a plaintiff have suffered "an (1) injury in fact– an invasion of a

legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical– (2) which is fairly traceable to the challenged act, and (3) likely to be redressed by a favorable decision." *Nat'l Treasury Employees' Union v. United States*, 101 F.3d 1423, 1427 (D.C. Cir. 1996) (internal quotation marks and citation omitted). *See also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

The doctrine of standing is "an essential and unchanging part of the case-or-controversy requirement of Article III," *Lujan*, 504 U.S. at 560, and "the party invoking federal jurisdiction bears the burden of establishing its existence," *Steel Co.*, 523 U.S. at 104. To do so, the case of the party asserting jurisdiction "must be supported . . . with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561.

As the Supreme Court stated in *Allen v. Wright*, 468 U.S. 737, 752 (1984), "the law of Art. III standing is built on single basic idea– the idea of separation of powers." *Id.* Such consideration of separation of powers is especially important in this case, as plaintiffs seek to involve this Court in military personnel decisions, matters entitled to high deference and into which courts are hesitant to intervene. Judicial deference to the President and Congress is at its "apogee" when addressing challenges to the management of the military and national defense. *See Goldman v. Weinberger*, 475 U.S. 503, 508 (1986). This deference is especially appropriate when a lawsuit "goes directly to the 'management' of the military." *United States v. Shearer*, 473 U.S. 52, 58 (1985); *see also Gilligan v. Morgan*, 413 U.S. 1 (1973); *Orloff v. Willoughby*, 345 U.S. 83, 93-94 (1953) ("[J]udges are not given the task of running the [military] . . . . The military constitutes a specialized community governed by a separate discipline from that of the civilian. Orderly government requires that the judiciary be as scrupulous not to interfere with legitimate [military] matters as the [military] must

22

be scrupulous not to intervene in judicial matters."). Consequently, federal courts have been

historically "reluctant to intrude upon the authority of the Executive in military and national security

affairs," *Department of Navy v. Egan*, 484 U.S. 518, 530 (1988).

    **A.**    **Plaintiffs Lack Standing To Bring Claims Under Their First And Third Causes Of Action Because Their Alleged Injuries Are Not Fairly Traceable To Defendants**

To satisfy the injury in fact requirement, "a plaintiff must allege personal injury fairly

traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested

relief." *See Allen v. Wright*, 468 U.S. at 751. Plaintiffs cannot meet that requirement here because

they voluntarily resigned from the CTANG, thereby themselves causing the injuries of which they

complain in their First and Third Causes of Action. And even if they had not voluntarily resigned,

plaintiffs' injuries are not fairly traceable to defendants because, to the extent they exist, they were

caused by the State of Connecticut.

    **1.**    **Plaintiffs Voluntarily Resigned Thereby Themselves Causing Any Alleged Injury Resulting From Their Discharge From The CTANG**

When a military member resigns or retires, it is presumed that his decision is voluntary, and

a plaintiff bears the burden of establishing that the separation was involuntary. *See Veitch v.

England*, 471 F.3d 124, 134 (D.C. Cir. 2006) (Rogers, J., concurring) ("Other courts have agreed that

the standard for constructive discharge is quite high. 'Resignations or retirements are presumed to

be voluntary. . .'") (quoting *Tippett v. United States*, 185 F.3d 1250, 1255 (Fed. Cir. 1999)).

While they claim to have been constructively discharged, both plaintiffs voluntarily resigned

from the CTANG and were transferred, at their request, to the AFR. *See* Ex. 3 at 3-4. Nevertheless,

plaintiffs claim that they were "forced to resign their commissions as CTANG officers as a direct

23

result of the anthrax vaccine controversy." Compl. ¶ 13. According to plaintiffs, they had to resign because "[r]efusing to comply with orders to take the AVA inoculations subjected servicemembers to military disciplinary actions, including courts-martial or administrative discharges." Compl. ¶ 7. Even if true, these claims show that plaintiffs fail to meet this circuit's test for constructive discharge because their circumstances permitted alternatives other than resignation.

In *Lebrun v. England*, 212 F. Supp. 2d 5, 18 (D.D.C. 2002), this court recognized that "[m]erely because [a] plaintiff was faced with an inherently unpleasant situation in that his choice was arguably limited to two unpleasant alternatives does not obviate the voluntariness of his resignation." *Id.* (citation omitted). That case involved a plaintiff who resigned from the Naval Academy after being told that if he did not resign voluntarily, he would be dishonorably discharged. *Id.* at 9. In reaching its conclusion, the district court cited *Christie v. United States*, 207 Ct. Cl. 333 (Cl. Ct. 1975), a case in which the Court of Federal Claims found that a plaintiff voluntarily resigned and therefore lacked standing, even though she resigned after being told by her employer that if she did not do so she would be terminated for cause. *Id*. at 586. The Court of Federal Claims noted: "[w]hile it is possible plaintiff, herself, perceived no viable alternative but to tender her resignation, the record evidence supports CSC's finding that plaintiff chose to resign and accept discontinued service retirement rather than challenge the validity of her proposed discharge for cause. The fact remains, plaintiff had a choice. She could stand pat and fight. She chose not to." *Id.* at 587.

These principles apply even in the most extreme circumstances, in which military personnel must choose between resigning or facing court-martial proceedings. In *Veitch v. England*, 471 F.3d 124, 130-31 (D.C. Cir. 2006), the D.C. Circuit found that an appellant who resigned rather than face court-martial proceedings, nonetheless voluntarily resigned and therefore lacked standing to bring

24

constitutional claims related to his resignation.  *Id.*

The Court of Federal Claims, to which the courts of this circuit often look in these matters, has taken the same approach, presuming resignations to be voluntary even when the alternative was administrative discharge or court-martial.  *See Moody v. United States*, 58 Fed. Cl. 522, 524 (2003) ("This governing principle holds true even where a resignation is offered to avoid a court-martial or other serious discipline."); *Gallucci v. United States*, 41 Fed. Cl. 631, 645 (1998) (finding no jurisdiction because plaintiff resigned in the face of a recommendation for administrative discharge); *Brown v. United States*, 30 Fed. Cl. 227, 229-30 (1993) (finding no jurisdiction where plaintiff voluntarily resigned "for the good of the service" after being recommended for court-martial), *aff'd*, 26 F.3d 139 (Fed. Cir. 1994) (table).

Plaintiffs Rempfer and Dingle cannot carry the burden of proving their claims of constructive discharge because their resignations were voluntary.  They admit in their Complaint that they had options other than resigning, explaining that "[r]efusing to comply with orders to take the AVA inoculations subjected servicemembers to military disciplinary actions, including courts-martial or administrative discharges."  Compl. ¶ 7.  Plaintiffs resigned before challenging the alleged order to take the vaccine through either of these options, both of which would have resulted in decisions plaintiffs could have challenged both administratively and judicially.  *See e.g. New v. Cohen*, 129 F. 3d 639, 647-48 (D.C. Cir. 1997).  Having failed to avail themselves of the options available to them at the time of their resignations, plaintiffs now lack standing to challenge their discharges from the CTANG.

### 2.    The State Of Connecticut, Not Defendants, Caused Any Alleged Injury Related To Plaintiffs' Discharge From The CTANG

Even if the Court were to find that plaintiffs' resignations were not voluntary, plaintiffs would still lack standing because the injuries of which they complain were caused by the State of Connecticut, not the federal defendants. *See* Ex. 2 at 3 (dismissing plaintiffs' identical complaint filed in the Court of Federal Claims "[b]ecause Plaintiffs were members of the National Guard, a state militia, and not in the military service of the United States, their unspecified monetary claims stemming from their discharge are not against the United States."). As discussed above, "a plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *See Allen v. Wright*, 468 U.S. at 751. Plaintiffs Rempfer and Dingle bring their suit as "former officers and pilots with the Connecticut Air National Guard" and seek relief exclusively related to their allegedly being "forced to resign their positions after being ordered to take the anthrax vaccine and to avoid unfair punishment." Compl. ¶ 1. Because their claims concern events that occurred in connection with their service in the CTANG, and their subsequent resignation from the CTANG, plaintiffs' alleged injuries are traceable only to the State of Connecticut, not the United States.

### a.    The Court Of Federal Claims Holding That Plaintiffs Were State Employees Has *Res Judicata* Effect

The Court of Federal Claims has already examined this exact issue and ruled that it lacked subject matter jurisdiction over plaintiffs' claims because at the time they were dismissed from the CTANG they were state employees. *See* Ex. 2 at 4-5. The decision of the Court of Federal Claims should be given *res judicata* effect. "*Res judicata* operates to preclude claims in situations where [as here] there has been an earlier, valid, final judgment involving the same cause of action and the

26

same parties." *Croskey v. U.S. Office of Special Counsel*, 132 F.3d 1480 (Table), at *3 (D.C. Cir. 1997). "This Circuit has held that *res judicata* applies to dismissal for lack of jurisdiction as well as other grounds." *Novell, Inc. v. United States*, 109 F. Supp. 2d 24, 25 (D.D.C. 2000) (citing *Dozier v. Ford Motor Co.,* 702 F.2d 1189, 1191 (D.C. Cir. 1983)). *See also Kasap v. Folger Nolan Fleming & Douglas, Inc.*, 166 F.3d 1243, 1248 (D.C. Cir. 1999) ("even a case dismissed *without* prejudice has preclusive effect on the jurisdictional issue litigated") (emphasis in original). The Court of Federal Claims' ruling that plaintiffs were state employees at the time of their dismissal and therefore any claims for injury lie against the State of Connecticut and not the United States was final and on the merits, and because that case also involved the same parties as the instant action, the Court of Federal Claims' decision on this issue should be given *res judicata* effect. *See e.g. Novell*, 109 F. Supp. 2d at 24  (giving *res judicata* effect to decision of Court of Federal Claims).

> **b.    Even If The Court Of Federal Claims' Decision Is Not Given Preclusive Effect, This Court Should Conclude That Plaintiffs Were State Employees At The Time They Were Discharged**

The state National Guards are lineal descendants of the state militias authorized by Article I, section 8, cl. 16, of the Constitution. *See Maryland v. United States*, 381 U.S. 41, 47 (1965). As such, the Constitution reserves to the states the power to appoint officers and train the members of the state National Guards. *Id.* Since 1933, however, all individuals who have enlisted in a state National Guard have been required to simultaneously enlist in the National Guard of the United States. *See Perpich v. Dep't of Defense*, 496 U.S. 334, 345 (1990). The National Guard of the United States, while comprised of members of individual state National Guards, is a uniquely federal institution that works alongside the regular military.

As the Supreme Court explained in *Perpich*, 496 U.S. at 348, dual enlistment in both a state

27

National Guard and the National Guard of the United States does not mean that a state National Guard member is simultaneously both a member of a state militia, a member of the federal military reserves, and, because the other institutions are not full-time commitments, a civilian. Instead, a state National Guard member acts as only one of the three at any given time, depending on the circumstances. "In a sense, [state National Guard members] must keep three hats in their closets– a civilian hat, a state militia hat, and an army hat– only one of which is worn at a particular time." *Id.* Therefore, "members of the National Guard only serve the federal military when they are formally called into the military service of the United States. At all other times, National Guard members serve solely as members of the State militia under the command of a state governor." *Clark v. United States*, 322 F.3d 1358, 1366 (Fed. Cir. 2003). When state National Guard members wear their state militia hats, they are under the command and authority of the state Governor. *Perpich*, 496 U.S. at 348. And those state National Guard members are not subject to federal authority and command unless and until they are formally called into the military service of the United States. *Clark*, 322 F.3d at 1366.

The demarcation between the state and federal roles of state National Guard members has been consistently recognized by federal courts in cases holding that the members of a state's National Guard are state employees, not federal actors, so long as they have not been called into federal service. In *Maryland v. United States*, 381 U.S. at 45, the Supreme Court approved a line of cases holding that "military members of the Guard [are] employees of the States, not the Federal Government." *Id.* The Court further noted that even though state National Guard members are paid with federal funds and must conform to federal requirements, "[t]heir appointment by state authorities and the immediate control exercised over them by the States make it apparent that

28

military members of the Guard are employees of the States, and so the courts of appeals have uniformly held." *Id*. at 48. *See also Gnagy v. United States*, 634 F.2d 574, 579 (Ct. Cl. 1980) (holding "a member of a National Guard unit not in active federal service is not, insofar as his military capacity with the Guard is concerned, a federal employee for purposes of the Back Pay Act"); *U.S. ex rel Gillett v. Dern*, 74 F.2d 485, 487 (D.C. Cir. 1934) ("except when employed in the service of the United States, officers of the National Guard continue to be officers of the state and not officers of the United States or of the Military Establishment of the United States").

The CTANG, like all other state National Guards, is first and foremost a state militia with the Governor of the state as "commander-in-chief." Conn. Gen. Stats. § 27-14. The Governor's role in directing the CTANG is set forth in Connecticut statutes. The Governor has sole authority to appoint officers of the CTANG, Conn. Gen. Stats. § 27-49. She is empowered to "issue all orders and prescribe all regulations for the organization and government of the organized militia, the national guard, and the naval militia." Conn. Gen. Stats. § 27-14. And she is instructed to "issue all orders and regulations necessary to cause the national guard and naval militia to conform at all times to the laws and regulations of the United States relating thereto." *Id*.

Plaintiffs admit that they were members of the CTANG at the time of the events in question. *See* Compl. ¶ 1. They make no claim that they had been called up to federal service at that time. Accordingly, they were wearing their "state militia hats" at the time they were ordered to take the anthrax vaccine and chose instead to resign from the CTANG. As state employees, their resignations had to be, and were, approved by the Governor of Connecticut. *See* Ex. 2 at 4; Ex. 3 at 3-4. Because plaintiffs were state employees at the time they were ordered to take the anthrax vaccine and chose to resign, any injury they may claim as a result of those events was caused by the State of

29

Connecticut.

Plaintiffs claim, however, that while they may have been state employees, the order to take the vaccine came from their Wing Commander, Col. Burns, who was, they say, "a federal active duty Air Force officer commanding the first state Guard unit to implement the federal AVIP mandate." Compl. ¶ 8.  Even if this were the case, there should be no question that Col. Burns was acting in a state capacity at the time, as plaintiffs do not allege that they had been called into federal service, which means that only the state would have authority over them.  *See Maryland v. United States*, 381 U.S. at 48.  Plaintiffs acknowledge that Col. Burns was their "Wing Commander," a state National Guard position, and they admit that "unit leaders issued a policy letter establishing a deadline of the January Unit Training Assembly (UTA, or "drill") to submit to the vaccine."  Compl. ¶ 12. Additionally, as plaintiff Rempfer acknowledged in his filings before the AFBCMR, the federal AVIP at that time did not explicitly require the vaccination of state National Guard members who had yet to be activated at the time they were ordered to take the anthrax vaccine.  AR 0023TLR-0024TLR.  *See also* AR 00296TLR; Ex. 1.[10]  The policy requiring all members of the CTANG to be vaccinated, therefore was a state policy because it went beyond that which was required by the federal AVIP program at that time.

Finally, even if plaintiffs are correct that the anthrax vaccination policy was entirely federal, courts have routinely held that state National Guards ordering their members to comply with federal policies nonetheless act in their state capacity in doing so.  In *Schultz v. Wellman*, the 6th Circuit,

---

[10]In plaintiff Rempfer's written testimony submitted to the House Subcommittee on National Security, Veteran's Affairs, and International Relations, in March 1999, and included in the Administrative Record herein, he stated that National Guard members who were not to be deployed early would not have been required to be vaccinated until June 2003.  AR 0094TLR.

examining a case in which a Kentucky Air National Guard member was dismissed for offenses

defined by federal military law under procedures prescribed by the United States Air Force, held

"[t]hat an agency of the state *chooses* to utilize federal substantive and procedural rules in the

exercise of its state law authority does not transform the state law character of its actions." 717 F.2d

301, 305 (6th Cir 1983) (emphasis in original). The 9th Circuit took the same approach in *Gilliam*

*v. Miller*, a case involving the dismissal of Oregon Army National Guard members for failure to

comply with federal military weight requirements. 973 F.2d 760 (9th Cir. 1992). In concluding that

the APA did not apply to the appellants' claims because their dismissal was state action, the 9th

Circuit held that:

> [B]ecause neither ORARNG [Oregon Army National Guard] nor the OAG [Oregon Adjutant
> General] was operating under federal control when Gilmer and Gilliam were terminated from
> ORARNG, the OAG's action [in terminating them] was taken solely in the capacity of a state
> actor. Because the OAG was not a federal agency when he terminated Gilmer's and
> Gilliam's membership in the ORARNG, Gilmer and Gilliam do not meet the requisite
> standards for stating a claim under the APA . . .

*Id.* at 764. *See also Zitser v. Walsh*, 352 F. Supp. 438 (D. Conn. 1972) (holding that expulsion of

CTANG member from officer candidate school for violation of federal regulation was state action).

## IV.    PLAINTIFFS' SECOND CAUSE OF ACTION MUST BE DISMISSED BECAUSE TO THE EXTENT IT CHALLENGES PLAINTIFFS' DISCHARGES IT IS TIME BARRED AND BECAUSE TO THE EXTENT IT IS NOT TIME BARRED PLAINTIFFS HAVE FAILED TO STATE A CLAIM

### A.    To The Extent Plaintiffs' Challenge To The AFBCMR's Decision Constitutes A Direct Challenge To Their Underlying Discharge, Plaintiffs' Claims Are Time Barred

As discussed earlier, *supra* Section II.A., the statute of limitations on plaintiffs' claims

challenging their underlying discharges has run, barring plaintiffs from bringing such a challenge in

this court. The courts of this circuit, however, have permitted APA review of the decisions of boards

for correction of military records in cases in which plaintiffs were time barred from bringing challenges to their underlying dismissals. *See Bittner*, 625 F. Supp. at 1029; *Carter*, 2006 WL 2471520 at *5; *Lebrun*, 212 F. Supp. 2d at 12. Review of boards for corrections' decisions in those cases, however, was limited to review of the boards' actions to determine if they acted arbitrarily, capriciously, or in violation of law. *See e.g. Bittner*, 625 F. Supp. at 1029 ("The Court must emphasize the fact, however, that it does not and cannot review the actual discharges of these plaintiffs, but only the review boards decisions denying a request for upgrade."). "[J]udicial review of a claim of wrongful discharge is distinct and independent from judicial review of a claim challenging the Correction Board's review of the underlying discharge decision." *Lebrun*, 212 F. Supp. 2d at 12. "[T]he focus of the former is on the action of discharge officials whereas the focus of the latter is on the action of the Correction Board." *Id.* (quoting *Blassingame v. Sec'y of Navy*, 811 F.2d 65, 72 (2nd Cir. 1987). Put simply, even if the district court might have reached a different conclusion than the board of review on the appropriateness of the underlying dismissal, so long as the board did not act arbitrarily, capriciously, or in violation of law in reaching that conclusion, the court may not substitute its judgment for that of the board. *See Amato v. Chafee*, 337 F. Supp. 1214, 1217 (D.D.C. 1972) ("In other words, the Court may not substitute its judgment for that of the administrative officers, but may only review the record to insure that the pertinent laws and regulations were followed.").

For example, in *Bittner*, 625 F. Supp. at 1029, the district court permitted review of various board for corrections' decisions that the plaintiffs' discharges should not be upgraded from dishonorable to honorable. It expressly declined, however, to engage in an analysis of whether or not plaintiffs were properly discharged in the first place, even though that was at issue before the

boards for correction. *Id.* at 1029. *See also Lebrun*, 212 F. Supp. 2d at 10 (reviewing the Navy Board for Correction of Military Record's decision to not amend plaintiffs' records, but not reviewing whether plaintiffs' discharge from the Navy was proper).

The distinction these courts make is one between reviewing process, which they permit, and reviewing substance, which is time barred. The district court can review the boards' decision making process– what information it reviewed, what procedures it followed– but because challenges to the underlying discharge are time barred, the district court may not review the merit of the underlying discharge at issue. This distinction is clear in the type of remedy authorized at the district court. Should the district court find that the board for correction of military records acted arbitrarily, capriciously, or in violation of law in rendering its decision, the appropriate remedy is not to reinstate the plaintiff, but remand to the agency for further proceedings. *See Black v. United States*, 24 Cl. Ct. 465, 469 (Cl. Ct. 1991); *Chisolm v. United States*, 65 Fed. Cl. 497, 499 (Fed. Cl. 2005).

In the instant action plaintiffs should not be permitted to make an end run around the statute of limitations bar to make challenges related to their underlying discharges through APA review of the AFBCMR's decision. To the extent plaintiffs' challenge in their Second Cause of Action is limited to review of the AFBCMR's decision to determine whether the board acted arbitrarily, capriciously, or in violation of law, plaintiffs have not run afoul of the statute of limitations. However, the Court's review must be limited to a review of the process employed by the AFBCMR– what evidence it considered, what opportunities plaintiffs had to make their cases. The Court's review must not stray into an analysis of whether the AFBCMR was correct to deny plaintiffs' claims that they were constructively discharged as the result of an illegal order. Such an analysis would go entirely to the merits of their underlying discharges and as already discussed, such claims are time

33

barred.

**B.    Plaintiffs' Claims Pursuant To The APA Fail Because Defendant AFBCMR Did Not Act Arbitrarily, Capriciously Or In Contravention Of Law**

To the extent the Court engages in review of the decisions of the AFBCMR challenged in plaintiffs' Second Cause of Action, the AFBCMR's decisions are reviewed under the APA. The AFBCMR's actions may be set aside only if "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. 706(2)(A). The review applicable to plaintiffs' arbitrary and capricious claims is "quite deferential" to the Agencies. *North Carolina v. FERC*, 112 F.3d 1175, 1189 (D.C. Cir. 1997); *see also Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (The "arbitrary and capricious" standard applies a "narrow" scope of review); *Omnipoint Corp. v. FCC*, 78 F.3d 620, 632 (D.C. Cir. 1996) (describing this as a "deferential standard"). The Court is not entitled to function as a super-review board and substitute its judgment for that of the agency, in this case the AFBCMR. *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43. Rather, it must simply assess whether the AFBCMR considered the relevant factors, and "affirm the agency's decision if a rational basis for it is presented." *Nat'l Tank Truck Carriers, Inc. v. EPA*, 907 F.2d 177, 182 (D.C. Cir. 1990) (citation omitted). "In other words, the Court may not substitute its judgment for that of the administrative officers, but may only review the record to insure that the pertinent laws and regulations were followed." *Amato v. Chafee*, 337 F. Supp. 1214, 1217 (D.D.C. 1972).

Furthermore, in challenges to decisions of a military board for correction of military records, courts take an "unusually deferential application of the 'arbitrary or capricious' standard of the [APA]." *Cone v. Caldera*, 223 F.3d 789, 793 (D.C. Cir. 2000) (citing *Kreis v. Secretary of the Air*

34

*Force,* 866 F.2d 508, 1514 (D.C. Cir. 1989)).  "This deferential standard is calculated to ensure that the courts do not become a forum for appeals by every solider dissatisfied with his or her rating, a result that would destabilize military command and take the judiciary far afield of its area of competence." *Cone,* 223 F.3d at 793.  *See also Lebrun,* 212 F. Supp. 2d at 14 ("When reviewing a decision by a military Correction Board, a Court must do so under an unusually deferential application of the arbitrary or capricious standard of the APA") (quotation marks and citation to *Musengo v. White,* 286 F.3d 535, 538 (D.C. Cir. 2002) omitted).

### 1. The AFBCMR Did Not Act Arbitrarily, Capriciously, Or In Violation Of Law In Denying Plaintiff Rempfer's Application

In his March 22, 2004, Application for Correction of Military Record, AR 0010TLR, plaintiff Rempfer sought two types of relief.  First, he requested that the AFBCMR "[c]orrect OPR from duty in CTANG . . . ." *Id.*  Second, he asked that the AFBCMR grant him "[r]einstatement to flying duty for CTANG." *Id.*

Plaintiff Rempfer's argument that he was entitled to such relief was based on three general claims.  His first claim was that he was entitled to amendment of his OPR because his OPR did "not reflect [his] duties for [his] commander." AR 0010TLR.  As he explains at length in the various pleadings he filed with the AFBCMR, by this claim plaintiff Rempfer meant that his OPR did not reflect his involvement on Tiger Team Alpha and objections to the AVIP.  *See* AR 0011TLR-0012TLR; 0021TLR-0025TLR.  Second, Rempfer believed he was entitled to reinstatement in the CTANG because, as he claimed, the AVIP was illegal.  His evidence of the alleged illegality was limited to the preliminary injunction issued in *Doe v. Rumsfeld,* to which he was not a party, *see Doe v. Rumsfeld,* 297 F. Supp. 2d 119 (D.D.C. 2003), and a Senate Resolution sent to the Senate

Committee on Armed Services recommending that DoD reconsider adverse actions taken against service members who refused to take the AVA, *see* S. Res. 278, 108th Cong (2003).  AR 0012TLR; 0025TLR-0030TLR.  Third, plaintiff Rempfer claimed his commander did not have "legal authority to dismiss" him, and that same commander "defrauded the state of Connecticut with falsities."  AR 0012TLR; 0030TLR-0031TLR.  In the same vein, and clearly in conflict with his claim that he was dismissed, plaintiff Rempfer also claimed that his "resignation" was forced and/or coerced.  AR 0011TLR.

        As is typical, in reaching its conclusion in plaintiff Rempfer's case, the AFBCMR solicited various written opinions concerning plaintiff's claims.  *See* 32 C.F.R. § 865.2(c) (providing for the solicitation of outside opinions).  In response it received written comments from the USAF/JAA, and ANG/DPPI, which itself solicited an opinion from the NGB-JA, all of which concluded plaintiff Rempfer's application should be denied.  *See* AR 0149TLR; 0155TLR; 0275TLR.  The AFBCMR also received multiple filings from Rempfer in support of his case, and in response to the other opinions filed with the AFBCMR.  AR 0011TLR-0014TLR; 0021TLR-0052TLR; 0198TLR-0222TLR.  After reviewing all of these materials, the AFBCMR ultimately decided to deny plaintiff's application finding that plaintiff's OPR did not merit amendment because the record lacked evidence of any error or injustice in the OPR, and that the AFBCMR lacked authority to grant plaintiff's other request for relief, reinstatement to the CTANG.  AR 0008TLR.  In reaching this conclusion, the AFBCMR thoroughly considered plaintiff's arguments, and all of the relevant information before it.

        The AFBCMR first addressed plaintiff's argument that his OPR required amendment because it did not reflect his involvement on Tiger Team Alpha.  As discussed above, the AFBCMR's

36

jurisdiction to amend OPRs is limited to those instances in which correction is "necessary to correct an error or remove an injustice." 10 U.S.C. § 1552(a)(1). It may only do so, however, when an applicant meets his burden of providing "sufficient evidence of probable material error or injustice," 32 C.F.R. § 865.4(a). In plaintiff Rempfer's case, the AFBCMR noted that OPRs are presumptively correct, and finding an absence of "rating chain support" for amendment of plaintiff's OPR, found no basis for a finding of error or injustice. AR 0008TLR.

This conclusion is supported by the content of the OPR itself, AR 0019TLR-0020TLR, which is laudatory concerning plaintiff and makes no negative comments at all. *Id.* In fact, the OPR complimented plaintiff Rempfer's "enthusiastic effort," lauded his "excellent knowledge of threat, weapon, [and] aircraft systems", and his "[s]uperior flight leadership." AR 0019TLR. It goes on to commend him as a "valuable resource". AR 0020TLR. And while one rater expressed regret that Rempfer resigned, that same rater stated that "[Rempfer's] enthusiasm and skill will serve him well in his future career." *Id.*

It is the applicant's burden, before the AFBCMR, to provide "sufficient evidence of probable material error or injustice." 32 C.F.R. § 865.4(a). Plaintiff appears to have claimed before the AFBCMR that the absence of a discussion of his Tiger Team Alpha duties in his OPR constituted an error or injustice. The OPR, however, lists no other specific duties performed, rating plaintiff much more generally and focusing on his flight abilities and readiness. "Error can be defined as either legal or factual. Injustice, when not also error, is treatment by the military authorities that shocks the sense of justice." *Sawyer v. U.S.*, 18 Cl. Ct. 860, 868 (Cl. Ct. 1989) (citation omitted), *rev'd on other grounds*, 930 F.2d 1577 (Fed. Cir. 1991). *See also Reale v. United States*, 1976 WL 23815, at *1 (Jan. 9, 1976 Ct.Cl.) ("'Error means legal or factual error. Normally, it is such that a

court of law could correct it whether the solider or sailor had first applied to a Correction Board, or not. . . .'Injustice', when not also 'error', is treatment by the military authorities that shocks the sense of justice, but is not technically illegal."). The lack of mention of plaintiff Rempfer's duties on Tiger Team Alpha did not constitute a factual error, nor was it the result of legal error by the CTANG. As the NGB-JA noted in its comments to the ANG-DPPI, Rempfer's "superiors wrote his OPR based on his duty performance. What to include in that report is a judgment question. If they put something in his OPRs that he did not do, that would be a clear mistake of fact that should be corrected. However, the supervisor's discretion as to what facts and duties to report is not any indication of a factual mistake or an injustice in this case." AR 0153TLR. Nor is the choice not to include reference to plaintiff's duties on Tiger Team Alpha an injustice, as it cannot possibly be construed as treatment that "shocks the sense of justice." The OPR in question is overwhelmingly positive about plaintiff, and in fact served him well, as he was promoted upon his transfer to the AFR. AR 0004TLR. The AFBCMR found plaintiff did not provide sufficient evidence of error or injustice to justify amendment of his OPR. The AFBCMR's decision was neither arbitrary, capricious, nor in violation of law.

Next, the AFBCMR addressed plaintiff Rempfer's remaining claims which, when combined, essentially allege that he was forced to resign as a result of being given an illegal order to take the anthrax vaccine, the order being illegal because the AVIP itself was illegal. As discussed, the Court's review should not stray into whether or not the AFBCMR was "correct" in its denial of plaintiff's claim that he was constructively discharged as the result of an illegal order. Instead, the Court should limit its review to a determination of whether the AFBCMR followed the proper procedures and laws in rendering its decision. Such an analysis shows that the AFBCMR did not

38

act arbitrarily, capriciously, or in violation of law in denying plaintiff's claims.

Both the ANG/DPPI and the USAF/JAA provided extensive opinions with respect to these

issues, and the AFBCMR considered these opinions in reaching its conclusions.  *See* AR 0005TLR-

0008TLR.  In its opinion, the ANG/DPPI focused primarily on plaintiff Rempfer's claim that the

December 22, 2003 injunction issued in *Doe v. Rumsfeld*, 297 F. Supp. 2d 119, had the effect of

retroactively making the order plaintiff Rempfer received to take the anthrax vaccine illegal.  The

ANG/DPPI noted that on January 7, 2004, the district court lifted its preliminary injunction in *Doe*

*v. Rumsfeld* after the FDA issued a final report finding the immunization program to be safe and

effective.  Therefore, the ANG/DPPI reasoned, the preliminary injunction should not be considered

to have any retroactive effect on plaintiff Rempfer's individual case.[11]  AR 0148TLR; 0152TLR.

Furthermore, the NGB-JA, on whose opinion the ANG/DPPI relied, found that the Senate Resolution

plaintiff Rempfer referred to, S. Res. 278, 108th Congress (2003), only "recommends the Secretary

of Defense reconsider the vaccination programs, assess the reports of adverse reactions to vaccines,

and reevaluate the threat of attack by smallpox and anthrax." AR 0152TLR.  As such, the ANG/DPPI

concluded that the Senate resolution "is not a mandate or directive in nature" and because it was

"published prior to the FDA report stating their confidence in the safety and effectiveness of the

AVIP" it should not be a basis for amendment of plaintiff Rempfer's records.  AR 0149TLR.

The USAF/JAA submission to the AFBCMR, written while the final decision in *Doe v.*

*Rumsfeld*, remanding to the FDA, was still on appeal to the D.C. Circuit, was actually prepared for

another case, but because it dealt with an identical issue – the legal effect to be given the injunction

---

[11]The ANG/DPPI prepared its opinion on October 18, 2004, after the district court lifted the preliminary injunction but before the permanent injunction was entered.

in *Doe v. Rumsfeld* as it applies to an individual who was ordered to take the anthrax vaccine prior to the *Doe* litigation – it was included in the AFBCMR's record for the Rempfer case and Rempfer was given an opportunity to comment on it. *See* AR 0272TLR-0275TLR (USAF/JAA memorandum) *and* AR 0276TLR-0292TLR. (Rempfer's written response). The USAF/JAA report is focused almost exclusively on the question of whether the *Doe v. Rumsfeld* permanent injunction should be given retroactive effect, thereby making all orders to take the anthrax vaccine issued prior to *Doe v. Rumsfeld* retroactively illegal. Citing, *United States v. New*, 55 M.J. 95, 106 (2001), the USAF/JAA first noted that military orders "are clothed with an inference of lawfulness." AR 0272TLR (quoting *New*, 55 M.J. at 106). Next, the USAF/JAA discussed a series of pre-*Doe v. Rumsfeld* cases in which federal and military courts held orders to take the anthrax vaccine to be legal, and upheld disciplinary action taken against personnel who refused to comply with such orders. AR 0273TLR. *See also Mazares v. Dep't of the Navy*, 302 F.3d 1382, 1385 (Fed. Cir. 2002) ("The Navy did not exceed its authority or otherwise abuse its discretion by ordering [plaintiffs] to undergo anthrax vaccination."); *United States v. Washington*, 57 M.J. 394, 398 (C.A.A.F. 2002) ("When a commander gives an order that is reasonably necessary to accomplish the mission– including an order involving protective measures, such as defensive positions, wearing protective armor, or taking a vaccine to counter a biological weapon– the servicemember is obligated to obey or face punishment under Articles 90, 91, or 92, UCMJ."); *O'Neil v. Sec. of the Navy*, 76 F. Supp. 2d 641, 645 (W.D. Pa 2001) ("the evidence established that the anthrax vaccination program is a lawful response by defendants to the dangers with which the military personnel of the United States may be confronted in the future. . . the vaccine is not an experimental drug.").

Finally, the USAF/JAA turned directly to plaintiff Rempfer's claim that the then-preliminary,

40

and later permanent, injunction issued in *Doe v. Rumsfeld* should be given retroactive effect.  The

USAF/JAA noted that the case was on appeal and that should be taken into account in deciding to

what extent to rely on the district court's decision.  AR 0272TLR.  Next, the USAF/JAA remarked

that *Doe* is not necessarily binding on the AFBCMR because in *Bates v. Rumsfeld*, 271 F. Supp. 2d

54, 62 n.16 (D.D.C. 2002), this court suggested that its decisions did not necessarily carry

precedential value before the AFBCMR.  AR 0273TLR.

Those issues aside, the USAF/JAA then applied the three factor test for retroactivity set forth

in *Chevron Oil v. Huson*, 404 U.S. 97 (1971): (1) whether the decision established a new principle

of law; (2) whether retroactive application would further or retard the operation of the new law; and

(3) whether retroactive application would produce substantial inequitable results.[12]  *Id.  See also* AR

000287.  The USAF/JAA first noted that the decision in *Doe v. Rumsfeld* was prospective only, and

made no mention of retroactive effect.  The USAF/JAA acknowledged that *Doe v. Rumsfeld*, did

reach a different conclusion than other cases which found the anthrax vaccine program to be legal,

*see Mazares,* 302 F.3d at 1385; *O'Neil*, 76 F. Supp. 2d at 645, but stated that as the decision of a

district court it did not overrule those cases.  AR 0274TLR.  In that sense, it did not make new law.

As *Doe v. Rumsfeld* presumably did not make new law, the second factor of the *Huson* test is

inapplicable.  With respect to the third factor, the USAF/JAA noted that retroactive application of

the ruling in *Doe v. Rumsfeld*, would create inequitable results "given the many different reasons that

military members were discharged for failing to participate in [the anthrax vaccine program]."

AR0274TLR.  In the end, the USAF/JAA concluded that the *Huson* test counseled against the

---

[12]The USAF/JAA also relied on *Teague v. Lane*, 489 U.S. 288 (1989) in which the
Supreme Court expressed a reluctance to apply new rules of criminal procedure retroactively.

retroactive application of the *Doe* injunction.  AR 0274TLR-0275TLR.[13]

After considering plaintiff Rempfer's submissions, the ANG/DPPI, NGB-JA, and USAF/JAA opinions, the AFBCMR concluded that it lacked authority to grant plaintiff Rempfer's request to be reinstated in the CTANG, and that Rempfer did not offer sufficient evidence of material error or injustice to warrant a correction of his OPR.  AR 0008TLR.  The AFBCMR held that because *Doe v. Rumsfeld*, was still in litigation, relying on it would be inappropriate.[14]  *Id.* Accordingly, the AFBCMR denied plaintiff Rempfer's application.  AR 0009TLR.

The decision of the AFBCMR with respect to plaintiff Rempfer's application was based on an extensive review of all relevant factors, including the voluminous filings by plaintiff Rempfer, the well reasoned opinions of both the ANG/DPPI, the NGB-JA, and the USAF/JAA.  Plaintiff Rempfer was given multiple opportunities to support his arguments, and in its decision the AFBCMR addressed his various claims.  AR 0003TLR-0009TLR.  While plaintiff may not agree with the ultimate decision reached by the AFBCMR, plaintiff has offered no evidence that the decision was in any way arbitrary, capricious, or in violation of law.  In fact, given the AFBCMR's finding that plaintiff Rempfer failed to produce evidence of material error or injustice in his OPR, a decision to amend the OPR by the AFBCMR would likely have been in violation of the limited

---

[13]The USAF/JAA also noted that the applicant in the case before it "knowingly and intentionally offered to resign in lieu of undergoing administrative discharge.  In waiving his right to an administrative discharge board, the applicant relinquished his opportunity to make an argument that the [anthrax vaccination program] was illegal and the order to be inoculated was invalid.  He should be precluded from now arguing that the holding in an unrelated case should be applied to his benefit."  AR 0275TLR.

[14]While the AFBCMR did not directly comment on Rempfer's claim that Col. Burns lacked the authority to order him to take the anthrax vaccine, its finding that there was no evidence of error or injustice in the record shows that it denied this claim too.

powers granted to the AFBCMR in 10 U.S.C. § 1552(a)(1).  Accordingly, the Court should uphold the AFBCMR's decision denying plaintiff Rempfer's application.

### 2.    The AFBCMR Did Not Act Arbitrarily, Capriciously, Or In Violation Of Law In Denying Plaintiff Dingle's Application

As an initial matter, plaintiff Dingle claims that the AFBCMR failed to rule on his Application for Correction of Military Records, and asks the Court to order the AFBCMR to issue a decision in his case.  Compl. ¶¶ 27 and 32.  The AFBCMR denied plaintiff Dingle's application on March 8, 2006.  AR 0004RED.  Accordingly, the Court should dismiss plaintiff Dingle's claims against the AFBCMR pursuant to Fed. R. Civ. P. 12(b)(6), for failure to state a claim.

Should the Court, however, decide to reach the issue of whether the AFBCMR's denial of plaintiff Dingle's claims violated the APA, it should still dismiss those claims because the Board's decision was neither arbitrary, capricious, nor in violation of law.  On May 29, 2005, plaintiff Dingle filed an Application for Correction of Military Record.  AR 0008RED.  He requested that: "(1) [his] OPR [be] corrected to document duties for Tiger Team Alpha, which led to my ordered discharge from the CTANG; (2) Ordered/coerced discharge documented as illegal constructive termination; (3) Back pay and allowances, plus lost rank/promotion and points caused by illegal discharge." *Id.* In his Application, plaintiff Dingle claimed he was entitled to the requested relief because: "(1) Officers cannot be ordered/coerced into resignation or transfer.   (2) AVIP mandate, which precipitated my discharge has been declared illegal." *Id.*  In support of his claim that the AVIP mandate had been declared illegal, plaintiff Dingle cited to *Doe v. Rumsfeld*, 297 F. Supp. 2d 119. AR 0008RED.

As it had with plaintiff Rempfer, the AFBCMR solicited the opinion of the ANG/DPPI which

43

recommended denial. AR 0010RED. The ANG/DPPI noted that Dingle relied heavily on Rempfer's case to support his own Application and that Rempfer's claim had been denied. The ANG/DPPI concluded: "In the absence of any additional justification, we have no choice but to recommend relief be denied in this case for the reasons cited in our advisory on the case pertaining to Major Remfer [*sic*]." AR 0010RED.

While plaintiff Rempfer submitted voluminous filings in support of his application, plaintiff Dingle submitted only his one page Application. Like Rempfer, however, plaintiff Dingle's OPR was overwhelmingly positive. *See* AR 0014-0015RED. After reviewing the Application, and the opinion of the ANG/DPPI, the AFBCMR concluded that "insufficient relevant evidence has been presented to demonstrate the existence of error or injustice." AR 0006RED. Furthermore, the AFBCMR noted that the *Doe v. Rumsfeld* litigation was still ongoing and that "it would not be prudent for the Board to take any other action on this application until the litigation has been finalized."[15] AR 0006-0007RED. Plaintiff Dingle's Application was denied on March 8, 2006. AR 0004RED. This decision was well supported by the record before the AFBCMR and was neither arbitrary, capricious, nor in violation of law. Accordingly, it should be upheld by the Court.

---

[15]The AFBCMR also held that plaintiff Dingle's Application was filed after the three year statute of limitations on Applications for Correction had run. It excused the untimeliness of the Application, however, in the interest of justice. AR 0006RED.

## CONCLUSION

For the reasons set forth above the Court should dismiss plaintiffs' complaint pursuant to

Fed. R. Civ. P. 12(b)(1) and (b)(6) for lack of subject matter jurisdiction and failure to state a claim.

Dated: March 12, 2007                    Respectfully submitted,

                                         PETER D. KEISLER
                                         Assistant Attorney General

                                         JEFFREY A. TAYLOR
                                         United States Attorney

                                         VINCENT M. GARVEY
                                         Deputy Branch Director

                                         _____/s/_____
                                         Jonathan E. Zimmerman (MA Bar #654255)
                                         Trial Attorney
                                         U.S. Department of Justice
                                         Civil Division, Federal Programs Branch
                                         20 Massachusetts Ave., N.W., Room 7116
                                         Washington, D.C., 20001
                                         Telephone: (202) 353-0441 / Fax: (202) 318-7610
                                         jonathan.zimmerman@usdoj.gov
                                         *Attorneys for Defendants*