**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| THOMAS L. REMPFER<br>3811 Phelps Road<br>West Suffield, CT 06093<br><br>and<br><br>JANE DINGLE as Executor for the<br>Estate of RUSSELL E. DINGLE<br>71 Shaughnessy Drive<br>East Hartford, CT 06118<br><br>　　　Plaintiffs,<br><br>　　　　　v.<br><br>U.S. DEPARTMENT OF AIR FORCE<br>BOARD FOR CORRECTION OF<br>MILITARY RECORDS<br>SAF/MRBR 550-C Street West, Suite 40<br>Randolph AFB, TX 78150-4742<br><br>and<br><br>U.S. DEPARTMENT OF AIR FORCE<br>Washington, D.C. 20330<br><br>and<br><br>U.S. DEPARTMENT OF DEFENSE<br>Washington, D.C. 20301<br><br>and<br><br>UNITED STATES OF AMERICA<br><br>　　　Defendants. | *<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>* 　Civil Action No. 05-2350 (JR)<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>* |

**FIRST AMENDED COMPLAINT**

Plaintiffs Thomas L. Rempfer and Russell E. Dingle (now deceased and represented through his Estate Executor, Jane Dingle), were both former officers and pilots with the Connecticut Air National Guard. They were ordered and coerced to resign their positions

as officers and pilots after being mandated to take the anthrax vaccine. Those orders were unlawful due to the illegal status of the vaccine.

Plaintiffs seek relief pursuant to the Administrative Procedures Act, 5 U.S.C. § 702, et seq.,10 U.S.C. § 1552, the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 and the All Writs Act, 28 U.S.C. § 1651.

## PARTIES

1. Thomas L. Rempfer ("Rempfer") was a Captain and pilot in the Connecticut Air National Guard until he was forced out due to the Department of Defense's anthrax vaccine policy.

2. Russell E. Dingle ("Dingle"), who died in September 2005 and is represented by Jane Dingle as the Executor of his Estate, was a Major and pilot in the Connecticut Air National Guard until he was forced out due to the Department of Defense's anthrax vaccine policy.

3. The defendant U.S. Department of the Air Force's Board for Correction of Military Records ("AFBCMR") is part of the defendant U.S. Department of Air Force ("USAF"), an agency within the defendant Department of Defense ("DoD") and the United States Government. The DoD implemented the Anthrax Vaccination Immunization Program ("AVIP") that led to the issuance of unlawful orders by the Connecticut Air National Guard ("CT ANG").

## JURISDICTION AND VENUE

4. Jurisdiction and venue is proper in this Court under the Administrative Procedures Act, 5 U.S.C. § 702, the Declaratory Judgment Act, 28 U.S.C. § 2201, and under 28 U.S.C. §§ 1331, 1346.

## BACKGROUND

5. In December 1997, DoD announced a multi-service vaccination program for all active duty, Reserve and National Guard service members using the Anthrax Vaccine Adsorbed ("AVA") as a preventative for inhalation anthrax.

6. In or around March 1998, upon orders issued by the DoD, the AVIP began. The CT ANG was one of the first National Guard Units in the United States to have its members face inoculation with the anthrax vaccine.

7. As part of the AVIP, Rempfer and Dingle were ordered to submit to involuntary anthrax vaccinations. Refusing to comply with orders to take the AVA inoculations subjected servicemembers to military disciplinary actions, including courts-martial or administrative discharges.

8. In September 1998, the CT ANG Fighter Wing Commander (FW/CC), Col Walter Burns, officially tasked Rempfer and Dingle, as members of what was called "Tiger Team Alpha", to investigate the AVIP in order to allay unit concerns. At the time, and during all relevant times, Col Burns held the unique and unprecedented status as a federal active duty Air Force officer commanding the first state Guard unit to implement the federal AVIP. The orders for the CT ANG to receive anthrax vaccinations were issued by defendants DoD and USAF. Had it not been for the issuance of these federal orders, the CT ANG would never have implemented the AVIP.

9. Tiger Team Alpha's charter was to research the safety, efficacy and legality of the anthrax vaccine, and report findings to chain of command, so that Col Burns could relay any concerns to Higher Headquarters (HHQ). Over the ensuing months Tiger Team Alpha questioned the "off label" and the "investigational" and "experimental" use of the

vaccine without providing "informed consent" as required by applicable DoD regulations and United States law. Col Burns took the input and "condensed it into a memo" and sent it "to MGen Weaver and BGen McKinley, who were the Director and the Deputy Director [of the Air National Guard] at the time." Col Burns later told DoD investigators that he was "not equipped to answer the issues and the questions that [were] outlined in [the] attachment," and asked for HHQ: "Please give me some help." In this memo to HHQ Col Burns acknowledged that an "official government position on some of their issues does not exist." In videotaped evidence Col Burns admitted the data Rempfer and Dingle requested regarding proof of efficacy for the vaccine against inhalation anthrax "does not exist."

    10. Despite the unanswered questions, Col Burns referred to anyone questioning the AVIP as "hardliners." Col Burns also verbally and publicly communicated intolerance toward anyone who questioned the DoD's policy. Col Burns even used the term "traitor", which was captured on film, for any pilots who didn't want to submit to vaccination based on the unanswered questions but wanted to continue to serve as pilots.

    11. In December 1998, pilots that expressed concerns about the AVIP were encouraged to leave the unit ASAP, or their fate might be out of their commander's hands. Rempfer was also relayed the threat by the 103rd FW Vice Commander, Col Daniel Scace, from the CT Adjutant General that officers would never serve in the military again if they caused problems regarding the anthrax vaccine mandate.

    12. Unit leaders issued a policy letter establishing a deadline of the January Unit Training Assembly (UTA, or "drill") to submit to the vaccine. Any CT ANG pilot that did not comply with the anthrax vaccine mandate was grounded and their resignations

ordered by Col Burns. Those that spoke publicly were also ordered to resign via phone calls to their homes on January 22, 1999 by the Squadron Commander, LtCol John Swift.

13. Both Remper and Dingle were thus forced to resign their commissions as CT ANG officers as a direct result of the anthrax vaccine controversy. Although they resisted, they were constructively discharged. But for the anthrax vaccine, Rempfer and Dingle (had he lived) would still be officers in the CT ANG today. In fact, a Connecticut State Commission later issued a finding of fact and conclusions of law in case #2000-303 in item 12 that upheld Rempfer and Dingle were "ordered to so resign" following their Tiger Team Alpha duties.

14. During and after the time Rempfer and Dingle were forced out of the CT ANG, Col Burns and other top CT ANG commanders continued to defame their character. Slanderous accusations, communicated to enlisted personnel in the unit, included terms such as "cowards." Other allegations characterized Tiger Team Alpha's well-researched findings as "propaganda," originating from "Nazi websites." One of the CT ANG leaders even published an article in a local newspaper, the *Journal Inquirer*, denigrating the officer's actions and claiming they did "not uphold their oath."

15. By April 1999, both Rempfer and had been officially forced out of the CT ANG because of their refusal to be inoculated with the anthrax vaccine. The officer's decision was based on the findings of officially sanctioned research ordered by their commanders.

16. In March 2003, six plaintiffs filed litigation against the DoD and other federal agency defendants challenging the legality of the AVIP. On December 22, 2003, the Honorable Emmet Sullivan of the U.S. District Court for the District of Columbia issued a preliminary injunction on the basis that "because the record is devoid of an FDA

decision on the investigational status of AVA … [it] is persuaded that AVA is an investigational drug and a drug being used for an unapproved purpose. As a result of this status, the DoD is in violation of 10 U.S.C. § 1107, Executive Order 13139, and DoD Directive 6200.2."

17. On October 27, 2004, Judge Sullivan issued a permanent injunction and ruled that "Unless and until FDA properly classifies AVA as a safe and effective drug for its intended use, an injunction shall remain in effect prohibiting defendants' use of AVA on the basis that the vaccine is either a drug unapproved for its intended use or an investigational new drug within the meaning of 10 U.S.C. § 1107. Accordingly, the involuntary anthrax vaccination program, as applied to all persons, is rendered illegal absent informed consent or a Presidential waiver." The plaintiffs in that case were prevailing parties.  Moreover, this determination had a clear retroactive effect.

18. As a result, at the time Rempfer and Dingle, and others of the CT ANG, were ordered to take the anthrax vaccinations, such order was facially unlawful. Therefore, Rempfer and Dingle were illegally and unfairly forced out of the CT ANG.

19. Both Rempfer and Dingle requested specific relief from the AFBCMR. Rempfer's case was submitted by letter March 20, 2004, and assigned Docket #BC-2004-00944, and Dingle filed his case by letter dated March 29, 2005 and was assigned Docket #BC-2005-01103.

20. Per email communication dated February 15, 2005, Mr. Ralph Prete of the AFBCMR informed Rempfer that all emails between himself and the AFBCMR were copied and placed in his file.  Ultimately none of these communiqués were included in a

6

September 28, 2005 administrative record gathered for the present case, including any that predated the filing of the plaintiffs' First Amended Complaint.

21. Rempfer's request was denied by the AFBCMR by letter dated April 25, 2005. The decision failed to address substantiated allegations of coercion and the legality of the chain of command's orders for resignations. The AFBCMR documented in its statement of facts the allegation stating: "In October 1998, the applicant was chosen by the wing commander to participate as part of a panel, referred to as "Tiger Team Alpha", to investigate the anthrax policy and try to capture the attitude of the unit. Tiger Team Alpha provided the wing commander with a report wherein the team presented data that questioned the efficacy of the anthrax inoculation and the legality of the AVIP. The wing commander condensed the teams' findings into a memorandum and forwarded it to NGB/CC. He asked for HQ-level guidance on how to proceed with the AVIP noting he was not equipped to address the issues and answer the questions posed by the team's findings. The unit began anthrax inoculations during November and December 1998. In January 1999, the applicant and seven other pilots refused to accept the anthrax injections and were at some point after their refusal removed from flying duties." In its conclusions the AFBCMR added its willingness to resurvey these unaddressed allegations stating, "Furthermore, applicant contends he was coerced into transferring from the Air National Guard to the Air Force Reserve for failure to participate in the Anthrax Vaccination Immunization Program (AVIP). The applicant's requests center primarily on his unwillingness to comply with the order and in support cites a recent court decision Doe v. Rumsfeld. In this regard, the Board notes the Chief, Administrative Law Division, states that Doe v. Rumsfeld is still being litigated. Therefore, it would not be prudent for the

Board to take any other action on this application until the litigation has been finalized. Should the plaintiffs prevail against the Secretary of Defense, the Board would be willing to reconsider the applicant's requests."

22. On June 28, 2005. the AFBCMR's Mr. Prete emailed Rempfer a corrected discharge order, with a corrected date of March 25, 1999. This date became an issue in an earlier and related case before the Court of Federal Claims because the defendants argued Rempfer missed the six year SOL based on a Feb 23, 1999 discharge, which was inaccurate. The BCMR had the correct date in their initial April 25, 2005 denial decision.

23. The AFBCMR similarly rendered a decision to deny Dingle's case on March 8, 2006. A March 12, 2007 administrative record was gathered for Dingle's case.

24. On May 18, 2006 Rempfer requested acknowledgment of an email request for reconsideration of his AFBCMR case, per the guidance received by Mr. Prete, as well as the written willingness to do so in the AFBCMR's initial denial should new information come to light in the case. The AFBCMR's Mr. Prete directed the AFBCMR's Mr. Bill White to handle the case as "recon," *i.e.* for *recon*sideration. The request for reconsideration, and Mr. Prete's confirmation of receipt and note to Mr. White were both missing from the initial administrative records for Rempfer and Dingle's case. Additionally, the entire reconsideration record, the Advisory Opinion, Rempfer and Dingle's attorney's response and the second denial decision were all missing.

25. On June 14, 2006 the AFBCMR's Mr. White requested from Rempfer a copy of a publicly available February 9, 2006, District of Columbia Circuit Court of Appeal's decision. It was this decision that served as the justification catalyst for reconsideration of Rempfer's AFBCMR case. The Appeals court neither vacated nor overruled the

8

substantive injunctions issued in the Doe v. Rumsfeld litigation. Instead, the government's appeal was found to be moot because of subsequent actions taken by the Food & Drug Administration ("FDA") to satisfy the terms of the permanent injunction. As a result, the plaintiffs had fully achieved their desired objectives and remained prevailing parties.

26. On September 5, 2006 the AFBCMR's Mr. White confirmed that the cases for both Rempfer and Dingle were reconsidered during an August, 31, 2006 board.

27. On September 28, 2006 the AFBCMR's Mr. White issued a notice about a new third Advisory Opinion dated September 19, 2006 concerning the reconsideration of Rempfer and Dingle's case, and granted an opportunity to respond.

28. On October 26, 2006 Rempfer and Dingle's attorney, Major Dale Saran, USMC, filed a response to the reconsideration Advisory Opinion with the AFBCMR.

29. On November 9, 2006 the AFBCMR's Mr. Prete confirmed receipt of the Advisory Opinion response by Major Saran regarding the reconsideration issues.

30. On March 27, 2007 the AFBCMR's Mr. White sent an email notification to Rempfer with the denial of reconsideration as an attachment, referred to as an "ROP," dated February 20, 2007.  Regardless of the fact that the reconsideration pertained to both Rempfer and Dingle, the executor of Dingle's estate, his widow Jane Dingle, never received an email notification, or a mailed copy of the denial.  None of the reconsideration documentation was included in the March 2007 administrative record of Dingle's case.  This second denial disingenuously characterized the basis for reconsideration of the case as an administrative Officer Performance Report (OPR)

9

documentation challenge.  In fact, the first decision clearly articulated that reconsideration pertained to the allegation of coercion.

## FIRST CAUSE OF ACTION
## (VIOLATION OF ADMINISTRATIVE PROCEDURE ACT)

31. Plaintiffs reallege the facts in Paragraphs 1 through 30 as if fully set forth in this Count.

32. The United States Government, acting through the DoD and CT ANG, violated a federal statute, namely 10 U.S.C. § 1107, as well as Executive Order 13139 and DoD Directive 6200.2, when it illegally required the plaintiffs to submit to anthrax vaccinations.

33. The defendants' failure to follow federal law, a presidential executive order and regulations creates a legal wrong against the plaintiffs.

34. As a result of the defendants' unlawful actions, the plaintiffs suffered damages including, but not limited to, being forced out of the CT ANG and all associated lost or delayed promotions, as well as commensurate financial losses, and lost retirement credits incurred as a result.

## SECOND CAUSE OF ACTION
## (VIOLATION OF ADMINISTRATIVE PROCEDURE ACT)

35. Plaintiffs reallege the facts in Paragraphs 1 through 30 as if fully set forth in this Count.

36. Rempfer sought relief from the AFBCMR and his case was assigned Docket #BC-2004-00944. The AFBCMR denied Rempfer relief initially by letter dated April 25, 2005, and again per a reconsideration decision dated February 20, 2007.  The AFBCMR's decisions were arbitrary, capricious, contrary to law, or unsupported by the

evidence. They either relied on factors which Congress had not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for the decision that runs counter to the evidence before the agency, and/or was so implausible that it could not be ascribed to a difference in view of the product of agency expertise. Moreover, the AFBCMR failed to address clearly identified claims asserted by Rempfer.

37. Dingle filed his request for relief with the AFBCMR by letter dated March 29, 2005 and it was assigned Docket #BC-2005-01103. The AFBCMR unreasonably delayed issuing a decision in his case and arbitrarily and capriciously omitted his case from the final adjudication phase and notification in the reconsideration process. To the extent the AFBCMR claims its February 20, 2007, decision applied to Dingle, even though it was never served on his estate, then the AFBCMR's decisions were arbitrary, capricious, contrary to law, or unsupported by the evidence. They either relied on factors which Congress had not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for the decision that runs counter to the evidence before the agency, and/or was so implausible that it could not be ascribed to a difference in view of the product of agency expertise. Moreover, the AFBCMR failed to address clearly identified claims asserted by Dingle.

38. As a result of the AFBCMR's action or inaction, Rempfer and Dingle have suffered harm including, but not limited to, a failure to be in a position to seek reinstatement to the CT ANG, expungment or modification of their records, and other financial damages to be proven at trial.

## THIRD CAUSE OF ACTION
### (DECLARATORY JUDGMENT ACT)

39. Plaintiffs reallege the facts in Paragraphs 1 through 30 as if fully set forth in this Count.

40. This case involves an actual controversy surrounding the legality of the AVIP.

41. The United States Government, acting through the DoD and CT ANG, violated a federal statute, namely 10 U.S.C. § 1107, as well as Executive Order 13139 and DoD Directive 6200.2, when it illegally required the plaintiffs to submit to anthrax vaccinations.

42. As a result of the defendants' unlawful actions, the plaintiffs suffered damages including, but not limited to, being forced out of the CT ANG and all associated financial losses incurred as a result.

WHEREFORE, Plaintiffs respectfully ask this Court to:

A. Reverse and remand Rempfer's and Dingle's cases to the AFBCMR for further proceedings consistent with the opinion issued in Doe v. Rumsfeld by the Honorable Emmet Sullivan;

B. Order the AFBCMR to update the administrative records in Rempfer and Dingle's cases with all correspondence, in any medium, between the parties involved, including the omitted reconsideration process;

C. Order the AFBCMR to issue a decision regarding the acknowledged, but unaddressed, central allegation of coercion to resign and constructive termination;

D. Order the defendants to provide any appropriate compensation in back pay, back rank, and commensurate lost retirement benefits;

E. Find and declare that AVA, as it was being used by DoD and the CT ANG, was an investigational new drug within the meaning of 10 U.S.C. § 1107, Executive Order 13139 and DoD Directive 6200.2;

F. Find and declare that AVA was in investigational new drug status when the DoD and CT ANG were requiring the plaintiffs to receive AVA inoculations;

G. Find and declare that any order issued by DoD and/or CT ANG requiring the plaintiffs to receive inoculation with AVA was unlawful on its face;

H. Find and declare that the order issued to Rempfer and Dingle to resign was unlawful as a matter of law prior to the December 5, 2005 belated licensure of AVA by the FDA; and

I. Award plaintiffs their costs and attorneys' fees and any other relief this Court may find appropriate.

Date:   April 30, 2007

                              Respectfully submitted,

                              /s/

_____

Mark S. Zaid, Esq.
D.C. Bar #440532
Mark S. Zaid, PC
1920 N Street, N.W., Suite 300
Washington, DC 20036
(202) 454-2809
(202) 293-4827 fax
ZaidMS@aol.com

Attorney For The Plaintiffs