# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

|  |  |  |
|---|---|---|
| THOMAS L. REMPFER, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Civil Action No. 05-2350 (JR) |
| v. | ) | |
| | ) | |
| UNITED STATES DEPARTMENT | ) | |
| OF THE AIR FORCE BOARD FOR THE | ) | |
| CORRECTION OF MILITARY RECORDS, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

_____

## DEFENDANTS' REPLY TO
## PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

**INTRODUCTION**

This case is before the Court on defendants' motion to dismiss, which set forth the numerous, and significant defects with plaintiffs' Complaint. Despite having now amended their Complaint, and filed an opposition to defendants' motion, plaintiffs have done nothing to cure those defects.[1] This case is the last in a long line of cases plaintiffs have brought to challenge their discharges from the Connecticut Air National Guard (CTANG), in a variety of forums, all of which have failed to garner plaintiffs the relief they seek. This case is no different. As is explained below, plaintiffs have filed too late to challenge their underlying discharges, and even if they had not, for a variety of reasons, they lack standing to do so. Furthermore, their challenges to the reasoned and reasonable decision of the Air Force Board for the Correction of Military Records (AFBCMR) are simply without merit. Plaintiffs have not responded in any meaningful way to the significant legal arguments raised in defendants' motion to dismiss, choosing instead to rely on hyperbole and unsupported assertions which are not sufficient to save their case. For the reasons set forth below, and in defendants' motion to dismiss, the Court should dismiss this action.

**ARGUMENT**

I.    **The Statute of Limitations On Plaintiffs' Claims Concerning Their Separation From The CTANG Has Run**

   A.    **Proceedings Before The AFBCMR Do Not Toll The Statute of Limitations On Claims Concerning Plaintiffs' Underlying Discharges**

Plaintiffs claim that the administrative process before the AFBCMR tolled the statute of limitations on any challenge to their underlying claims of constructive discharge. *See* Pls' Opp. at

---

[1] Although plaintiff Dingle is represented in this action by his estate, for the sake of convenience, defendants refer to Mr. Dingle throughout this brief as if he were, himself, a plaintiff.

14-18.  The case law in this Circuit, however, demonstrates that administrative proceedings before the AFBCMR do not toll the statute of limitations on challenges to an underlying discharge.  This Court addressed the issue squarely in *Kosnick v. Peters*, 31 F. Supp. 2d 151 (D.D.C. 1998), a case concerning a plaintiff who waited over six years to bring claims concerning his performance evaluations, despite pursuing numerous administrative remedies during that period.  In dismissing plaintiff's claims on statute of limitations grounds, the Court held: "As in *Kendall* [*v. Army Board For Correction of Military Records*, 996 F.2d 362 (D.C. Cir. 1993)], the plaintiff here chose to file numerous appeals within the military administrative review system.  These appeals were not mandatory and thus did not toll the statute of limitations.  Therefore, the plaintiff's claim is foreclosed as he did not raise it before the statute of limitations expired."  *Id.* at 157.

This Court followed the same approach in *Nihiser v. White*, 211 F. Supp. 2d 125 (D.D.C. 2002), in considering a statute of limitations challenge to claims brought by an Army officer who was discharged pursuant to a Reduction-in-Force in 1992, and pursued remedies before the Army Board for Correction of Military Records ("ABCMR"), through March 10, 1993, at which point his petition for correction was denied by the ABCMR.  He then took no action until 1999, at which time he applied to the ABCMR for reconsideration.  The ABCMR denied his application anew on April 5, 2001.  On August 27, 2001, plaintiff filed suit in the district court.  *Id.* at 126-27.  In examining defendant's statute of limitations argument, the court calculated the six-year statute of limitations on plaintiff's underlying claim of dismissal as such: "In this case, plaintiff was advised by letter dated May 29, 1992 that the [Discharge Selection] Board had recommended he be separated involuntarily effective January 1, 1993.  To timely challenge that action, he would have had to file suit no later than May 29, 1998."  *Id.* at 129.  While plaintiff had challenged the Discharge Board's

decision before the ABCMR, the court's calculation of the statute of limitations on a challenge to

his underlying dismissal did not deduct the period between October 27, 1992, and March 10, 1993,

during which the statute of limitations was running on plaintiff's claims related to his dismissal but

during which plaintiff had a case pending before the ABCMR. *Id.* at 127.[2]

Even the AFBCMR's own regulations envision parallel and contemporaneous processing of

claims between the AFBCMR and district courts. As set forth at 32 C.F.R. § 865.3(g), "Applying

to the AFBCMR does not stay other proceedings." *Id*. While AFBCMR regulations cannot

themselves control this Circuit's tolling jurisprudence, this provision demonstrates that applicants

to the AFBCMR are, at the least, on notice that they must pursue any other remedies available in a

timely manner, and that the Department of Defense did not intend for proceedings before the

AFBCMR to toll the statute of limitations on remedies available in any other forum.

Finally, plaintiffs attempt to approach the issue from another angle, suggesting that the

AFBCMR process is a mandatory prerequisite to bringing suit in the district courts of this Circuit,

and therefore proceedings before the AFBCMR should toll the applicable statute of limitations.

---

[2] Plaintiffs claim that *Ortiz v. Sec'y of Defense*, 41 F.3d 738 (D.C. Cir. 1994), "implies" that administrative process before the AFBCMR will toll the statute of limitations on claims concerning an underlying discharge. *See* Pls' Opp. at 15-16. That case, however, concerned the question of whether proceedings before a Discharge Review Board (DRB), which the Army required be completed before appeal to the ABCMR, tolled the three-year statute of limitations on claims brought to the ABCMR. In holding that DRB proceedings did toll the statute of limitations applicable to ABCMR claims, the circuit court expressly distinguished the issue of the tolling of § 2401, as it was addressed in *Walters v. Sec'y of Defense*, 725 F.2d 107 (D.C. Cir. 1983), noting: "*Walters* is clearly distinguishable from the instant appeals because it treated the administrative remedies as "permissive," *i.e.*, they were not a prerequisite to bringing a civil action." *Ortiz*, 41 F.3d at 744. Plaintiffs offer no argument to the contrary, erroneously stating only that *Ortiz* "implies" that proceedings before the ABCMR toll the § 2401 statute of limitations. *See* Pls' Opp. at 16.

*See* Pls' Opp. 17-18.  *See e.g. Spannaus v. Dep't of Justice*, 824 F.2d 52 (D.C. Cir. 1987).

Plaintiffs' argument fails here, however, because even though the courts of this Circuit prefer

exhaustion of the military administrative process before suit is filed in district court, the courts have

been careful to note that that process is not required in order to perfect the right to sue.

As this Court explained in *Bittner v. Sec'y of Defense*, 625 F. Supp. 1022, 1026 (D.D.C.

1985), "[i]t is beyond dispute that this Circuit has a strong preference for presuit exhaustion of

intramilitary administrative remedies . . . this Circuit has concluded that an aggrieved military officer

must first exhaust his administrative remedies before his particular services's Board for Correction

of Military Records prior to litigating claims in Federal court." *Id*. (citations and internal quotation

marks omitted).  And though the Court dismissed a number of the plaintiffs in that case for failure

to exhaust their administrative remedies before the Air Force Discharge Review Board and the

AFBCMR, *see id.*, the Court also noted that "application to the DRB's and the BCMR's is not

required in order to perfect a right to sue. . ." *Id.*  Put another way, this Circuit favors administrative

exhaustion in the instant context, but because the administrative process is not itself mandatory,

proceedings before the administrative boards of review do not toll the statute of limitations on claims

related to an underlying discharge.

This distinction is clear in *Nihiser*, which as discussed above, did not count any of the time

during which the plaintiff's case was before the ABCMR in the statute of limitations calculation.

It can also be seen in *Ogden v. Zuckert*, 298 F.2d 312 (D.C. Cir. 1961), in which the circuit court first

applied the exhaustion rule in the military board for corrections context, but held: "jurisdiction of

the (trial) court was not precluded by the omission of plaintiff to seek relief through the Board. . ."

*Id.* at 403.  And, again, in *Sohm v. Fowler*, 365 F.2d 915 (D.C. Cir. 1966), in which the circuit court

held that a district court should hold in abeyance its proceedings pending a decision by the ABCMR, and remanded to the district court with instructions to stay proceedings until the ABCMR ruled. *See id.* at 384-87. The *Fowler* court's approach reveals that while the exhaustion rule is clearly preferred in this Circuit, administrative exhaustion is not a jurisdictional requirement, because if it were, the district court would have had to dismiss the case for lack of jurisdiction, rather than stay it.[3] *See also Kosnick*, 31 F. Supp. 2d at 157 (citing *Darby v. Cisneros*, 509 U.S. 137, 154 (1993), in holding statute of limitations not tolled because exhaustion of AFBCMR process not required before suit can be brought seeking review of agency action under the APA). Because administrative proceedings before the AFBCMR are not required to perfect the right to sue in this Circuit, such proceedings do not toll the statute of limitations.

**B.    Plaintiffs Are Not Entitled To Equitable Tolling Of Their Claims Concerning Their Underlying Discharges**

**1.    The Current Law Of This Circuit Holds That The § 2401 Statute of Limitations Is Not Subject To Equitable Tolling**

In *Spannaus*, 824 F.2d at 55, the D.C. Circuit held that "[u]nlike an ordinary statute of limitations, § 2401(a) is a jurisdictional condition attached to the government's waiver of sovereign immunity, and as such must be strictly construed." *Id.* at 55. This ruling has been traditionally understood to bar judicial exceptions to the § 2401(a) statute of limitations, including equitable tolling. *See Felter v. Kempthorne*, 473 F.3d 1255, 1260 (D.C. Cir. 2007) (noting that *Spannaus* held "section 2401(a) to be jurisdictional, and thus not susceptible to such judicial exceptions [as the doctrines of continuing violation or equitable tolling]."). While plaintiffs are correct that questions

---

[3]The prudent approach then, is for a plaintiff to exhaust his administrative remedies in a timely manner and then bring suit in district court before the 6 year statute of limitations has expired.

have been raised about *Spannaus*, *see* Pls' Opp. at 15, it has not been overruled.

Plaintiffs do not explain their argument beyond citing language from a footnote in *Carter v. Dep't of the Navy,* 2006 WL 2471520, *4 n.13 (D.D.C. Aug. 24, 2006). *See* Pls' Opp. at 15. The language plaintiffs' cite from *Carter* addresses the issue of whether the Supreme Court's opinion in *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89 (1990), finding that the 30-day statute of limitations on claims brought pursuant to Title VII of the Civil Rights Act of 1964, was not jurisdictional and was therefore subject to equitable tolling, should apply to the statute of limitations set forth in § 2401(a).[4] *See id.*, 498 U.S. at 94-96. The D.C. Circuit raised, without deciding, this question in *Felter v. Kempthorne*, 473 F.3d at 1260, recognizing that there is some tension between the Supreme Court's holding in *Irwin* that "'the same rebuttable presumption of equitable tolling applicable to suits against private defendants should also apply to suits against the United States'. . .and this court's precedent that 'unlike an ordinary statute of limitations, § 2401(a) is a jurisdictional condition attached to the government's waiver of sovereign immunity.'" *Id.* at 1260 (citing *Irwin*, 498 U.S. at 95-96 and *Spannaus*, 824 F.2d at 55) (internal citations omitted).

While they raised the question, neither the district court in *Carter*, nor the circuit court in *Felter*, actually decided the issue of whether or not § 2401(a) is in fact not jurisdictional and therefore subject to equitable tolling.[5] In both cases, the courts did not reach the issue because they

---

[4]Notably, the Supreme Court went on to find, in *Irwin*, that though equitable tolling was available to plaintiff, his claim– that he should be given the benefit of equitable tolling because while his attorney had been notified of the EEOC's decision thereby starting the clock on the statute of limitations, he himself had not been aware of the decision until the period had run– was nothing more than "a garden variety claim of excusable neglect" and insufficient to warrant tolling of the limitations period. *See id.* at 96.

[5]The language plaintiffs cite from *Kendall v. Army Board for Correction of Military Records*, 996 F. 2d 362 (D.C. Cir. 1993), claiming that it supports their argument that § 2401(a)

found that even if it were, the respective plaintiffs would not be entitled to equitable tolling. *See*

*Carter*, 2006 WL 2471520 at *4; *Felter*, 473 F.3d at 1260. Furthermore, the Supreme Court recently

suggested it is moving away from *Irwin*, holding in *Bowles v. Russell*, 2007 WL 1702870 (2007):

"Jurisdictional treatment of statutory time limits makes good sense. Within constitutional bounds,

Congress decides what cases the federal courts have jurisdiction to consider. Because Congress

decides whether federal courts can hear cases at all, it can also determine when, and under what

conditions, federal courts can hear them." *Id*. at *4.

### 2. Plaintiffs Are Not Entitled To The Equitable Tolling Of Their Claims

Even if plaintiffs' claims concerning their underlying discharges were subject to equitable

tolling, plaintiffs fail to qualify for such treatment as they do not meet any of the necessary

requirements.[6] "The running of the statute of limitations can be equitably tolled for a complaint filed

after its expiration where a plaintiff demonstrates (1) that he (petitioner) has been pursuing his rights

diligently, and (2) that some extraordinary circumstance stood in his way.'" *Felter v. Norton*, 412

F. Supp. 2d 118, 126 (D.D.C. 2006) (citations omitted). Equitable tolling is only to be applied

---

is subject to equitable tolling, *see* Pls' Opp. at 13-14, addresses not the possibility of tolling the §
2401(a) statute of limitations, but deals with the tolling of claims related to objections that could
have been raised at court-martial but were not. Comparing military courts to state courts, the
D.C. Circuit found that "[m]ilitary courts, like most civilian courts, generally apply a
contemporaneous objection rule- that is, appellate courts will review only those claimed errors
properly presented to the trial court. Because Kendall did not raise his current claims in the
military court system until over 10 years after his discharge and was therefore too late to raise
them properly, he is barred from raising them in federal court absent a showing of good cause
and prejudice." *Id.* at 366. In fact, the *Kendall* court affirmed the dismissal of plaintiff's claims
for lack of jurisdiction given the expiration of the statute of limitations. *Id.* at 366.

[6]While defendants offer this alternative argument, they do not believe the Court should
exercise "hypothetical jurisdiction" in order to reach the issue. *See Steel Co. v. Citizens for a
Better Environment*, 523 U.S. 83, 94 (1998) ("We decline to endorse [the doctrine of
hypothetical jurisdiction]. . .Without jurisdiction the court cannot proceed at all in any cause.").

"sparingly." *See Irwin*, 498 U.S. at 96; *U.S. v. Cicero*, 214 F. 199, 203 (D.C. Cir. 2000). Because plaintiffs have neither diligently pursued their rights in federal district court, nor pointed to any extraordinary circumstances barring them from doing so, even if § 2401 is subject to equitable tolling, plaintiffs should not be granted such treatment.

Plaintiffs made no attempt to diligently pursue claims related to their underlying discharges in federal district court prior to the expiration of the statute of limitations. This case is nothing more than plaintiffs' late filed, last-ditch, attempt to secure relief they have been denied by every other forum they have applied to. As defendants explained in their motion to dismiss, *see id.* at 12-13, plaintiffs brought a *qui tam* challenge to the anthrax vaccine in federal district court in 2000, *see Dingle v. BioPort Corp.*, 388 F.3d 209, 210 (6th Cir. 2000), and challenged their discharges in the Court of Federal Claims in 2005, *see* Ex. 2 to Defs' Mot. to Dismiss. The *qui tam* challenge was dismissed for lack of jurisdiction, *see Dingle*, 388 F.3d at 210, as was the case in the Court of Federal Claims after plaintiffs destroyed jurisdiction themselves by voluntarily dismissing their claims for back pay. *See* Ex. 2 to Defs' Mot. to Dismiss at 5-6. In fact, even when given the opportunity to identify any claims which would be time barred if not transferred to the district court, plaintiffs failed to do so, leaving the Court of Federal Claims with no choice but to dismiss their motion for transfer.[7] *See id.* And plaintiffs have been even less diligent in their pursuit of this case. Though they filed the instant action on December 8, 2005, nearly eight months after the statute of limitations expired, they still lacked the necessary diligence to effect service in a timely and proper

---

[7]Because they were dismissed for lack of jurisdiction, these cases do not toll the statute of limitations on plaintiffs' claims. *See Ciralsky v. Central Intelligence Agency,* 355 F.3d 661, 672 (D.C. Cir. 2004) (quoting *Elmore v. Henderson*, 227 F.3d 1009, 1011 (7th Cir. 2000)).

way, making no serious attempt to effect service until nearly a year after they filed their Complaint.[8]

Plaintiffs have been aware of their discharges, and the circumstances surrounding them, since they were discharged in the early spring of 1999. That they filed other lawsuits stemming from the AVIP and their discharges shows that they made a strategic choice to seek redress for their perceived grievances through routes other than direct challenge in federal district court, which they could have sought at any time within 6 years of their discharges. Having failed to achieve the results they would wish for from these other actions, plaintiffs now bring suit for a third time. Surely, a purpose of a statute of limitations is to prevent plaintiffs from filing suit after suit in forum after forum, indefinitely and until they achieve the result they desire. This is exactly what plaintiffs have done, and their failure to pursue their claims in district court with any semblance of diligence places equitable tolling, even if it were available, beyond their grasp.

Furthermore, plaintiffs point to no extraordinary circumstances that stood in the way of their pursuing their claims. "Extraordinary circumstances are circumstances beyond the control of the complainant which make it impossible to file a Complaint within the statute of limitations. . ." *Felter*, 412 F. Supp. 2d at 126. The only circumstances plaintiffs point to as standing in the way of their timely filing is the State of Connecticut's delay in responding to requests for information under the Connecticut Freedom of Information Act ("CFOIA"). *See* Pls' Opp. at 10-11; 17. This is simply absurd. First, plaintiffs knew they had been discharged in 1999. They had no need to seek records through state freedom of information act proceedings in order to be aware of the claims they now

---

[8]Defendants continue to assert that service was never proper under Fed. R. Civ. P. 4(m). *See* Mot. to Dismiss at 17 n.6.

bring.[9]  Second, even if the completion of plaintiffs' CFOIA case were necessary before plaintiffs could bring suit in district court, the decision on plaintiffs' CFOIA case issued January 10, 2001, giving plaintiffs ample time to file their claims in this Court, within the six year statute of limitations.[10]  *See* AR 0537TLR.  These are simply not "extraordinary circumstances.

## II.    Plaintiffs' Claims For Damages In The First And Third Causes Of Action Must Also Be Dismissed

Relying on *Carter* and *Kidwell v. Dep't of the Army*, 56 F.3d 279 (D.C. Cir. 1995), plaintiffs argue that their damages claims are incidental to their claims for equitable relief, and that the district court can therefore exercise jurisdiction over them.  *See* Pls' Opp. at 19-20.  This argument ignores the fact that plaintiffs have now amended their Complaint to explicitly seek back pay and other damages, and that they continue, in the Amended Complaint, to assert that the Court has jurisdiction over their claims under 28 U.S.C. § 1346, the Little Tucker Act.  *See* Amend. Compl., ¶¶ 4, 42.

First, to the extent plaintiffs attempt to bring these back pay and damages claims pursuant to the Little Tucker Act, they have failed to properly plead a claim under that statute.  As defendants explained in their motion to dismiss, *see id.* at 19-20, because the Administrative Procedure Act ("APA"), 5 U.S.C. 5 U.S.C. § 702, does not waive the United States' immunity to suit for money

---

[9]Plaintiffs imply that the federal government delayed producing documents pursuant to the CFOIA request, apparently contemplating a fraudulent concealment argument, *see* Pls' Opp. at 17, but the CFOIA proceedings happened at the state level and sought documents from the State of Connecticut.  *See* AR0537TLR. That plaintiffs claim they needed documents in the possession of the State of Connecticut in order to bring their claims lends further credence to defendants' argument that plaintiffs' claims lie not against the federal government but against the State of Connecticut.  *See supra* at 13.  Further, it appears from the record that the Department of Defense responded quickly to a FOIA request served upon it by Rempfer.  *See* AR0306TLR.

[10]Plaintiff Rempfer received documents from the Department of Defense in response to an additional FOIA request on September 3, 2003, again providing ample time to file his case within the statute of limitations.  *See* AR0306TLR.

damages, *see* 5 U.S.C. § 702, the only basis upon which plaintiffs could claim a waiver of the United States' sovereign immunity to suit for money damages in this case is the Little Tucker Act. Plaintiffs cannot, however, avail themselves of that waiver, because despite having now amended their Complaint and filed an opposition to defendants' motion to dismiss, they have still not properly pled a claim under the Little Tucker Act. Plaintiffs have failed to cite an independent basis for money damages and to waive damages in excess of $10,000, both of which are required to sustain a Little Tucker Act claim in the district court. *See Waters v. Rumsfeld*, 320 F.3d 265, 271 (D.C. Cir. 2003); *Van Dresek v. Lehman*, 762 F.2d 1065, 1070 (D.C. Cir. 1985) ("for a claim to be based on the Tucker Act, it must be founded either upon a contract or upon a provision in the Constitution, or any Act of Congress, or any regulation of an executive department, that can fairly be interpreted as mandating compensation by the Federal Government for the damages sustained.") (internal quotation marks and citations omitted); *Smalls v. United States*, 471 F.3d 186, 189 (D.C. Cir. 2006) (monetary limitation on Little Tucker Act claims is jurisdictional).

Second, in their opposition plaintiffs attempt to jettison their Little Tucker Act claims by casting their claims for back pay and damages as incidental to their APA claims. *See* Pls' Opp. at 19-20. This argument is not only implausible in light of plaintiffs' Amended Complaint making specific claims for back pay, but it is counter to the relevant case law. The APA provides a waiver of the United States' sovereign immunity only when the suit is one for "other than money damages" and there exists no other adequate remedy. 5 U.S.C. §§ 702, 704. Therefore, if a plaintiff's suit is for money damages, and the Court of Federal Claims could exercise discretion over those claims for money damages, the APA does not confer jurisdiction on district courts to entertain those claims.

While plaintiffs' original Complaint sought unspecified and unnamed damages, they have

removed any ambiguity by amending their Complaint to include claims specifically seeking back pay and other damages.  *See* Compl. ¶¶ 24, 32; Amend. Compl. ¶¶ 4, 42.  As the Federal Circuit recently recognized:

> [W]hen the plaintiff's claims, regardless of the form in which the complaint is drafted, are understood to be seeking a monetary reward from the Government, then . . . a straightforward analysis calls for determining whether the case falls within the jurisdiction of the Court of Federal Claims.  If that court can provide an adequate remedy-if a money judgment will give the plaintiff essentially the remedy he seeks- then the proper forum for resolution of the dispute is not a district court under the APA but the Court of Federal Claims under the Tucker Act.

*Suburban Mortgage Assoc., Inc. v. United States Department of Housing And Urban Development*, 480 F.3d 1116, 1126 (Fed. Cir. 2007).  Any remedy available to plaintiffs for their claims of back pay and other damages could have been provided by the Court of Federal Claims.[11]  Therefore, this Court lacks jurisdiction over those damages claims.

Plaintiffs cite to *Carter*, *Kidwell*, 56 F.3d at 279, and *Wolfe v. Marsh*, 846 F.2d 782 (D.C. Cir. 1988), for the proposition that their claims are ultimately equitable and therefore jurisdiction belongs in the district court.  In all of those cases, though, the plaintiffs made no claims for monetary relief in their complaints.  *See Carter*, 2006 WL 2471520 at *2 n.8 (finding that "nowhere in the complaint is there found any allegation explicitly or in essence seeking monetary relief") (internal quotation marks and citation omitted); *Kidwell*, 56 F.3d at 283 ("Kidwell's complaint did not seek

---

[11]To the extent plaintiffs could make out such a claim, their claims for back pay and damages would likely be rooted in the Military Pay Act, 37 U.S.C. § 204, under the Tucker Act, in the Court of Federal Claims.  The fact that the statute of limitations has run on such a claim "does not mean that [the Court of Federal Claims] could not offer a full and adequate remedy; it merely means that [the plaintiff] did not file his complaint in time to take advantage of that remedy."  *Martinez v. United States*, 333 F.3d 1295, 1320 (Fed. Cir. 2003) (en banc).  In fact, plaintiffs had such remedy available to them, and destroyed jurisdiction over their previous case in the Court of Federal Claims by voluntarily dismissing their claims of back pay.

any monetary relief. Instead, it asked that the defendant be required to correct plaintiff's army records to reflect a military retirement in pay grade E-4. . . on October 8, 1970 with a 100% disability rating, as well as for any other relief that he be may be entitled to.") (internal quotation marks and citation omitted); *Wolfe*, 846 F.2d at 784 ("Conspicuously absent, in his specific offer to amend and in both memoranda submitted by plaintiff requesting summary judgment, is a request that the district court award him back pay."). In the instant action, plaintiffs have specifically amended their Complaint to seek back pay, making the precedent they cite inapposite. Plaintiffs clearly wish to obtain monetary relief by their Complaint. Because they have not waived any claims over $10,000, they may not do so under the Little Tucker Act, and because they seek money damages, they may not do so under the APA.[12]

### III. Plaintiffs' Claims Relating To Their Underlying Discharges Lie Against The State of Connecticut, Not The United States

In their opposition, plaintiffs continue to focus on the alleged dual appointment of their Wing Commander, Col. Burns. They claim that he was both an active duty federal military officer and a member of the CTANG at the time he was commanding their unit. They, however, offer no legal support for their theory that because Col. Burns supposedly held a dual appointment, any actions he took as commander of their CTANG unit were federal, not state, actions. *See* Pls' Opp. at 25.

The nature of Col. Burns' appointment is irrelevant. The salient fact is that he was commanding a state national guard unit whose members plaintiffs themselves admit had not yet been ordered into active federal service. *See* Pls' Opp. at 24 (characterizing the AVIP as "an incident to

---

[12]Additionally, as defendants explained in their motion to dismiss, even if the Court were to find that plaintiffs had properly pled claims under the Little Tucker Act, those claims would be barred by the § 2401(a) statute of limitations. *See* Defs' Mot. to Dismiss at 21.

and a prerequisite for federal mobilization").  Because the members of the CTANG had not been ordered into active federal service at the time that plaintiffs allege they were ordered to resign, the CTANG was at that time functioning as the militia of the State of Connecticut, subject only to the ultimate authority of the Governor of Connecticut.  *See* Conn. Gen. Stats. § 27-14.  In fact, plaintiffs' discharges were accomplished by order of the Governor of Connecticut, further emphasizing the state nature of any actions relating to their discharges.[13]  *See* Ex. 2 to Defs' Mot. to Dismiss at 4; Ex. 3 to Defs' Mot. to Dismiss at 3-4.  Even if Col. Burns was also at that time an active duty federal military officer, in his capacity as commander of the CTANG he was commanding a state national guard whose members had not been ordered into active federal service and were therefore still under state control.  *See Clark v. United States*, 322 F.3d 1358, 1366 (Fed. Cir. 2003) ("We understand *Perpich* to stand for the proposition that members of the National Guard only serve the federal military when they are formally called into the military service of the United States.  At all other times, National Guard members serve solely as members of the State militia under the command of a state governor."); *Maryland v. United States*, 381 U.S. 41, 48 (1965).  Accordingly, any claims plaintiffs have arising from Col. Burns' conduct and their discharges lie against the State of Connecticut, and not the United States.

In their opposition, plaintiffs entirely ignore the case law cited by defendants in support of this argument.  Defendants addressed this issue fully in their motion to dismiss, *see id.* at 30-31,

---

[13]Furthermore, plaintiffs acknowledge that Col. Burns was their "Wing Commander," a state National Guard position, and they admit that "unit leaders issued a policy letter establishing a deadline of the January Unit Training Assembly (UTA, or "drill") to submit to the vaccine."  Amend. Compl. ¶¶ 8, 12.  Additionally, as plaintiff Rempfer acknowledged in his filings before the AFBCMR, the federal AVIP at that time did not explicitly require the vaccination of state National Guard members who had yet to be activated at the time they were ordered to take the anthrax vaccine.  AR0019TLR-0020TLR.  *See also* AR00597TLR.

explaining that even when a state national guard chooses to implement a federal military policy using federal military procedures, unless that national guard unit has been ordered into active federal service, its actions are entirely those of the state. *See Schultz v. Wellman*, 717 F.2d 301, 305 (6th Cir. 1983) ("[t]hat an agency of the state *chooses* to utilize federal substantive and procedural rules in the exercise of its state law authority does not transform the state law character of its actions.") (emphasis in original); *Gilliam v. Miller,* 973 F.2d 760, 764 (9th Cir. 1992) ("[B]ecause neither ORARNG [Oregon Army National Guard] nor the OAG [Oregon Adjutant General] was operating under federal control when Gilmer and Gilliam were terminated from ORARNG, the OAG's action was taken solely in the capacity of a state actor. Because the OAG was not a federal agency when he terminated Gilmer's and Gilliam's membership in the ORARNG, Gilmer and Gilliam do not meet the requisite standards for stating a claim under the APA . . ."); *Zitser v. Walsh*, 352 F. Supp. 438 (D. Conn. 1972) (holding that expulsion of CTANG member from officer candidate school for violation of federal regulation was state action).[14]

## IV. Plaintiffs' Argument That Their Resignations Were Other Than Voluntary Is Entirely Unsupported

In the motion to dismiss, defendants explained that plaintiffs lack standing to challenge their

---

[14]The Court of Federal Claims has already examined this exact issue and ruled that it lacked subject matter jurisdiction over plaintiffs' claims because at the time they were dismissed from the CTANG they were state employees. *See* Ex. 2 to Defs' Mot. to Dismiss at 4-5. While plaintiffs argue this decision should not be given *res judicata* effect because their case before that court was dismissed for lack of jurisdiction, *see* Pls' Opp. at 21, they offer no legal support whatsoever for this assertion. In fact, the case law is clear: "This Circuit has held that *res judicata* applies to dismissal for lack of jurisdiction as well as other grounds." *Novell, Inc. v. United States*, 109 F. Supp. 2d 24, 25 (D.D.C. 2000) (citing *Dozier v. Ford Motor Co.,* 702 F.2d 1189, 1191 (D.C. Cir. 1983)). *See also Kasap v. Folger Nolan Fleming & Douglas, Inc.*, 166 F.3d 1243, 1248 (D.C. Cir. 1999) ("even a case dismissed *without* prejudice has preclusive effect on the jurisdictional issue litigated") (emphasis in original).

underlying dismissals because they voluntarily resigned from the CTANG. As was laid out in the motion to dismiss, *see id.* at 23-25, the case law on this point uniformly holds that even if a plaintiff faces a choice between resignation or an even more unappealing alternative, if he chooses resignation, that resignation is deemed voluntary for standing purposes. *See Lebrun v. England*, 212 F. Supp. 2d 5, 18 (D.D.C. 2002) ("[m]erely because [a] plaintiff was faced with an inherently unpleasant situation in that his choice was arguably limited to two unpleasant alternatives does not obviate the voluntariness of his resignation.") (citation omitted); *Veitch v. England*, 471 F.3d 124, 130-31 (D.C. Cir. 2006) (holding that appellant who resigned rather than face court-martial proceedings, nonetheless voluntarily resigned and therefore lacked standing to bring constitutional claims related to his resignation).[15]

Plaintiffs respond in two ways. First, they claim that the Court must engage in fact finding on their claims that they were constructively discharged. *See* Pls' Opp. at 22. Second, they attempt to distinguish the case law supporting defendants' argument that their resignations were legally voluntary, by asserting, without any legal support, that because they were allegedly ordered to resign their case is qualitatively different.

Defendants' have not raised any factual issue with respect to plaintiffs' resignations. For purposes of a motion to dismiss, "[t]he complaint is construed liberally in the plaintiffs' favor, and [the Court] grant[s] plaintiffs the benefit of all inferences that can be derived from the facts alleged.

---

[15]Plaintiffs claim *Veitch* is inapposite because it involved court-martial proceedings which would not have been applicable to them as members of the CTANG. *See* Pls' Opp. at 26. This confuses the factual situation with the legal import of the *Veitch* ruling with respect to issues of standing – that even a plaintiff who resigns rather than face legal proceedings resigns voluntarily. Because plaintiffs could have faced administrative discharge boards and used that procedure as an opportunity to directly challenge their discharges, *Veitch* is entirely applicable to the instant action.

16

However, the court need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint." *Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994). Plaintiffs seem to misunderstand this presumption, arguing that because they have alleged they were constructively discharged, the Court must accept as true that their discharges were coerced. Even taking the facts as pled by plaintiffs, though, they do not overcome the legal presumption that, for purposes of standing, their resignations are presumed to be voluntary. *See McIntyre v. United States*, 30 Fed. Cl. 207, 211 (Fed. Cl. 1993). First, the resignations themselves were submitted as voluntary, and occurred parallel to plaintiffs' requests to transfer to the Air Force Reserve (AFR). *See* Ex. 3 to Defs' Mot. to Dismiss at 3-4. Additionally, plaintiffs admit that they had options other than resigning: "[r]efusing to comply with orders to take the AVA inoculations subjected servicemembers to military disciplinary actions, including courts-martial or administrative discharges." Compl. ¶ 7; Amend. Compl. ¶ 7.

Second, plaintiffs' arguments concerning the case law in this area are without merit. The salient, and undisputed, fact is that plaintiffs resigned before challenging the alleged order to take the vaccine through either court-martial or administrative discharge, the decisions of which, assuming either were adverse, plaintiffs could have challenged both administratively and judicially. *See e.g. New v. Cohen*, 129 F. 3d 639, 647-48 (D.C. Cir. 1997). While plaintiffs claim *Veitch* is inapposite because they were allegedly ordered to resign, while *Veitch* was not, they make no effort to distinguish *Lebrun v. England*, 212 F. Supp. 2d 5 (D.D.C. 2002), in which this Court held that "[m]erely because [a] plaintiff was faced with an inherently unpleasant situation in that his choice was arguably limited to two unpleasant alternatives does not obviate the voluntariness of his resignation." *Id.* at 18 (citation omitted). Nor do they address *Christie v. United States*, 207 Ct. Cl.

17

333 (Cl. Ct. 1975), in which the Court of Federal Claims found that a plaintiff voluntarily resigned even though she resigned after being told by her employer that if she did not do so she would be terminated for cause. *Id.* at 586. Even assuming plaintiffs were ordered to either take the anthrax vaccine or resign, they had a choice. They could have challenged the lawfulness of these orders in an administrative forum, and then sought review of that decision in the federal courts. Instead, plaintiffs voluntarily opted to resign. Accordingly, they now lack standing to challenge their discharges in the district court.[16]

## V.   The AFBCMR's Decision Was Reasonable And Should Be Upheld

In their opposition, plaintiffs raise three challenges to the adequacy of the AFBCMR's decisions on their applications for the correction of their military records. First, plaintiffs claim that the AFBCMR erred in failing to amend their OPRs to include the details of their work on Tiger Team Alpha. Second, they claim that the AFBCMR failed to properly consider their claims of constructive discharge. And third, they argue that the AFBCMR committed legal error in its analysis of the import of the *Doe v. Rumsfeld* decisions. *See* Pls' Opp. at 25-35. As explained below, each of these arguments fails because the AFBCMR's decision was the reasonable product of appropriate consideration of the relevant factors.[17]

---

[16]*Carmichael v. United States*, 298 F.3d 1367 (Fed. Cir. 2002), cited by plaintiffs, *see* Pls' Opp. at 28, sheds no light on this standing issue, as it involved a situation where the Navy repeatedly and knowingly violated its own internal procedures in refusing to provide plaintiff with religious accommodation procedures to which he was found to be entitled. The court specifically noted, however, that "[w]e have stated that an employee could not reasonably feel coerced into resigning where an agency's legitimate actions merely produced 'unpleasant working arrangements' or 'a distateful set of alternatives. . .'" *Id.* at 1376.

[17]Defendants herein reiterate their argument that to the extent plaintiffs attempt to use review of the AFBCMR decision as a means to make an end run around the statute of limitations barring them from directly challenging their underlying dismissals, their claims should be

18

### A.    The AFBCMR Did Not Err In Deciding Not To Require Mention of Tiger Team Alpha in Plaintiffs' OPRs.

Plaintiffs claim that because OPRs are "supposed to reflect the actual work than an officer does" because plaintiffs' OPRs do not reflect their involvement with Tiger Team Alpha, the OPRs "do not properly document the work they did during the relevant time period." Pls' Opp. at 25. Plaintiffs' unsupported assertions on this issue, however, cannot overcome defendants' legal arguments presented in the motion to dismiss.[18]

---

dismissed. *See* Mot. to Dismiss at 31-33. The Court must limit its review of the AFBCMR decision to an analysis of whether the AFBCMR followed appropriate procedures and considered the relevant factors in reaching a reasonable and supported decision. *See Bittner*, 625 F. Supp. at 1029. Plaintiffs' arguments to the contrary, *see* Pls' Opp. at 32-33, are again, completely devoid of any legal support whatsoever.

[18]Upon further examination, the Executive Director of the AFBCMR realized that the record filed with defendants' motion to dismiss was inadvertently missing a number of pages that were part of the record before the AFBCMR at the time it considered plaintiff Rempfer's case. *See* Decl. of Mack Burton (attached as Ex. 1). Rempfer's record has now been corrected, and the corrected version has been filed with this memorandum. The letter and attachments plaintiffs filed as Exhibit 1 to their opposition brief, appear at page AR000171TLR, though the date on the (apparently misdated) version of the letter in the record is July 21, 2001, not July 21, 2004 as is the case with the otherwise identical letter filed as plaintiffs' Exhibit. *See* Burton Decl. ¶ 2. Additionally, as plaintiffs amended their Complaint to include claims related to their requests for reconsideration of the AFBCMR's decisions, the record of proceedings on Rempfer's request for reconsideration has been included as part of the record filed with this memorandum. The record on Dingle's request for reconsideration has been compiled in a separate volume, and is also filed with this memorandum. The records on reconsideration were not initially included in the records filed with the Court as the reconsideration process was ongoing at the time plaintiffs' filed their Complaint. *See* AR0004TLR; AR0018RED. Citations to Rempfer's record in this memorandum are to the corrected record filed herewith. Citations to Dingle's record refer to the record on the initial decision already filed (AR0001RED-0015RED) and to the record on reconsideration, filed as a separate volume, with this memorandum (pages AR0016RED-AR0029RED). Subsequent to certification and prior to filing of these records, plaintiffs', and other individuals', social security numbers were redacted.

By Order of May 8, 2007, the Court instructed plaintiffs to respond to defendants' motion to dismiss, stating that defendants need not reply to the Amended Complaint at this time. Defendants submit that the record on reconsideration shows that defendant AFBCMR fully considered plaintiffs' arguments for reconsideration and reasonably denied those requests.

As defendants explained in their motion to dismiss, *see id.* at 36-38, the AFBCMR's jurisdiction to amend OPRs is limited to those instances in which correction is "necessary to correct an error or remove an injustice." 10 U.S.C. § 1552(a)(1). "Error can be defined as either legal or factual. Injustice, when not also error, is treatment by the military authorities that shocks the sense of justice." *Sawyer v. U.S.*, 18 Cl. Ct. 860, 868 (Cl. Ct. 1989) (citation omitted), *rev'd on other grounds*, 930 F.2d 1577 (Fed. Cir. 1991). *See also Reale v. United States*, 1976 WL 23815, at *1 (Jan. 9, 1976 Ct. Cl.) ("'Error means legal or factual error. Normally, it is such that a court of law could correct it whether the solider or sailor had first applied to a Correction Board, or not. . .'Injustice', when not also 'error', is treatment by the military authorities that shocks the sense of justice, but is not technically illegal.").

While plaintiffs may believe their OPRs would better reflect their service if they included specific mention of their Tiger Team Alpha involvement, the fact remains that their OPRs list no specific duties other than those directly related to their flight skills and readiness. *See* AR0015TLR-0016TLR; AR0014RED-0015RED. Plaintiffs' duties are not misstated in their OPRs, so there is no "error" as defined by the case law. Furthermore, the lack of information concerning Tiger Team Alpha does not "shock the sense of justice," and so cannot be considered an injustice. In finding that plaintiffs' OPRs did not need to be amended to include mention of Tiger Team Alpha, the AFBCMR followed the correct advice of the Headquarters Legal Office of the National Guard Bureau (NGB-JA), which noted: "superiors wrote [Rempfer's] OPR based on his duty performance. What to include in that report is a judgment question. If they put something in his OPRs that he did not do,

---

Defendants, however, respectfully request that should the Court wish to consider plaintiffs' claims in the Amended Complaint concerning the requests for reconsideration, defendants be given opportunity to submit full briefing on that issue.

that would be a clear mistake of fact that should be corrected. However, the supervisor's discretion as to what facts and duties to report is not any indication of a factual mistake or an injustice in this case." AR0453TLR.

### B. The AFBCMR Did Not Commit Error In Failing To Hold That Plaintiffs Were Constructively Discharged

In their opposition, plaintiffs claim that the AFBCMR "entirely ignored Plaintiffs [*sic*] evidence regarding constructive discharge" and "fail[ed] to even address the constructive discharge facts . . . ." Pls' Opp. at 25 and 28. This, they argue, was arbitrary and capricious and not in keeping with AFBCMR precedent. *See id.*

It is difficult to see how it could reasonably be argued that the AFBCMR "entirely ignored" plaintiffs' claims of constructive discharge. The AFBCMR had before it extensive submissions from the plaintiffs setting forth, among other things, what plaintiffs believed was evidence of their alleged constructive discharges, and should be presumed to have reviewed these materials. *See FTC v. Owens-Corning Fiberglass Corp.*, 626 F.2d 966, 975 (D.C. Cir. 1980) ("until evidence appears to the contrary, agencies are entitled to a presumption of administrative regularity and good faith"). In fact, the opinion of the NGB-JA considered the issue, *see* AR0450TLR, and the AFBCMR addressed the claim, stating: "applicant contends he was coerced into transferring from the Air National Guard to the Air Force Reserve for failure to participate in the Anthrax Vaccination Immunization Program (AVIP)." AR0606TLR.[19] There is no evidence that the AFBCMR "ignored" plaintiffs' constructive discharge claims.

Nor was the AFBCMR's finding that plaintiffs transferred to the AFR voluntarily, arbitrary,

---

[19]The AFBCMR made the same notation in Dingle's case. *See* AR0008RED.

21

capricious, or out of line with precedent.  Under the law of this Circuit, plaintiffs' resignations are deemed voluntary.  *See supra* 15-17.  As their resignations were made voluntarily, and coincided with their requests to transfer to the AFR, it was reasonable for the AFBCMR to find that plaintiffs were not constructively discharged.

Furthermore, none of the AFBCMR cases plaintiffs cite in their opposition show otherwise. They involve situations much more egregious than plaintiffs', and in each case the Policy and Legislative Initiatives Division of the ANG (ANG-DPPI) reviewing the cases found facts sufficient to make out a claim of constructive discharge and recommended relief be granted.  Case BC-2003-00343 involved a member of the Michigan National Guard whose commanding officer was found to have deliberately made false statements concerning his flying status and security clearance, and then wrongfully ordered him to undergo unprescribed medical treatment for alcohol abuse.  *See* http://boards.law.af.mil/AF/BCMR/CY2004/BC-2003-00343.doc.  Case BC-2003-03023 concerned a member of the Mississippi Air National Guard who claimed that the officer promotion system was manipulated by his commanding officer to convince him that his career as an Air Force Officer was over.  The commanding offer was later found to have falsified documents, made false official statements to congressional inquiries, cheated on skill-level upgrade and professional military education class tests, and condoned racial discrimination, and was himself dismissed as result.  *See* http://boards.law.af.mil/AF/BCMR/CY2004/BC-2003-03023.doc.  As opposed to plaintiffs' cases, in both of these AFBCMR cases the ANG/DPP found that they had indeed been constructively discharged despite their seemingly voluntary resignations, and recommended they be granted relief, and the AFBCMR relied heavily on these findings in reaching its conclusions.

Much more applicable here is case BC-2004-00203, heard the same day as Rempfer's initial

appeal to the AFBCMR, in which the applicant, a member of the Kansas Air National Guard claimed he had been constructively discharged because he was threatened with Article 15 action, and a discharge review board with other than honorable discharge implications, if he did not comply with an order to take the anthrax vaccine.  In October 1999, the applicant was informed he would be involuntarily discharged for misconduct, and on the advice of counsel agreed to resign, waiving his right to a DRB in exchange for an honorable discharge.  The USAF-JAA found, as it did in plaintiffs' cases, that in voluntarily resigning rather than proceeding through an administrative discharge, the applicant forfeited his opportunity to argue that the AVIP, and the order to take the vaccine, were illegal.  *See* http://boards.law.af.mil/AF/BCMR/CY2005/BC-2004-00203.doc at 2. Because the *Doe v. Rumsfeld* litigation was ongoing at the time, the AFBCMR did not rule on the legality of the AVIP, but stated that it "found no compelling basis at this time to recommend granting the relief sought in this application" and noted that it "agree[d] with the rationale in the JAA advisory and adopt[ed] it as [its] own."  *See id.* at 7.

### C.    The AFBCMR Did Not Commit Legal Error In Its Analysis Of *Doe v. Rumsfeld*

Beyond simply asserting that *Doe v. Rumsfeld*, 341 F. Supp. 2d 1 (D.D.C. 2004), governs their case, plaintiffs offer no substantive response to the legal arguments defendants have set forth on this issue.[20]  There is no need to reiterate here what defendants have already argued fully in their

---

[20]Plaintiffs claim defendants' analysis on the retroactivity of the *Doe* decision is an "attempt to conflate the remedy granted in equity, namely an injunction, with the underlying factual determination by the *Doe* court," Pls' Opp. at 33.  The *Doe* factual decision, however, was that the FDA had not followed the proper notice and comment requirements in approving the anthrax vaccine for use against inhalation exposure to anthrax, and that as a result the military could not use the vaccine without informed consent or a Presidential waiver.  *See Doe*, 341 F. Supp. 2d at 16.  That question is a separate issue from the legality of a specific order to take the anthrax vaccine given to an individual at a particular point in time.  *See United States v. Kisala*, 64 M.J. 50, 53 (C.A.A.F. 2006) (distinguishing between these two issues).

motion to dismiss, *see id.* at 8-10; 39-41, but it bears note that plaintiffs continue to focus on *Doe* while entirely ignoring the many other cases concerning the AVIP program, all of which found that the AVIP was legal. *See Mazares v. Dep't of the Navy*, 302 F.3d 1382, 1385 (Fed. Cir. 2002) ("The Navy did not exceed its authority or otherwise abuse its discretion by ordering [plaintiffs] to undergo anthrax vaccination."); *United States v. Washington*, 57 M.J. 394, 398 (C.A.A.F. 2002) ("When a commander gives an order that is reasonably necessary to accomplish the mission– including. . .taking a vaccine to counter a biological weapon– the servicemember is obligated to obey or face punishment under Articles 90, 91, or 92, UCMJ."); *O'Neil v. Sec. of the Navy*, 76 F. Supp. 2d 641, 645 (W.D. Pa 2001) ("the evidence established that the anthrax vaccination program is a lawful response by defendants to the dangers with which the military personnel of the United States may be confronted in the future. . . the vaccine is not an experimental drug."). Not only do plaintiffs not respond to these cases, but they offer no argument as to why *Doe* would hold more precedential value before the AFBCMR than any of these other cases, especially when it is not clear that the AFBCMR is bound by any of them. *See Bates v. Rumsfeld*, 271 F. Supp. 2d 54, 62 n.16 (D.D.C. 2002) ("Plaintiffs' counsel also argued at oral argument that a favorable declaration by this Court would permit Bates to challenge his discharge before the [AFBCMR]. However, that board would not be bound by this Court's decision. . .").[21]

Even more conspicuously missing from plaintiffs' opposition is a response of any kind to *United States v. Kisala*, 64 M.J. 50 (C.A.A.F. 2006), a decision of the United States Court of

---

[21]Even if *Doe* were binding precedent on the AFBCMR, plaintiffs do not address the D.C. Circuit's finding that the district court granted only injunctive relief, indicating that the district court's decision does not apply retroactively. *See Doe v. Rumsfeld*, 172 Fed. Appx. 327, 328 (D.C. Cir. Feb. 9, 2006) (*per curiam*).

Appeals For the Armed Forces, postdating *Doe*, holding that an order given to take the anthrax vaccine was legal.  As the court held: "[t]he linchpin of this case is the presumed legality of the military order to receive the Vaccine.  The district court opinions [in *Doe*] neither recognize nor address this critical presumption."  *Id.* at 53.  Surely *Kisala* bears the greatest weight before the AFBCMR; it is not only a decision from a military court, but it squarely addresses the legality of orders given concerning the anthrax vaccine in the post-*Doe* context.

## CONCLUSION

For the reasons set forth above, and in defendants' memorandum in support of their motion to dismiss, the Court should dismiss this action pursuant to Fed. R. Civ. P. 12(b)(1) and (b)(6) for lack of subject matter jurisdiction and failure to state a claim upon which relief may be granted.

Dated: June 21, 2007                    Respectfully submitted,

                                        PETER D. KEISLER
                                        Assistant Attorney General
                                        JEFFREY A. TAYLOR
                                        United States Attorney
                                        VINCENT M. GARVEY
                                        Deputy Branch Director

                                        _____/s/ Jonathan Zimmerman_____
*Of Counsel:*                           Jonathan E. Zimmerman (MA Bar #654255)
Major Thomas R. Uiselt                  Trial Attorney
AFLOA/JACL                              U.S. Department of Justice
1501 Wilson Blvd., Suite 700            Civil Division, Federal Programs Branch
Arlington, VA 22209                     20 Massachusetts Ave., N.W., Room 7116
Tel. (703) 696-8506                     Washington, D.C., 20001
Fax. (703) 696-8578                     Telephone: (202) 353-0441 / Fax: (202) 318-7610
                                        jonathan.zimmerman@usdoj.gov
                                        *Attorneys for Defendants*