FREEDOM OF INFORMATION COMMISSION
OF THE STATE OF CONNECTICUT

In the Matter of a Complaint by        FINAL DECISION

Thomas Rempfer,

        Complainant

   against        Docket #FIC 2000-303

William A. Cugno, Adjutant
General, State of Connecticut,
Military Department,

        Respondents        January 10, 2001


The above-captioned matter was heard as a contested case on July 24, 2000, at which time the complainant and the respondent appeared, stipulated to certain facts and presented testimony, exhibits and argument on the complaint. For purposes of hearing, this case was consolidated with Docket #FIC 2000-304; Russell E. Dingle v. William A. Cugno, Adjutant General, State of Connecticut, Military Department; and Michael J. Tuohy, Staff Judge Advocate, State of Connecticut, Military Department, Connecticut Army National Guard.

After consideration of the entire record, the following facts are found and conclusions of law are reached:

1. The respondent is a public agency within the meaning of §1-200(1), G.S.

2. It is found that, by letter dated July 15, 1999, the complainant requested that the respondent provide him with copies of:

    a. "any and all documents, records, memoranda or messages (in any
    form) in the possession of the Connecticut National Guard which mention
    by name, or otherwise identify Captain Thomas Rempfer or Major
    Russell E. Dingle or both for the period 1 July 1998 through 15 July
    1999; [and]

    b. any and all documents, records, memoranda or messages (in any form)

234

AR-0236TLR

in the possession of the Connecticut National Guard which address the anthrax vaccine or the anthrax vaccination program..."

By such letter, the complainant also asked that the respondent contact him with any questions regarding the request.

3. It is found that the respondent acknowledged receipt of the request described in paragraph 2, above, on July 29, 1999, and informed the complainant of the statutory copying charges. It is further found that the complainant immediately notified the respondent of his acceptance of the copying charges.

4. It is found that, having failed to receive the requested records, during a May 10, 2000 meeting with the respondent, the complainant verbally renewed his request as described in paragraph 2, above.

5. It is found that, under cover letter dated May 18, 2000, the respondent provided the complainant with several hundred pages of records. It is found that such records consisted of copies of published articles, printouts of certain e-mails and websites, press releases, and minutes of a first sergeants' meeting. It is further found that such records were partially responsive to the request described in paragraph 2.b., above, but not responsive to the request described in paragraph 2.a, above.

6. By letter dated June 13, 2000, and filed with the Commission on June 15, 2000, the complainant alleged that the respondent violated the Freedom of Information [hereinafter "the FOI"] Act, by denying him copies of the records described in paragraphs 2 and 4, above. The complainant asked for the imposition of civil penalties in this matter.

7. Section 1-210(a), G.S., provides in relevant part that:

> [e]xcept as otherwise provided by any federal law or state statute, all records maintained or kept on file by any public agency, whether or not such records are required by any law or by any rule or regulation, shall be public records and every person shall have the right to inspect such records promptly during regular office or business hours or to receive a copy of such records in accordance with the provisions of section 1-212....

235

AR-0237TLR

8. Section 1-212(a), G.S., provides in relevant part that:

(a) Any person applying in writing shall receive, promptly upon request, a plain or certified copy of any public record....

9. It is found that, to the extent that the requested records described in paragraphs 2 and 4, above, and 13, below, exist, such records are public records within the meaning of §§1-200(5) and 1-210 (a), G.S.

10. It is found that, on July 19, 2000, the complainant received a second packet of records from the respondent, and that such packet consisted of records that were partially responsive to the request described in paragraph 2.a, above.

11. It is found that, by providing records to the complainant as described in paragraphs 5 and 10, above, respectively ten months and one year after the request described in paragraph 2, above, the respondent violated of §§1-210(a) and 1-212(a), G.S.

12. It is found that, during 1998 and 1999, the Connecticut Army National Guard [hereinafter "the Guard"] was in the process of addressing the controversial issue of an anthrax vaccine program, that the complainant herein was an officer in the Guard during such time, that he was assigned by the Guard to research the vaccine, that he decided not to take the vaccine, and that he ultimately resigned his commission as a Guard officer as a result of the anthrax vaccine controversy, after being ordered to so resign.

13. At the hearing in this matter, the complainant contended that the following records are responsive to his requests, as described in paragraphs 2 and 4, above, and were not provided by the respondent:

   a. "Anthrax Questions and Answers" by Lt. Col. Leeper;

   b. February 5, 1999, e-mail from the complainant to Col. Burns;

   c. February 7, 1999, e-mail from Col. Burns to Lt. Col Leeper;

236

AR-0238TLR

  d. e-mails to and from Col. Burns and the complainant, transmitted through Bradley Air National Guard Base Local Area Network and forwarded to Col. Burns in Kuwait;

  e. Washington Air National Guard e-mail detailing comments by CMSgt Broadbent; and documents evidencing communications therein;

  f. minutes of first sergeants' council meetings conducted during the relevant time period, other than those minutes provided as described in paragraph 5, above;

  g. e-mails from the complainant to Captain Statchen, referencing legal issues and threats communicated by Air National Guard Commanders and documents concerning any subsequent legal investigations into such threats;

  h. February 19, 1999, e-mail from Col. Burns to the complainant;

  i. records related to a charge made by Tiger team Alpha officers that the Commander acted illegally;

  j. records documenting officers and enlisted men who refused the anthrax vaccine and subsequent demotions;

  k. Col. McCusker's December 6, 1998 policy statement;

  l. records detailing Tiger Team Bravo's recommendations to the Commander and recommendations for the sanctioning of officers who were not pilots;

  m. Lt. Col. Swift's January 13, 1999 letter to the squadron;

  n. records related to an accounting of the loss of "two" pilots due to the anthrax controversy;

  o. records related to any inquiry into the discrepancy between the "two" pilot losses and "eight" pilot losses;

  p. letter sent by eight Guard pilots to Sen. Dodd's legislative assistant, Dominic Del Pozzo, clarifying that eight pilots had resigned due to the anthrax vaccine policy, which letter was copied to Col. Burns;

  q. records related to Senate and Pentagon investigations into false reporting of resignation numbers;

  r. reports from the 103rd Fighter Wing to the Pentagon concerning objections to Gulf deployment;

  s. Anthrax Integrated Process Team slides for the Anthrax Vaccine Immunization Program prepared for the Secretary of Defense and the Air Force Chief of Staff in a briefing on April 28, 1999;

  t. reports of higher pilot losses to higher headquarters explaining eight losses versus lower losses;

u. medical and personnel files of the complainant and Russell E. Dingle;

v. Major Dingle's consolidated Tiger Team Alpha list of questions for the 103rd Fighter Wing Commander, Col. Burns, and material collected and submitted by Tiger Team Alpha members Staff Sergeant Burgess;

w. communications referenced in a letter written by Deputy Assistant Secretary Charles Cragin explaining his conversation with Col. Burns;

x. Force Health Protection Guidelines message and Annex E to the USAF Anthrax Program;

y. October 14, 1998 fax from Bioport Corporation to Major Strawder, subsequently faxed to Col. Burns on October 15, 1998;

z. Dr. Meryl Nass' paper from the Infectious Clinics of North America, "Anthrax Vaccine: A model response to the treatment of biological warfare," July 19, 1998;

aa. articles and editorials published in Connecticut newspapers regarding the anthrax vaccine policy;

bb. sanctions on any members of the 103rd Fighter Wing who spoke out publicly on the anthrax issue without going through the Public Affairs Office;

cc. communications from Maj. Strawder to Lt. Col. Gary Costello referenced in a March 1999 article in the National Guard magazine;

dd. communications from Col. Burns to higher headquarters on anthrax vaccine medical literature;

ee. redacted information concerning tuition assistance and waiver denials issued in the spring of 1999, due to the refusal to be vaccinated;

ff. Col. Burns' answers to the questions regarding the anthrax vaccine posed by Tiger Team Alpha;

gg. letter of reprimand issued to Major Lawrence P. Rizzo for sending e-mails related to anthrax, which letter possibly references the complainant or Mr. Dingle;

hh. response from Maj. Gen. Weaver to Col. Burns regarding Tiger Team Alpha questions;

ii. out-processing paperwork prepared by the personnel office of the 103rd Fighter Wing under the direction of the Wing Commander for pilots refusing the anthrax vaccine shot and orders to such officers to resign;

jj. communications between the personnel office and the Wing Commander, Col. Burns, including orders to review personnel files of officers refusing the shots;

238

kk. records related to the order to resign issued January 22, 2000;

ll. records relating to the legality of the anthrax order and any investigation into such legality, including any analysis, findings, or conclusions;

mm. transfer paperwork of the eight officers who resigned as a result of the anthrax controversy, including transcripts of any exit interviews;

nn. any records detailing the Commander's communications with the United States Air Force Academy concerning transfer of the eight pilots who resigned;

oo. the enclosures of a February 1999, fax coversheet sent by Col. Burns, which coversheet was previously provided;

pp. a Commander's toolbox attachment, including extensive education efforts launched by the Department of Defense and the National Guard on the anthrax controversy, which toolbox was referenced in a previously provided email but not included therein;

qq. multiple videotapes of meetings extensively covering the anthrax controversy, including a December 3, 1998 anthrax briefing with Dr. Huxsoll, a September drill pilot meeting, a family day drill pilot meeting, a November drill pilot meeting, and January drill pilot meeting.

14. With respect to the records described in paragraph 13, above, the respondent contended that it would have been helpful had the complainant provided a more detailed list of requested records in the requests described in paragraphs 2 and 4, above. It is found, however, that the complainant's requests were for any and all records related to the anthrax issue. It is also found that, prior to the filing of the complaint herein, the respondent never attempted to communicate with the complainant in order to clarify the types of records sought if he believed the requests were unclear.

15. It is found that the respondent did not thoroughly search the records that he keeps on file or maintains in response to the requests described in paragraphs 2 and 4, above. It is found that the records described in paragraph 13, above, to the extent that such records exist, are fairly within the scope of the requests described in paragraphs 2 and 4, above. Therefore, it is concluded that the respondent violated §§1-210(a) and 1-212(a), G.S., by failing to promptly provide the complainant with such records in response to his requests, absent any proven exemptions.

16. It is further found that the violations described in paragraphs 11 and 15, above, were without reasonable grounds, within the meaning of §1-206(b)(2), G.S.

17. It is further found that certain records maintained by the respondent that are responsive to the complainant's requests may be contained within the personnel or medical and similar files of seven officers other than the complainant which officers also resigned from the Guard as a result of the anthrax

239

controversy.

18. Section 1-214(b), G.S., in relevant part states:

> "[w]henever a public agency receives a request to inspect or copy records contained in any of its employees' personnel or medical files and similar files and the agency reasonably believes that the disclosure of such records would legally constitute an invasion of privacy, the agency shall immediately notify in writing (1) each employee concerned, provided such notice shall not be required to be in writing where impractical due to the large number of employees concerned and (2) the collective bargaining representative, if any, of each employee concerned...."

19. Section 1-214(c), G.S., in relevant part states:

> "[a] public agency which has provided notice under subsection (b) of this section <u>shall disclose the records requested unless it receives a written objection from the employee concerned</u>...Upon the filing of an objection as provided in this subsection, the agency shall not disclose the requested records unless ordered to do so by the Freedom of Information Commission pursuant to section 1-206...."

20. It is found that the respondent did not notify the seven employees described in paragraph 17, above, of the requests described in paragraphs 2 and 4, above, within the meaning of §1-214, G.S. It is therefore concluded that by failing to notify the seven service members if he reasonably believed that disclosure of records contained in their personnel, medical and similar files would legally constitute an invasion of privacy, the respondent violated such statute.

21. It appears that the seven employees described in paragraph 17, above, are not likely to object to disclosure to the complainant of the requested records described in paragraphs 2, 4, and 13, above, and therefore the following order is recommended based on the record and in an effort to avoid further delay in this matter.

The following order by the Commission is hereby recommended on the basis of the record concerning the above-captioned complaint:

1. The respondent shall immediately remit to this Commission a civil penalty amount as follows: $100.00.

2. If he has not already done so, the respondent forthwith shall conduct a thorough search of the paper and electronic records, including computer stored and video taped records of the Connecticut National Guard, for all existing requested records, as described in paragraphs 2, 4, and 13, of the findings, above. Upon completion of such search, if records are located which have not already been provided to the complainant, such records shall be immediately provided to the complainant without charge, with the exception of any records contained within the personnel or medical and similar files of the seven service members other than the complainant who resigned from the Guard as a result of the anthrax controversy.

3. The respondent shall forthwith provide written notification of the final decision in this matter and the requests described in paragraphs 2, 4, and 13, above, within the meaning of §1-214, G.S., to the seven employees described in paragraph 17 of the findings, above. If such employees provide written waivers to release of records to the complainant, or if such employees fail to provide the written objection required by such statute, the respondent shall thereafter immediately provide requested records contained within such files to the complainant, free of charge.

4. If the respondent receives written objections from the employees described in paragraph 17 of the findings, above, he shall immediately provide copies of such objections to the complainant. Upon receipt of any such objections, the complainant shall immediately inform the Commission in writing if he nevertheless wishes to pursue his complaint with respect to any such records. Upon the Commission's receipt of such written notification from the complainant, a hearing will be convened to determine whether records for which an objection is filed are disclosable under the FOI Act.

5. If, upon completion of the search described in paragraph 2 of the order, above, the respondent finds that any of the records described in paragraph 13 of the findings, above, no longer exist or never existed, he shall forthwith so inform the complainant in a written affidavit attesting to such fact.

6. Henceforth, the respondent shall strictly comply with the provisions of the §§1-210(a) and 1-212(a), G.S.

241

AR-0243TLR

Approved by Order of the Freedom of Information Commission at its regular meeting of January 10, 2001.

_____

Dolores E. Tarnowski

Clerk of the Commission

PURSUANT TO SECTION 4-180(c), G.S., THE FOLLOWING ARE THE NAMES OF EACH PARTY AND THE MOST RECENT MAILING ADDRESS, PROVIDED TO THE FREEDOM OF INFORMATION COMMISSION, OF THE PARTIES OR THEIR AUTHORIZED REPRESENTATIVE.

THE PARTIES TO THIS CONTESTED CASE ARE:

Thomas Rempfer

3811 Phelps Road

West Suffield, CT 06093

William A. Cugno, Adjutant General,

State of Connecticut, Military Department

c/o Michael J. Tuohy, Staff Judge Advocate

CANG, National Guard Armory

360 Broad Street

Hartford, CT 06105-3795

---

Dolores E. Tarnowski

Clerk of the Commission

243

AR-0245TLR

# FREEDOM OF INFORMATION COMMISSION
# OF THE STATE OF CONNECTICUT

| | |
|---|---|
| In the Matter of a Complaint by | FINAL DECISION |
| Russell E. Dingle, | |
| Complainant | |
| against | Docket #FIC 2000-304 |
| William A. Cugno, Adjutant General, State of Connecticut, Military Department; and Michael J. Tuohy, Staff Judge Advocate, State of Connecticut, Military Department, Connecticut Army National Guard, | |
| Respondents | January 10, 2001 |

The above-captioned matter was heard as a contested case on July 24, 2000, at which time the complainant and the respondents appeared, stipulated to certain facts and presented testimony, exhibits and argument on the complaint. For purposes of hearing, this case was consolidated with <u>Docket # FIC 2000-303; Thomas Rempfer v. William A. Cugno, Adjutant General, State of Connecticut, Military Department</u> [hereinafter "Docket #FIC 2000-303"]. After the hearing in this matter, by letter dated and filed July 28, 2000, the complainant requested that the hearing officer accept additional evidence into the record, pursuant to §1-21j-38, Connecticut Regulations of State Agencies. Such request is hereby denied.

After consideration of the entire record, the following facts are found and conclusions of law are reached:

1. The respondents are public agencies within the meaning of §1-200(1), G.S.

2. It is found that, by letter dated August 1, 1999, the complainant requested that the respondents provide him with copies of:

>   a. "any and all documents, records, memoranda or messages (in any form) in the possession of the Connecticut National Guard which mention by name or otherwise identify Major Russell E. Dingle for the period 1 July 1998 through 31 July 1999;

244

AR-0246TLR

b. the telephone records of the 118 Fighter Squadron on 14 and 15 January 1999 (all telephones located within the 118 Fighter quadroon building);

c. the telephone records from Connecticut National Guard Headquarters (to include but not limited to the telephones of BGen Demers and MGen Gay) for the dates 14 January 1999 through 12 February 1999."

3. It is found that, by memorandum dated August 5, 1999, the respondents acknowledged receipt of the request described in paragraph 2.a, above, and informed the complainant that such records would be assembled for review, and that copies would be made available at the fee of twenty-five cents per page. It is further found that the respondents did not acknowledge or address the requests described in paragraph 2.b and 2.c, above, in such letter.

4. It is found that, by letter dated August 17, 1999, the complainant informed the respondents that he agreed to the fee of twenty-five cents per page, that his requests were for all records, including electronic records, and that he was granting the respondents ninety days to compile the requested information.

5. It is found that, by separate letter dated August 17, 1999 addressed to the respondents, the complainant reiterated the requests described in paragraphs 2.b and 2.c, above.

6. It is found that, having failed to receive the requested records as described in paragraphs 2 and 5, above, the complainant renewed such request, by letter dated March 1, 2000. It is further found that, by such letter, the complainant added a request for copies of:

a. "the telephone records from 103 FW Headquarters (to include but limited to the telephones of Col. Burns and his secretary) for the dates 14 January 1999 through 12 February 1999."

7. It is found that, having failed to receive the requested records, during a May 10, 2000 meeting with the respondent Cugno, the complainant verbally renewed his requests as described in paragraphs 2, 5 and 6, above.

8. It is found that, under cover letter dated May 18, 2000, the respondent Cugno provided the complainant with several hundred pages of records, which records were prepared for release by the respondent Tuohy. It is found that such records consisted of copies of published articles, printouts of e-mails and websites, press releases, and minutes of a first sergeants' meeting.

9. By letter dated June 12, 2000, and filed with the Commission on June 15, 2000, the complainant alleged that the respondents violated the Freedom of Information [hereinafter "the FOI"] Act, by denying him copies of the records described in paragraphs 2, 5, 6, and 7, above. The complainant asked for the imposition of civil penalties in this matter.

10. Section 1-210(a), G.S., provides in relevant part that:

> [e]xcept as otherwise provided by any federal law or state statute, all records maintained or kept on file by any public agency, whether or not such records are required by any law or by any rule or regulation, shall be public records and every person shall have the right to inspect such records promptly during regular office or business hours or to receive a copy of such records in accordance with the provisions of section 1-212....

11. Section 1-212(a), G.S., provides in relevant part that:

> (a) Any person applying in writing shall receive, promptly upon request, a plain or certified copy of any public record....

12. It is found that, to the extent that requested records described herein exist, such records are public records within the meaning of §§1-200(5) and 1-210(a), G.S.

13. It is found that the records that were supplied to the complainant on May 18, 2000, as described in paragraph 8, above, were not in any way responsive to the requests described in paragraphs 2, 5, 6, and 7, above. It is further found that such records merely duplicated records which were produced by the respondent Cugno for Thomas Rempfer [hereinafter "Rempfer"], who made a separate records request of such respondent for different types of records, and who is the complainant in Docket # FIC 2000-303, which matter is consolidated herein.

246

AR-0248TLR

14. It is concluded that, by providing the wrong records to the complainant, more than nine months after his initial request, the respondents violated §§1-210(a) and 1-212(a), G.S.

15. It is found that, during 1998 and 1999, the Connecticut Army National Guard [hereinafter "the Guard"] was in the process of addressing the controversial issue of an anthrax vaccine program, that the complainant herein was an officer in the Guard during such time, that he was assigned by the Guard to research the vaccine, that he decided not to take the vaccine, and that he ultimately resigned his commission as a Guard officer as a result of the anthrax vaccine controversy.

16. It is found that, by letter dated July 14, 2000, the respondents provided the complainant with three documents consisting of correspondence between the complainant and the Guard, which are partially responsive to the request described in paragraph 2.a, above.

17. It is concluded that, by providing the complainant with the records described in paragraph 16, above, more than eleven months after his initial request, the respondents violated §§1-210(a) and 1-212(a), G.S.

18. The Commission takes administrative notice of the record in Docket # FIC 2000-303. It is found that the respondent Cugno provided Rempfer with fourteen records which are responsive to the request described in paragraph 2.a, above, which were not provided to the complainant herein.

19. It is found that the respondents do not keep on file or maintain records responsive to the request described in paragraph 2.c, above. Accordingly, it is concluded that the respondents did not violate the FOI Act by failing to provide copies of such records to the complainant.

20. It is found that, because the respondents did not address definitely whether they currently keep on file or maintain AT&T records responsive to the requests described in paragraphs 2.b and 6.a, above, the record is unclear as to whether such records are so kept on file or maintained. Accordingly, it is concluded that, if the respondents do in fact keep on file or maintain such records, they violated §§1-210(a) and 1-212(a), G.S., by failing to provide copies of such AT&T records to the complainant. It is further concluded that, if the respondents did not in fact keep on file or maintain such records at the time of the requests described in paragraph 2.b and 6.a, above, they did not violate §§1-210(a) and 1-212(a), G.S., by failing to provide copies of such AT&T records to the complainant.

21. It is also found that the respondents keep on file or maintain cell phone records of Col. Burns that are responsive to the request described in paragraph 6.a, above. It is further found that such

247

records were provided to the complainant under cover letter dated July 10, 2000. It is concluded that the respondents' provision of such records, four months after the complainant's initial March 1, 2000, request, violated the promptness provisions of §§1-210(a) and 1-212(a), G.S.

22. It is found that the respondents do not contend that the requested records that they maintain are exempt from mandatory disclosure. It is also found that they simply ignored the complainant's requests in this matter, and that such inaction resulted in the respondents' violations of the complainant's rights under the FOI Act, both in letter and spirit. It is further found that such violations were without reasonable grounds, within the meaning of §1-206(b)(2), G.S.

The following order by the Commission is hereby recommended on the basis of the record concerning the above-captioned complaint:

1. The respondents shall immediately remit to this Commission civil penalty amounts as follows: William A. Cugno, Adjutant General, State of Connecticut, Military Department: $100.00; Michael J. Tuohy, Staff Judge Advocate, State of Connecticut, Military Department, Connecticut Army National Guard: $100.00.

2. If they have not already done so, the respondents forthwith shall conduct a thorough search of the paper and electronic records, including computer stored records, of the Connecticut Army National Guard for all existing requested records, as described in paragraphs 2, 5, 6 and 7, of the findings, above. Upon completion of such search, if records are located, such records shall be immediately provided to the complainant without charge. If the telephone records described in paragraph 20 of the findings, above, no longer exist, the respondents shall forthwith so inform the complainant in a written affidavit attesting to such fact, and include in such affidavit the circumstances under which such records were destroyed and the date or approximate date of the destruction of such records.

3. Henceforth, the respondents shall strictly comply with the provisions of the §§1-210(a) and 1-212(a), G.S.

Approved by Order of the Freedom of Information Commission at its regular meeting of January 10, 2001.

_____

Dolores E. Tarnowski

Clerk of the Commission

PURSUANT TO SECTION 4-180(c), G.S., THE FOLLOWING ARE THE NAMES OF EACH PARTY AND THE MOST RECENT MAILING ADDRESS, PROVIDED TO THE FREEDOM OF INFORMATION COMMISSION, OF THE PARTIES OR THEIR AUTHORIZED REPRESENTATIVE.

THE PARTIES TO THIS CONTESTED CASE ARE:

Russell E. Dingle

71 Shaughnessy Drive

East Hartford, CT 06118-2367


William A. Cugno, Adjutant General,

State of Connecticut, Military Department;

and Michael J. Tuohy, Staff Judge Advocate,

State of Connecticut, Military Department,

Connecticut Army National Guard

c/o Michael J. Tuohy, Staff Judge Advocate

CANG, National Guard Armory

360 Broad Street

Hartford, CT 06105-3795


Dolores E. Tarnowski

750

AR-0252TLR