Major Thomas L. Rempfer
3811 Phelps Road
West Suffield, Connecticut 06093

SSAN: ███████
Docket #BC-2004-00944

AFBCMR
1535 Command Drive EE Wing 3rd Floor
Andrews AFB, MD 20762-7002

March 7, 2005

Subject:  USAF/JAA
Mr. Harlan G. Wilder,
Advisory; re docket #BC-2004-00203

To:  AFBCMR

Dear AFBCMR:

The following comments represent my response to the USAF/JAA's advisory, dated February 10, 2005. Though the advisory was written for another case (BC-2004-00203), I welcome the Examiner's request for me to comment on the important issues raised for the Air Force Board for Correction of Military Records (AFBCMR). I trust my response will not delay my case.

If the Board requires page limit waivers, the same unusual circumstances apply as articulated in my comments to the NGB's advisory. Additionally, I respectfully reiterate my request for an expeditious adjudication of my case in accordance with the spirit of Department of Defense Directive 7050.6, the *Military Whistleblower Protection Act*. This specific request was previously unintentionally overlooked, according to the AFBCMR office administrators at Randolph AFB.

The issues embodied in the USAF/JAA advisory deal with the threshold question of the illegality of the AVIP, and whether or not retroactive remedies are warranted. This issue is relevant to my BCMR case; however, more central to my case are issues of basic procedural due process dealing with coerced



AR-0276TLR

resignation, precipitating my discharge, and improper command level influence as detailed in my complaint. Notwithstanding the subject of retroactive remedies for the illegal mandate, my case is determinable based on the merits of improper discharge processes alone.

Even so, the issue of the illegality of the AVIP is salient, and my comments below introduce my rebuttal to USAF/JAA's contentions. I begin by demonstrating USAF/JAA's predisposition against equanimity in this issue by providing the historical backdrop to the USAF/JAA's involvement in the AVIP. I will then address: 1) the "inference of lawfulness;" 2) the *Relation Back* doctrine and the concept of "retroactive remedies;" 3) substantive pre-*Doe v. Rumsfeld* authorities lending support to the AVIP's illegality; 4) whether *Doe v. Rumsfeld* is "binding" on the BCMR; 5) "reasonable reliance" on the "old rule of law;" and finally, 6) the central issue of illegal constructive discharge.

## Introduction:

At the outset, the USAF/JAA advisory by Mr. Harlan G. Wilder must be squarely placed in perspective: the USAF/JAA is by no means an unbiased actor in this matter. Indeed, Mr. Wilder was the attorney who prepared the DoD's prosecution position in early 2000 for a UCMJ case, defending the legality of the Anthrax Vaccine Immunization Program (AVIP) against the first allegations of experimentation.

With respect to the interpretations and recommendations expressed in the advisory, it is crucial to appreciate the problematic history of the AVIP, as well as the culpability of those who failed to act as legal circuit breakers within the DoD to preclude implementation of a patently illegal order. The problematic history of FDA-documented regulatory deviations, manufacturing adulterations, and violations of law is amply covered in my first three filings with the AFBCMR. The myriad process violations documented by Congressional and GAO reports, as well as court findings, have disrobed the AVIP of any reasonable inference of legality. These process violations have been exacerbated by adverse outcomes for thousands of soldiers, and they continue to be willfully ignored by those who persist in defending the program. The USAF/JAA's willful failure to acknowledge the problems continually highlighted by injured servicemen and federal court findings further exacerbates the crisis. Until accountability is demanded and damages reversed, I believe these omissions will continue.

I recognized at the outset that it is simply human nature—as well as institutionalized Standard Operating Procedure (SOP)—to defend programs and policy, especially when the intent of such policies is to protect troops. However, I also strongly believe such a defense must give way to overwhelming evidence against implementing such programs/policies illegally. Though this evidence may not have been initially known to many of those who defended the AVIP mandate it has become patently evident over the course of time, especially in light of documented, legally adjudicated personal and professional harm to many of the very soldiers AVIP was designed to protect. It is this failure to acknowledge and act on "new" information that renders advisories from Mr. Wilder and others like him implausible: the bias they suffer has blinded them to the point they cannot even acknowledge the *possibility* of the truth of compelling legal findings. From a personal standpoint, the resultant harm to my own career from such willful "ignorance"—though inconsequential compared to the harm suffered by those who fell ill due to the vaccine or to the professional injury suffered by others who were dishonorably discharged, fined or jailed—requires redress and remedy.

My hope is that the AFBCMR will set the standard of accountability with any similarly situated case through decisive determinations, following objective analysis, in the spirit of the fundamental constitutional fairness alluded to in the USAF/JAA's memo. The advisory, while implicitly protecting the DoD position, leaves room for the AFBCMR to act positively on the case in question, and others that follow. I am not suggesting the USAF/JAA's position regarding certain elements be rejected out-of-hand. In fact, I will highlight common areas of agreement. However, the USAF/JAA's brief contains several flaws of argument, as well, and these must not go unnoticed or unchallenged.

I believe that once the AFBCMR has viewed these counterarguments and weighed the evidence in an unbiased light, it will choose to correct adverse personnel actions resulting from implementation of this illegal program. Of course, beyond the issue of the illegality of AVIP, my own case presents an altogether separate element adding support to my claim for remedy related to my illegal constructive termination. and this element is detailed in my complaint. Whether based on the AVIP's illegal implementation or on a violation of procedural/administrative due process through coerced resignations, corrective action must be taken: soldiers rely on the AFBCMR to reverse inequities caused during the illegal program's implementation and cut through the *Gordian Knot* tied together by those who would willfully ignore evidence in hopes of maintaining the *status quo*.

### Military Orders are "Clothed with an inference of lawfulness" [USAF/JAA memo]:

The USAF/JAA states the obvious point that military orders enjoy an "inference of lawfulness," adding that orders are disobeyed at the "peril of the subordinate." This point was an explicit aspect of my initial complaint. However, the DoD abused this inference, because the approval authorities failed to acknowledge illegalities inherent in implementation of the AVIP, and then punished soldiers who highlighted these illegalities. USAF/JAA now attempts to recast history, while hiding behind this maxim.

In fact in most of its motions for dismissal dealing with the anthrax vaccine—some cited by The USAF/JAA—the DoD refers to discretionary legal precedent language in order to preclude judicial review. A few examples from previous DoD defense filings are helpful in illustrating this point:

> "It is worth noting that federal courts have a long and uninterrupted history of judicial deference to the military in its handling of internal military matters." *United States v. Stanley*

> "Courts are ill equipped to determine the impact upon discipline that any particular intrusion upon military authority might have." *Brown v. Glines*

> "The complex subtle, and professional decisions as to the composition, training, equipping and control of a military force are essentially professional military judgments, subject always to civilian control of the Legislative and Executive Branches" *Chappell v. Wallace*

This last citation touches on an important point, that "professional military judgments" are always subject to "civilian control of the Legislative and Executive Branches." Despite the necessity of judicial deference, the "specialized society" of the military should never become so "separate" from civil rule that it believes Title 10 § 1107 of the US Code is not applicable. The DoD attorneys for the quoted case explained the military judicial system is "an integrated system of military courts and review procedures" where "it must be assumed that the military court system will vindicate servicemen's constitutional rights." I agree, that *should* be the presumption; however, in the cases brought forth within the DoD about the AVIP, evidence was not allowed which questioned the legality of the mandate, indicating this presumption is not inviolable. The preclusion of this evidence left soldiers without an avenue of redress, as well as without a defense against unwarranted actions against them, and therefore no opportunity to contest the experimental nature of the vaccine. The legality of AVIP was simply "off the table," thereby rendering the issue moot. The USAF/JAA now attempts to continue propagation of this tack by arguing to the AFBCMR that the Board continue to grant discretion to

4

the DoD for all such cases, in effect ensuring DoD remains immune from accountability for its abuses. Instead, such tactics should be rejected and these AVIP cases should be subjected to civilian control and review. The first step in this process should begin with the AFBCMR.

Beyond the tactics themselves, much of the substance of USAF/JAA's argument is void of merit. For example, the "inference of lawfulness" granted to military orders should not allowed to be used arbitrarily as an exoneration of wrongdoing. Servicemembers are well aware that the "I-was-only-following-orders" defense (also known as the "superior orders" defense) is an ineffective shield against activities violative of the UCMJ. DoD military authorities have consistently upheld that "only lawful orders must be obeyed," while "illegal orders *must* be disobeyed." This position by the USAF/JA, expressed in a May 19, 2004 memorandum (included as an attachment to my supplemental submission to the AFBCMR), was most recently reaffirmed in the wake of the Abu Ghraib prisoner abuses. In other words, we servicemembers are held accountable for our actions, whether "just following orders" or *not*. USAF/JAA's position with respect to this issue is consistent with my own, and both are consistent with actions I took in 1999 when I refused to participate in the AVIP mandate after questioning its legality, following the Tiger Team Alpha investigation with my fellow Connecticut Air National Guard (CT ANG) officers, and Tiger Team Alpha co-investigator, then-Major Russell E. Dingle. Any "inference" of legality was stripped bare in 1998 when our Commander, Col Walter Burns, forwarded our findings up his chain of command.

Col Burns acknowledged that an "official government position on some of their issues does not exist." (Col Burns' October 1998 memo was included in my complaint.) Col. Burns also expressed, in his 1998 televised briefing that the evidence of efficacy—one of the standards for a vaccine to be legal— "does not exist." Applying the above rules means Tiger Team Alpha would have had to have used the "superior orders" defense had we submitted to the vaccination program while possessing strong evidence of illegality. Unfortunately, preemptive action by both our commander as well as the military legal community failed to halt or modify the illegal program and force it to comply with 10 USC § 1107.

I must also add that while military orders are "clothed with an inference of lawfulness," that presumption is not sacrosanct. In the *Doe v. Rumsfeld* case the federal court *twice* declared that the FDA's actions were illegal. This fact alone should provide ample evidence that what Tiger Team Alpha discovered about the AVIP, and disobeyed as a matter of duty, should not have been "at the peril" of the subordinate. Even more convincing however, was the fact that the federal court's decision was granted on a "summary judgment" motion. A court neither casually nor commonly decides summary judgments. Such a ruling means the judge

5

has concluded that "no genuine issue of material fact" exists in the case and that the "moving party is entitled to judgment as a matter of law." In this case, it means that the court saw through the FDA's arguments, ruling that the FDA failed to properly regulate the anthrax vaccine. The court ruling was explicit, despite the USAF/JAA's nonspecific *Notice of Appeal*. In fact, footnote #1 of USAF/JAA's advisory concedes the court's decision was "final and binding."

Finally, disobeying a lawful order is one thing, but disobeying an order *known* to be suspect is something entirely different. Tiger Team Alpha was formed by a Fighter Wing Commander to allay squadron members' concerns about AVIP. As the team delved further and further into the issues, it uncovered more and more evidence exposing the vaccine mandate's illegitimacy. Once confronted with data from the command-tasked team, the Commander chose to disregard our findings and we were ordered to submit to the vaccine, independent of challenges to the "inference of lawfulness" of the AVIP. To accede to such an order at that time would have violated the *Oath of Office* of an officer, which—contrary to counsel's implication otherwise—does not include blind obedience to questionable orders.

The "inference of lawfulness" of military orders is not untouchable, and a noble and non-contemptuous military society respects this fact. For the reasons I've outlined above, I ask the AFBCMR to disregard DoD appeals for noninterference in my case, as well as for any future cases that follow.

## Relation Back Doctrine and Retroactive Applications of Law:

Despite all the legal hyperbole concerning the merits of the *Relation Back Doctrine* and the retroactivity of legal rulings, this matter is very simple: the AVIP was, and has always been, illegal as originally proffered by Tiger Team Alpha. At no time did the federal judge conclude the program wasn't illegal in the past; contrary to the USAF/JAA's assertions otherwise, this is important. As well, the USAF/JAA's assertions that "the US Constitution neither requires nor prohibits retroactive or prospective application" and that such issues are "a matter of judicial discretion on a case by case basis" are noteworthy, and I agree with these contentions. However, I should hope that the determining factors for such applications would be fairness and justice. The USAF/JAA cites that "evenhanded justice requires that it be applied retroactively to all who were similarly situated." I agree: please apply this standard to all cases.

AR-0281TLR

More on-point with respect to the *"Relation Back"* and *"Retroactivity"* doctrines, the USAF/JAA's advisory correctly cites *Black's Law Dictionary* in defining the *Relation Back* doctrine, "that an act done at a later time is considered to have been done at an earlier time," and this definition is supportive of my request for remedy. Though this advisory wasn't specifically constructed for my case this issue is relevant. Were this doctrine to apply, the federal court's ruling (the "act," applying the above definition) about the illegality of the vaccine mandate would "relate back" to Tiger Team Alpha's warning to Col. Burns about the experimental status of the vaccine in 1998 (the "earlier time"). Col. Burns specifically acknowledged our team's concern and the lack of efficacy evidence required by law stating:

> "You're looking for the peer reviewed extensive scientific study that clearly proves without a doubt this stuff works against inhalation anthrax – **that doesn't exist.**" (CD ROM provided in to the AFBCMR).

Col. Burns' admission in 1998 (the "earlier time") offers unassailable proof of the applicability of the *Relation Back* doctrine to my case. Moreover, the DoD itself was *on-notice* concerning the illegalities of the AVIP through Col Burns notifications to the NGB and the USAF Surgeon General of Tiger Team Alpha's findings, thus the *Relation Back* doctrine applies to *all* soldiers from the DoD's notice onward.

With respect to the concept of "retroactivity," I would caution the Board to avoid Mr. Wilder's confusion of the issues. He contends that retroactive "refers to whether a law 'impose[s] a new duty, or attach[es] a new disability in respect to ... transactions or consideration already past.'" However, the illegalities documented in the AVIP have nothing to do with the *retroactive* application of a "new duty" or law. The law, Title 10 § 1107, was on the books *then* and requires no "retroactivity." In any AVIP refusal case only the *remedies* require retroactivity, because they relate back to an "act" identified by Tiger Team Alpha at that "earlier time."

The USAF/JAA's two-page dissertation on *Relation Back* and *retroactivity* attempts to obfuscate issues through use of legalese to hide the facts, but the facts remain, independent of the whirlpool the USAF/JAA attempts to draw the Board into: AVA has never been *proven* effective against inhalation anthrax, and orders to take such a vaccine in the face of overwhelming evidence confirming these facts are certainly as injurious to the rule of law. Tiger Team Alpha's members suspected this, and they should not have been punished through adverse personnel actions (groundings from flight duty), nor ordered to resign for having advance knowledge of a now-obvious, court-vindicated fact. Such actions are analogous to punishing the Captain's

7

AR-0282TLR

of the Army, but it will not review the matter. And its ruling today should not be understood as an approval of what the military is doing in this case. The military will be held accountable to the public if it is using its own soldiers as guinea pigs to determine whether the anthrax vaccine has long-term health consequences and whether it protects against airborne anthrax. Those decisions, are, as I said, decisions that are committed to the Executive Branch of the Government. The Court neither approves nor disapproves of those decisions, because it is not the function of the Court to do that. Those decisions will be debated, and ultimately the Executive Branch will be held accountable to the public for those decisions. And that is the way the system of government works. ..."

For the sake of comity with the *Separation of Powers* doctrine the court decided to not interfere in DoD affairs, but it's important to note that the court was "not passing on the merits of the anthrax program." The constitutional requirement of judicial review logically progressed to the *Administrative Procedures Act*; inevitably resulting in *Doe v. Rumsfeld*, and an affirmation of the *Jemekiah Barber vs. the United States Army* ruling's dicta citing a call for accountability.

Other cases cited in the USAF/JAA advisory, such as that of Major Sonnie Bates, were dismissed on grounds related to standing, since the officer was no longer in the armed forces. The court ruled Major Bates was not entitled to the declaratory judgment relief requested, solely because he lacked standing, not because his case was void of merit. USAF/JAA should know this, and knows that a showing of a lack of standing is a common legal tactic to avoid addressing the real merits of a case. If legal ju-jitsu were all that was at issue, I would concede USAF/JAA's victory. However, basic principles of justice and fairness lie at the heart of this matter, and neither has been duly addressed by USAF/JAA.

One final case bearing clarification is *O'Neil v. Secretary of the Navy*. The USAF/JAA memo maintains the federal court, presided by Judge Ziegler in the Western District of PA, ruled favorably as to the legality of the AVIP mandate. I was present when Judge Ziegler discussed this issue, and I can tell you the USAF/JAA's claim is, once again, a half-truth: the judge stated that the case was not about the anthrax vaccine at all, or about the legality of the AVIP, but rather about the disposition of a Marine's status regarding a hardship discharge. While it is true the judge commented on the legality of the AVIP in his findings, he did so based on the presumption that the data provided to him by the Navy attorney, Commander Maksym, was *accurate*. The judge also relied heavily on the US Navy lawyer's assurances that the young Marine would go to a base where he would not have to receive any more anthrax vaccine. Both presumptions were unfounded: the

9

inaccuracies became public knowledge shortly afterward, as this excerpt from a December 20, 1999 *Marine Corps Times* article documents:

> "...A Navy lawyer is accused of misrepresenting the government's side in a federal lawsuit...The Marine Corps has attempted to accommodate Pfc. O'Neil by assigning him to...Quantico, Virginia, where he may never receive further inoculations and where he will be closer to his mother...Maksym repeatedly argued that Quantico Marine Corps Base is...facility where Marines do not take the anthrax shot because they do not deploy. ... However, Marines who begin the anthrax series at another installation and then are transferred to Quantico continue to receive the inoculations on schedule until the six-shot series is completed. There are currently about 420 Marines assigned to Quantico who fall into this category, said Lt. Col. Scott Campbell, Quantico spokesman. That's not what Maksym -- or his witnesses -- told the federal judge. ..."

The next month the Marines Corps granted PFC O'Neil a hardship discharge under honorable circumstances by the Marine Corps. The Commandant of the Marine Corps himself granted the Marine a special exemption for humanitarian reasons. My point is this: if USMC counsel misled the judge on this issue, is it conceivable that the judge was also misled on major issues, such as the legality of AVIP?

These cases all illustrate that "the rest of the story" is not always readily apparent from the one-sided presentation the DoD provides, as both Judge Ziegler and Judge Sullivan discovered in their cases regarding the anthrax vaccine.

### Is *Doe v. Rumsfeld* "binding" on the BCMR?:

USAF/JAA asserts that *Doe v. Rumsfeld* is not "binding" on the AFBCMR. While I do not concede this argument, even if it *were* true, it misses the mark: the AFBCMR's mission is to right wrongs in the interest of justice, not to act as an appellate court bound by the doctrine *stare decisis* (the legal doctrine compelling a court to follow earlier decisions containing the same litigated points). Since I believe the AFBMCR does indeed dutifully execute that mission, and based on the merits of my case alone, the AFBCMR can fairly conclude that I was wrongfully discharged, allowing me to resume my flying duties. Though the AFBCMR's decision is not binding on the State of Connecticut, its decision will weigh heavily in any subsequent decision made regarding my reinstatement. Alternately, I may return to flying duties in the USAF Reserve. If so, the

10

AFBCMR's decision will be pivotal in overcoming the standing policy articulated by the Director of the Air Force Reserves that prohibits assimilation of flight crewmembers who have previously refused to participate in AVIP (Policy letter, September 12, 2001, provided to AFBCMR Examiners, proscribing accessions from those who refuse the anthrax vaccine).

### "Reasonable reliance" on the "old rule of law" [USAF/JAA memo]:

In its advisory USAF/JAA argues about "'reasonabl[e] reli[ance]' on the 'old rule of law.'" In making this argument USAF/JAA maintains that the claim by the redacted plaintiff for remedy should be denied based on the contention that the "DoD went to considerable effort and expense, over many years, to vaccinate thousands of personnel, in reasonable reliance on the conclusion that the AVIP was legal." He adds, "Commanders and other officials, as well as personnel who were vaccinated, made decisions involving matters of military necessity in reasonable reliance on that same conclusion."

In making this argument USAF/JAA fails to acknowledge the many other examples illustrative of an opposite tack regarding "reasonable" conclusions. These equally "reasonable" conclusions assert that the AVIP was illegal; that the vaccine was *not* approved for application in biological warfare, and that the vaccine was experimental. I detailed Congressional Reports (HR 106-556 and SR 103-97) in my previous filing with the AFBCMR. *Both* reports highlight the fact that the vaccine was both "investigational" and "experimental." The "considerable effort and expense" referred to by The USAF/JAA in light of such findings evidently involved efforts to convince the "Commanders and other officials," as well as the "people who were vaccinated," that the vaccine was legal. The built-in conflict of interest is readily apparent not only from a review of these facts, but also from a review of additional evidence available in the public realm, some previously under seal with the federal court. The federal judge in *Doe v. Rumsfeld* wrote in December 2003:

> "Finally, statements made by DoD officials suggest that the agency itself has, at some point at least, considered AVA experimental with respect to inhalation anthrax. Given all these factors, the Court would be remiss to conclude that the original license included inhalation anthrax. Having reached that conclusion, the DoD's administration of the inoculation without consent of those vaccinated amounts to arbitrary action."

11

AR-0286TLR

The federal court added in its 2004 permanent injunction with a ruling that:

> "There are no genuine material facts that preclude judgment in this matter. If the FDA's Final Rule and Order categorizing AVA as safe and effective for protection against inhalation anthrax was issued in accordance with the relevant law, then DoD's AVIP is lawful; conversely, if FDA's Final Rule and Order is invalid, the AVIP is unlawful absent informed consent or a Presidential waiver. Under the Administrative Procedure Act, a reviewing court may hold unlawful and set aside final agency action found to be "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law," or "without observance of procedure required by law." 5 U.S.C. § 706(2)."

The court opined, "This Court has an obligation to ensure that FDA follow the law in order to carry out its vital role in protecting the public's health and safety." Regarding the rule of law, the judge wrote:

> "Congress has prohibited the administration of investigational drugs to service members without their consent. This Court will not permit the government to circumvent this requirement. The men and women of our armed forces deserve the assurance that the vaccines our government compels them to take into their bodies have been tested by the greatest scrutiny of all - public scrutiny. This is the process the FDA in its expert judgment has outlined, and this is the course this Court shall compel FDA to follow."

Still other examples of evidence the USAF/JAA ignored or was unaware of exist, as typified in DoD IG complaints against the illegality of the AVIP mandate. Many of these complaints were initially dismissed, while others were reopened and referred to the Defense Criminal Investigative Service (DCIS), and then on to the FBI Public Corruption Squad (see complaints submitted to AFBCMR by DoD IG—one in particular was the subject of an inquiry by Senator Christopher Dodd to the DoD IG on March 2, 2001, as well as the subject of an inquiry by Senator Dodd to the FBI pursuant to the DCIS memo, "Special Interest Case: OIG Hotline No. 84-142," November 20, 2002). The DCIS memo reviewed a history of the complaints filed or investigations conducted on BioPort and/or DoD.

Many other examples exist. One of the most telling is the email by BG Eddie Cain in which he acknowledges that the DoD would be in "big time trouble" if issues such as the fact that the vaccine was "different" than the one tested were to be discovered (copy of email provided to AFBCMR Examiners).

Another includes the CT Attorney General's call for the DoD to "cease and desist their illegal conduct" in using the "experimental" vaccine in letters to the FDA and the DoD (available on-line at: http://www.cslib.org/attygenl/press/2001/health/dod1.htm).

Even DoD Undersecretaries Aldridge and Chu recommended alternatives to the anthrax vaccine, as well as minimizing its use, developing a national long-range vaccine, and suggesting a doctrinally coherent process be formulated in the future to deal with such threats.

As well, President Bush's senior advisor, Mr. Karl Rove, recommended a review of the anthrax vaccine "problem" (letter provided to AFBCMR examiners). Perhaps the USAF/JAA was not aware of these facts in concluding about the "widespread reliance on the conclusion that the AVIP was legal."

Still more examples concern the FDA's IND application (IND for approval of anthrax vaccine for inhalation anthrax previously provided to AFBCMR Chief Examiner Mr. Ralph Prete — IND application #6847 dated September 20, 1996). The DoD prepared this application for the manufacturer during a time when it was attempting to follow proper procedures. This is *de facto* evidence that the Department *knew* the vaccine was not approved fully as a biological defense for inhaled anthrax. The application's purpose was to get the anthrax vaccine properly approved for use against inhalation anthrax following a review within the DoD, and by Science Applications International Corporation (SAIC). That review stated: "This vaccine is not licensed for aerosol exposure expected in a biological warfare environment." (SAIC Corporation Plan and DoD letter, provided to AFBCMR Examiners, dated October 5, 1995; plus DoD briefing slides, dated October 20, 1995 showing pursuit of an indication application for "aerosol exposure").

Additionally, the Joint Project Office for Biological Defense (JPOBD) reiterated this assessment in December 1997, concluding that the anthrax vaccine was "not licensed for a biological defense indication" (DoD JPOBD Industrial Capabilities Assessment, Summary Report for the Production of Anthrax Vaccine provided to AFBCMR Examiners).

Finally, a progress report on the IND was supplied in December 1998 to the FDA, once again reiterating the attempt to get the vaccine approved for an inhalation anthrax indication (provided to the AFBCMR Examiners. Note the IND application was withdrawn following the first *Doe v. Rumsfeld* ruling).

Ironically, while the DoD was seeking approval for use of the vaccine on inhalation anthrax, the very same month pilots in the CT ANG were being pressured and ordered to resign over concerns about the experimental

13

status of the vaccine. I, along with two USAFR officers, brought the specific issue of the experimental status of the AVIP formally to the attention of the Assistant Secretary of Defense for Health Affairs (ASD/HA) in a meeting at the Pentagon on January 14, 2002. We warned Dr. Winkenwerder about accountability issues and associated risks and we warned him about the likelihood a federal court would ultimately rule against the DoD's experimental program. Our warnings were discounted and we were specifically told in subsequent correspondence that the lack of a finalized anthrax vaccine license was a "bureaucratic loose end..., which apparently has no regulatory meaning" (ASD/HA briefings and response provided to the AFBCMR Examiners). The summary judgment of the court demonstrates the error of this conclusion.

Given these widely known facts, for the USAF/JAA to insist that conclusions affirming the legality of AVIP were "widespread" is nothing short of disingenuous, and claims of ignorance of these well-known facts are unpersuasive, especially given the duty of discovery USAF/JAA has prior to publishing an advisory opinion concerning such an important matter. Were the USAF/JAA to be consistent in applying "the old rule of law," ample precedent exists to show that "the old rule of law" is the same as the *current* rule of law, namely, that AVIP is not now, nor has it ever been, legal as a mandatory program: it has *always* been in violation.

In this light, the simple truth is that soldiers who questioned the "widespread" conclusions USAF/JAA refers to were wrongfully discharged. In the CT ANG, if an officer chose not to capitulate to resignation pressure, requests and orders, the officer was labeled a "traitor" by his/her commander and accused of "spooging America" (see CD ROM and time slice notations previously attached to BCMR NGB advisory comments and supplemental filing with time slice references, respectively).

The ordered resignations are particularly disturbing based on the revelation that CT ANG pilots had simply exposed the existing official DoD position, i.e., "This vaccine is not licensed for aerosol exposure expected in a biological warfare environment" (DoD / SAIC memo and briefing provided to the AFBCMR Examiners).

### Core Issue — Illegal Constructive Discharge:

Though the root cause of my discharge is AVIP, the core issue in my case concerns procedural and administrative due process, centering on whether or not I was illegally ordered and coerced to resign from the CT ANG. The CT *Freedom of Information Commission* (FOIC) determined this as a matter of material fact in their conclusions of law following the sworn testimony of four officers. The FOIC also found the CT ANG

14

AR-0289TLR

had withheld records, which made proving the case that officers were ordered to resign more difficult. For what purpose would someone illegally withhold my records other than to hide the fact those records substantiate my claim I was forced to resign?

I have thoroughly explained and provided corroborating evidence and statements in my filings with the AFBCMR that my resignation was requested, ordered, pressured through threats, and cajoled with the promise that I would be reinstated if my concerns were validated. Further, Col Burns admitted to the DoD IG in his testimony previously provided to the AFBCMR that, "some of them left resisting – I mean, they didn't really want to leave, but they knew they had to."

Why did we have to, but for the fact that it was ordered, requested and pressured? Col Burns, in an email, painted the picture of the pressure he faced where those "senior to [him] (not just those in CT) wanted to take aggressive action or implied aggressive action was appropriate." Though Col Burns denies having taken any such action by saying he defended us, I think the facts of my forced, ordered and requested discharge reveal otherwise, as Col Burns' own statement bears out:

> "In a message dated 4/21/99 10:45:26 AM !!!First Boot!!!, WALTER.BURNS@aljaber.aorcentaf.af.mil writes: "I also never, repeat never, have bad mouthed you publicly, privately, unofficially or officially. In fact just the contrary. In many cases when those senior to me (not just those in CT) wanted to take aggressive action or implied aggressive action was appropriate, I defended you and the others as professional officers acting on matters of conscience and we should all respect them for having the gonads to act on their conscience.""

Three officers who similarly received the order to resign have provided statements to corroborate the fact of ordered resignations as well, per AFBMCR request (statements provided electronically to the AFBCMR Examiners, and also attached to this document).

Additionally, an NCO, who personally witnessed the disparaging comments—such as those labeling us "cowards"—by CT ANG Commanders, has also supplied a statement (statement provided electronically to the AFBCMR Examiners). One of the officers also wrote an article in a CT newspaper that accused pilots of not upholding the oath of office (article provided electronically to the AFBCMR Examiners). The NCO's statement corroborates that words such as "traitor" were not only articulated by Col Burns in his wing-wide videotaped briefing, but also used in formal meetings with enlisted personnel.

15

AR-0290TLR

A final example regarding another declined DoD IG case related to my request for an investigation of my retaliatory discharge during the same timeframe I first applied to the AFBCMR. The DoD IG had previously deposed my statement in January 2001, where I explained the ordered resignations, but in responding to the AFBCMR the IG implied that I never complained to DoD IG in a "timely matter." This was one of the justifications for declining review of my complaint. I have also previously supplied to AFBCMR examiners additional evidence in the form of FOIA'd correspondence between the NGB IG and the CT ANG that unmistakably proves I did report my concerns to the IG within one month of first receiving threats to my career. In this letter the NGB IG warned the CT Guard about short-term grounding versus long-term punishments. I testified to the DoD IG about these facts in my January 2001 deposition, making their declination to investigate my case based on timeliness concerns highly suspect.

I would also like to highlight the fact that DoD IG / Military Reprisal Investigators (MRI) denied that my failure to obtain the reinstatement in accordance with the word of my former Squadron Commander was related to the AVIP issue or my previous refusal. The MRI's Case Sheet specifically states:

"MRI DECLINED: NO EVIDENCE OF A CONNECTION BETWEEN OPPOSITION TO ANTHRAX VACCINE AND CT ANG DECLINATION TO REINSTATE." (See MRI response to DoD IG Hotline case #91323 provided to AFBCMR Examiners).

This contention is false, as demonstrated by documents included in my submissions to the DoD IG. The letters from December 2000, as well as those from 2004, all provided to DoD IG by the Adjutant General, Major General Cugno, and the 103rd FW CC, Col Scace, make clear that the CT Guard's position on my reinstatement relates directly to my refusal to participate in AVIP.

Each of the aforementioned arguments and attached statements corroborate my wrongfully constructed and illegal discharge from the CT ANG. The DoD IG and USAF/JAA remain blind to these facts.

### Conclusion:

The precedent case of *Doe v. Rumsfeld* demonstrated that the AVIP was an illegal enterprise, despite documented knowledge by some within the DoD concerning the material fact of the experimental use of the anthrax vaccine. My role is not to determine the level of culpability by the agencies or individuals involved.

Instead, throughout my experience with the AVIP dilemma, I have merely asked the appropriate agencies of the DoD to investigate the issues raised to prevent or discontinue institutional lawbreaking. This process began with Tiger Team Alpha in 1998, but most investigations concerning AVIP from that date forward have been ignored or dismissed. This institutionalized, willful flight from accountability has resulted in my seeking redress with AFBCMR to right documented wrongs.

With respect to this redress, for anyone to argue that remedies should not apply retroactively from the beginning of this ignored lawbreaking until the time DoD is finally held accountable is absurd. If DoD officials had done the right thing from the outset, retroactivity would be a moot point. Instead, those who "blew the whistle" lost their jobs.

Doing the right thing doesn't mean selective, capricious application of a remedy based on an arbitrary point in time, while ignoring the damage created when you weren't doing the right thing. Though expedient for those responsible, this logic is flawed. It begs a disturbing rhetorical question: does the DoD believe it can break the law, and then overcome challenges based on legal excuses penned by the USAF/JAA, while punishing with impunity those questioning this conduct?

Others in my chain of command disparaged the intentions of any who questioned the AVIP. Incredibly, Major General Cugno, the CT Adjutant General, impeached my character by accusing me in his letters (provided in supplemental inputs to the AFBCMR) to the CT Attorney General of having "contempt for the chain of command," and that I "manipulated the system." As well, MG Cugno's letter to Representative Robert Simmons repeated these insults by insinuating I had committed "misconduct" and "criminal" violations. I respectfully ask the AFBMCR to review Major General Cugno's malicious remarks in light of what we know today.

I respectfully request prompt adjudication, and application of the full protection afforded by the Military Whistle Blower Act as outlined in Department of Defense Directive 7050.6. My goal remains consistent: to return to flying responsibilities and the duties that I swore an oath to perform.

I sincerely appreciate your request for, and thorough consideration of, my comments on this USAF/JAA advisory, notwithstanding the fact it was issued for a different case.

AR-0292TLR

Very Respectfully,

THOMAS L. REMPFER, MAJOR

USAF Reserves