RECORD OF PROCEEDINGS    **APR 2 5** 2005
AIR FORCE BOARD FOR CORRECTION OF MILITARY RECORDS

IN THE MATTER OF:

THOMAS L. REMPFER

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

DOCKET NUMBER:  BC-2004-00944
INDEX CODE:  110.02

COUNSEL:  NONE

HEARING DESIRED:  YES

**MANDATORY CASE COMPLETION DATE:  22 September 2005**

---

## APPLICANT REQUESTS THAT:

a. His Officer Performance Report (OPR) for the period 9 July 1998 to 14 December 1998 be corrected to more fully represent his accomplishments during the time period indicated.

b. He be reinstated to the Connecticut Air National Guard (CTANG) flying program with back pay, allowances, longevity, lost "command pilot" rating, and a rank commensurate with his position upon return.

---

## APPLICANT CONTENDS THAT:

a. The CTANG violated the letter and spirit of the law without grounds by withholding records documenting his dismissal and initially obscuring Tiger Team Alpha's existence. Tiger Team Alpha was an ad hoc investigative panel tasked by applicant's Wing commander to identify, compile, and present findings regarding the Anthrax Vaccine Immunization Program (AVIP).

b. A federal court recently ruled that the AVIP violated United States law because the vaccine was considered investigational and it's license was never finalized.

c. The CTANG Commander did not have the legal authority to dismiss him, did not convene a discharge board, and did not convey concerns about the illegality of the AVIP.

d. The CTANG Wing Commander defrauded the State of Connecticut with falsities and constructed an unprofessional and maligning environment, forcing his resignation.

e. Coercion preceded his transfer from the CTANG and perpetuated the fraud with an unconstitutional retaliatory infringement of fundamental rights and due process rights.

f. Tiger Team Alpha's warning was hastily dismissed but later corroborated by congressional reports as well as by the CT Attorney General and the Federal Judicial Review.

AR-0602TLR



g. He endeavored, through previous attempts in good faith, to return to the 103rd Fighter Wing (FW) to no avail. A previous pledge of reinstatement by his commander was not honored.

In support of his appeal, the applicant has provided personal statements, copies of OPR's including the OPR in question, pertinent background information, letters of recommendation and support, government data, Tiger Team inputs, and a partial transcript of an Inspector General (IG) investigation.

Applicant's complete submission, with attachments, is at Exhibit A.

## STATEMENT OF FACTS:

The applicant began his military career on 27 May 1987 as a second lieutenant (2Lt/02) and graduated from undergraduate pilot training (UPT) as a first lieutenant (1Lt/03) in July 1989. He served as a fighter pilot through several active duty assignments and on 7 April 1994, he became an A-10 pilot with the CTANG in the grade of captain (Capt/03). On 28 May 1996, he left the CTANG for an active duty tour at Holloman AFB, NM to fly F-117 Stealth Fighters. On 9 July 1998, he rejoined the CTANG as Chief, Weapons Training. In September 1998, the wing commander announced the policy that all officers would begin receiving anthrax injections regardless of mobility status. In October 1998, the applicant was chosen by the wing commander to participate as part of a panel, referred to as "Tiger Team Alpha", to investigate the anthrax policy and try to capture the attitude of the unit. Tiger Team Alpha provided the wing commander with a report wherein the team presented data that questioned the efficacy of the anthrax inoculation and the legality of the AVIP. The wing commander condensed the teams' findings into a memorandum and forwarded it to NGB/CC. He asked for HQ-level guidance on how to proceed with the AVIP noting he was not equipped to address the issues and answer the questions posed by the team's findings. The unit began anthrax inoculations during November and December 1998. In January 1999, the applicant and seven other pilots refused to accept the anthrax injections and were at some point after their refusal removed from flying duties. All eight pilots eventually left the CTANG either by transfer or retirement. Applicant requested a transfer to the Air Force Reserve (AFRES) and, on 26 March 1999, he was accepted by the AFRES. He was promoted to major (04) with a date of rank (DOR) of 1 October 1999. He currently has over 17 years of combined active and Reserve service and is serving in the grade of major with the AFRES as a Flight Safety Officer.

In February 2004, applicant filed a complaint to the DOD/IG's Defense Hotline, who in turn forwarded his complaint to the Directorate for Military Reprisal Investigations for preliminary analysis. Their analysis showed his complaint of Whistleblower reprisal did not meet the unfavorable personnel action or timely reporting requirements as outlined under Title 10, United States

2

AR-0603TLR

69

2

Code (U.S.C.) Section 1034 and DODD 7050.6, Military Whistleblower Protection. They found his 1999 resignation from the CTANG a voluntary action as all military members had the choice of complying with AVIP or resigning their positions. They stated they would not take any further action on his request.

Since applicant's transfer to the Reserve, several military members brought a civil action against the Department of Defense (DoD) for compelling military members to undergo anthrax inoculation without their consent. They maintained the anthrax used in the vaccination was an experimental drug unlicensed for its present use and that the AVIP violated federal law (informed consent). The court found the central question to be whether or not the anthrax vaccine was an "investigational" drug or a drug unapproved for its use against inhalation anthrax. On 22 December 2003, after hearing arguments, and absent a ruling from the FDA, the judge enjoined DoD from further inoculating service members without their consent and in the absence of a presidential waiver ordering such inoculation in the interest of national security. On 5 January 2004, the FDA published a Final Rule regarding the anthrax vaccine and stated the drug was safe and effective on all forms of anthrax. On 7 January 2004, the judge lifted the injunction, allowing DoD to continue mandatory anthrax vaccinations.

On 27 October 2004, the judge vacated the FDA's final rule and remanded it back to the FDA for reconsideration. Additionally, the judge found that if and/or when the FDA properly classifies the vaccine as a safe and effective drug for its intended use, an injunction shall remain in effect prohibiting defendants' use of the vaccine on the basis that the vaccine is either a drug unapproved for its intended use or an investigational new drug within the meaning of 10 U.S.C. Section 1107. Accordingly, he ordered the involuntary anthrax vaccination program, as applied to all persons, rendered illegal absent informed consent or a Presidential waiver.

On 23 December 2004, the government gave notice of appeal to the United States Court of Appeals for the District of Columbia Circuit regarding the court's 27 October 2004 ruling. No portion of the decision, which is final and binding on the parties, has been stayed pending the appeal.

---

AIR FORCE EVALUATION:

ANG/DPPI recommends denial. DPPI notes the applicant's contention the order to participate in the AVIP was not a lawful order, based on a federal judge's 22 December 2003 injunction upon the DoD to cease immunizing DoD employees. The injunction was pending the Food and Drug Administration's (FDA's) Final Report, which would determine the safety of the AVIP. On 7 January 2004, the injunction was lifted as the FDA's Final Report found the immunization program to be safe and effective. The applicant's contention that Senate Resolution 278, dated

AR-0604TLR

lawfulness", and "An order requiring the performance of a military duty or act may be inferred to be lawful and it is disobeyed at the peril of the subordinate." This issue of lawfulness was applicable to the 1999 vaccination order the applicant refused, and is buttressed by the variety of pre-injunction authorities that concluded the AVIP was legal. Nevertheless, the applicant argues that, in light of the recent rulings in *Doe v. Rumsfeld*, and despite other case law supporting legality, AVIP must be considered illegal in 1999 and his refusal to obey the order to be vaccinated must be set aside. He contends this result is compelled by "common sense" and the "Relation Back Doctrine" making the real question in this case to be whether or not *Doe v. Rumsfeld* should be given retroactive application in his case.

"Relation Back" is a legal principle, applied in certain circumstances, "that an act done today is considered to have been done at an earlier time." On the other hand, "retroactive" refers to whether a law "impose[s] a new duty, or attach[es] a new disability in respect to...transactions or considerations already past." With regard to retroactivity, the original opinion in *Doe v. Rumsfeld* granted only an injunction against further operation of the AVIP unless certain conditions were met. The court did not discuss possible retroactive application of its conclusion that the AVIP was illegal on the grounds anthrax was considered an investigational new drug and a drug being used for an unapproved purpose, without informed consent or Presidential waiver. The Supreme Court has applied a three-factor test in determining the extent to which a court's decision should be given retroactive effect: (1) whether the decision established a new principle of law; (2) whether retroactive application would further or retard the operation of the new law; (3) whether retroactive application would produce substantial inequitable results.

The Supreme Court has counseled caution when applying a court's rule retroactively: "Retroactivity is properly treated as a threshold question, for, once a new rule is applied to the defendant in the case announcing the rule, evenhanded justice requires that it be applied retroactively to all who are similarly situated." The Supreme Court's reluctance to endorse the theory of retroactive application, except for matters involving constitutional magnitude, is based on the importance of preserving finality in judicial proceedings. Therefore, JAA contends that *Doe v. Rumsfeld* is not an "overruling decision" within the meaning of the general rule regarding retroactivity. While its conclusion regarding the legality of AVIP is contrary to the result in earlier decisions by other courts the decision in *Doe v. Rumsfeld* does not purport to, and indeed could not overrule any such decisions. Attempting to apply the *Doe v. Rumsfeld* decision retroactively would be inappropriate given the many different reasons that military members were discharged for failing to participate in AVIP. Not all members in this situation were similarly situated, claiming that the anthrax inoculation was experimental. Each case must be viewed on its own merits, taking into account the factual circumstances

AR-0605TLR

60†
75

surrounding the member's discharge from the military. Consequently, JAA contends the retroactive principle should not be applied in this case.

JAA also notes that the applicant knowingly and intentionally offered to resign in lieu of undergoing and administrative discharge. In waiving his right to an administrative discharge board, the applicant relinquished his opportunity to make an argument that the AVIP was illegal and the order to be inoculated was invalid. He should now be precluded from arguing that the holding in an unrelated case should be applied to his benefit. JA cautions that, in light of the pending appeal, applying *Doe v. Rumsfeld* as though it were a final decision is premature and JA recommends the AFBCMR not treat it as controlling at this time. In the event the *Doe v. Rumsfeld* decision is upheld by an appellate court, the applicant can request reconsideration at that time and the impact of the decision reassessed.

USAF/JAA's complete evaluation is at Exhibit E.

---

## APPLICANT'S REVIEW OF ADDITIONAL AIR FORCE EVALUATION:

The applicant provided a 25-page rebuttal that for the most part presents a similar argument as that included in his application.

Applicant's complete submission, with attachments, is at Exhibit F.

---

## THE BOARD CONCLUDES THAT:

1. The applicant has exhausted all remedies provided by existing law or regulations.

2. The application was timely filed.

3. Insufficient relevant evidence has been presented to demonstrate the existence of error or injustice. It should be noted, regarding his request to be reinstated in the Connecticut Air National Guard, that this Board lacks the authority to grant such relief. In regard to his request to change his OPR, an OPR is considered accurate as written and without rating chain support the Board is not inclined to change the report. Furthermore, applicant contends he was coerced into transferring from the Air National Guard to the Air Force Reserve for failure to participate in the Anthrax Vaccination Immunization Program (AVIP). The applicant's requests center primarily on his unwillingness to comply with the order and in support cites a recent court decision *Doe v. Rumsfeld*. In this regard, the Board notes the Chief, Administrative Law Division, states that *Doe v. Rumsfeld* is still being litigated. Therefore, it would not be prudent for the Board to take any other action on this application until the litigation has been finalized. Should the

AR-0606TLR

plaintiffs prevail against the Secretary of Defense, the Board would be willing to reconsider the applicant's requests. Therefore, we find no compelling basis at this time to recommend granting the relief sought in this application.

4. The applicant's case is adequately documented and it has not been shown that a personal appearance with or without counsel will materially add to our understanding of the issue(s) involved. Therefore, the request for a hearing is not favorably considered.

---

THE BOARD DETERMINES THAT:

The applicant be notified that the evidence presented did not demonstrate the existence of material error or injustice; that the application was denied without a personal appearance; and that the application will only be reconsidered upon the submission of newly discovered relevant evidence not considered with this application.

---

The following members of the Board considered AFBCMR Docket Number BC-2004-00944 in Executive Session on 31 March 2005, under the provisions of AFI 36-2603:

    Mr. Thomas S. Markiewicz, Chair
    Mr. Michael K. Gallogly, Member
    Mr. James W. Russell, III, Member

The following documentary evidence was considered:

    Exhibit A.  DD Form 149, dated 19 Mar 04, w/atchs.
    Exhibit B.  Letter, ANG/DPPI, dated 18 Oct 04, w/atchs.
    Exhibit C.  Letter, SAF/MRBR, dated 29 Oct 04.
    Exhibit D.  Letter, APPLICANT, dated 22 Nov 04, w/atchs.
    Exhibit E.  Letter, HQ USAF/JAA, dated 10 Feb 05.
    Exhibit F.  Letter, APPLICANT, dated 7 Mar 05, w/atchs.

THOMAS S. MARKIEWICZ
Chair

AR-0607TLR

## White Bill Civ SAF/MRBC

**From:**  TRempfer@aol.com
**Sent:**  Friday, September 08, 2006 11:57 AM
**To:**  Prete Ralph J Civ SAF/MRBC; White Bill Civ SAF/MRBC
**Cc:**  Rempfer Thomas L Maj 15 RS/ANG
**Subject:** Followup from Maj Rempfer for the BCMR to consider in its review of cases...

Dear BCMR,

Subject:  DC District Court hearing yesterday, 7 SEP 06, Re status of previous rulings

The conclusions of the Doe v. Rumsfeld hearing are central to my BCMR case, and that of LtCol Russell E. Dingle, confirming the basis for our reconsideration.  From the bench the judge confirmed that his rulings stand, and that there will be no further clarification.

<u>Manual for Courts-Martial (MCM) / UCMJ logic:</u>

The Court's rulings confirmed the AVIP was illegal, as Servicemembers claimed in 1998.

Our Tiger Team claims, in particular, directly challenged the legality of the AVIP mandate.

Our illegality claim dates to 1998, mirrored the courts ruling, based in part on our research.

The MCM holds that patently illegal orders do not warrant an inference of lawfulness.

Tiger Team Alpha stripped the inference in 1998 with our research for our Commander.

The court confirmed the basis of our warnings with rulings in 2003 and 2004, upheld in 2006.

Disobeying the AVIP should not have been at the peril of the subordinate IAW with the MCM.

The MCM supports disobeying patently illegal orders that direct the commission of a crime.

The AVIP was illegal, a crime, patently so, based on the timely accuracy of our challenge.

If the definitive status of the rulings was in question, that question is now settled.

Adverse personnel actions over the AVIP were in conflict with the UCMJ and the MCM.

Our peril (ordered resignations) faced as subordinates was in conflict with the MCM /UCMJ.

Therefore, I respectfully request the BCMR act affirmatively in our cases.

V/R,

Maj.Tom Rempfer
860-680-8452
—————————————
<u>Click here:</u> http://www.au.af.mil/au/awc/awcgate/law/mcm.pdf
MANUAL FOR COURTS-MARTIAL UNITED STATES (2005) (implements <u>UCMJ</u>)
PART IV
PUNITIVE ARTICLES
14. Article 90 - Assaulting or willfully disobeying superior commissioned officer





AR-0608TLR

9/12/2006

c. Explanation.
(2) Disobeying superior commissioned officer.
(a) Lawfulness of the order.
(i) Inference of lawfulness. An order requiring the performance of a military duty or act may be inferred to be lawful and it is disobeyed at the peril of the subordinate. This inference does not apply to a patently illegal order, such as one that directs the commission of a crime.

AR-0609TLR