**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| JOHN DOE #1, *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) Civil Action No. 03-707 (EGS) |
| v. | ) |
| | ) |
| DONALD H. RUMSFELD, | ) |
| Secretary of Defense, *et al.*, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION**

Six plaintiffs, known as John Doe #1 through #4 and Jane Doe #1 and #2, brought this action to challenge the lawfulness of the defendants' Anthrax Vaccination Immunization Program ("AVIP"). Currently pending before the Court is plaintiffs' motion for attorneys' fees and costs.  Upon consideration of the motion, the response and reply thereto, the applicable law, and the entire record, the Court determines that plaintiffs are entitled to attorneys' fees, but that their pending request is flawed in several, significant aspects.  Therefore, for the reasons stated herein, plaintiffs' motion for attorneys' fees and costs is **DENIED without prejudice.**

**BACKGROUND**

This Court set forth a detailed description of the case's regulatory and procedural background in its 2004 opinion, *see Doe*

1

*v. Rumsfeld*, 341 F. Supp. 2d 1, 3-8 (D.D.C. 2004), so it need only be summarized here. Pursuant to a process established for drugs whose regulation was transferred from the National Institutes of Health to the FDA, the FDA issued a proposed order concerning AVA in 1985. *Id.* at 4-6. The FDA panel, whose report was incorporated into the proposed order, concluded that AVA was safe and effective "under the limited circumstances for which it is employed." *Id.* at 4-5. The panel did so after examining the "Brachman study," which investigated AVA's effectiveness against cutaneous anthrax and inhalation anthrax. *Id.* at 5. The proposed order recommended that AVA be placed in "Category I," which encompassed drugs that are safe, effective, and not misbranded. *Id.* Pursuant to its regulations, the FDA published notice of the proposed rule and solicited comments for 90 days. *Id.* at 5-6. Following the receipt of comments, the FDA took no further action until this suit was filed. *Id.* at 6.

In March 2003, plaintiffs filed suit in this Court, alleging that the AVIP violated federal law because AVA had never been approved as a safe and effective drug for protection against inhalation anthrax. *Id.* On December 22, 2003, the Court issued a preliminary injunction enjoining AVIP inoculations absent consent because the FDA had never issued a final decision regarding the safety of AVA. *Id.* Eight days later, the FDA issued a final order classifying AVA as a Category I drug,

2

stating that it was effective regardless of the route of
exposure.  *Id.*  The final order re-analyzed the data underlying
the 1985 proposed order and also relied upon studies conducted
after 1985.  *Id.* at 7.  Both parties subsequently moved for
summary judgment, with plaintiff seeking permanent injunctive
relief.  *Id.* at 8.

On two initial matters, the Court determined the plaintiffs
had standing and that the FDA's December 2003 decision
constituted an order, instead of a rule.  *Id.* at 9-12.  Even
though the decision was an order, the Court concluded that
because the FDA regulations required notice and comment for the
order, the notice and comment must have been procedurally
sufficient under the standards of the Administrative Procedure
Act.  *Id.* at 13.  Utilizing the logical outgrowth doctrine, the
Court concluded that the notice and comment for AVA was
insufficient because the final order deviated too greatly from
the proposed order.  *Id.* at 15.  Defendants had contended that
the proposed order was substantively identical to the final order
because the proposed order classified AVA as a Category I drug
and did not limit its application to any particular route of
exposure.  *Id.* at 14.  The Court, however, found that the scope
of the proposed order's recommendation did not include inhalation
anthrax because the proposed order stated that there was
insufficient data concerning AVA's effectiveness against

inhalation anthrax.  *Id.* at 15.  Therefore, the public was not on
notice that AVA was being considered for use against inhalation
anthrax specifically, and thus the FDA's procedure did not
provide a meaningful opportunity for comment as required by the
FDA's own regulations.  *Id.*  As a remedy, the Court vacated the
final order and remanded it to the FDA for reconsideration.  *Id.*
at 16.  In addition, the Court entered a permanent injunction
enjoining defendants' use of AVA absent consent until the FDA
properly classified AVA as safe and effective for its intended
purpose.  *Id.* at 19.

While this case was on appeal, in December 2005, the FDA
issued a new final order after a notice-and-comment period,
explicitly finding AVA efficacious against inhalation anthrax.
*See Biological Products; Bacterial Vaccines and Toxoids;
Implementation of Efficacy Review; Anthrax Vaccine Adsorbed*, 70
Fed. Reg. 75,180 (Dec. 19, 2005).  As a result, the D.C. Circuit
held that this Court's permanent injunction had dissolved by its
own terms, dismissed the appeal as moot, and remanded the case to
this Court for further proceedings.  *Doe v. Rumsfeld*, 172 Fed.
Appx. 327 (D.C. Cir. 2006) (per curiam).  On remand, the only
remaining issue is plaintiffs' motion for attorneys' fees and
costs under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. §
2412(d).

4

**ANALYSIS**

Plaintiffs have filed an application for $508,310.44 in attorneys' fees and costs.  Defendants first contend that plaintiffs are not entitled to any fees and costs because defendants' position was substantially justified.  In the alternative, defendants contend that the proper award is much less than plaintiffs' request because (1) plaintiffs are not prevailing parties with regard to their appeal to the D.C. Circuit; (2) plaintiffs' requested rate for their counsel is above the statutory limit; and (3) plaintiffs' purported billable hours are too high because they improperly seek reimbursement for certain activities and their billing records are too vague.

## I. Substantial Justification

The EAJA provides that a prevailing party in a non-tort suit against the United States is entitled to fees and expenses unless the government's position was "substantially justified."  28 U.S.C. § 2412(d)(1)(A).  The Supreme Court has held that a position is substantially justified "if a reasonable person could think it correct, that is, if it has a reasonable basis in law and fact." *Pierce v. Underwood*, 487 U.S. 552, 556 (1988).  The D.C. Circuit has stated that "the hallmark of the substantial justification test is reasonableness." *Role Models Am., Inc. v. Brownlee*, 353 F.3d 962, 967 (D.C. Cir. 2004).  The government bears the burden of establishing that its position was

substantially justified.  *F.J. Vollmer Co., Inc. v. Magaw*, 102
F.3d 591, 595 (D.C. Cir. 1996).  Moreover, the government must
demonstrate the reasonableness of both the agency's actions as
well as its litigation position.  *Role Models*, 353 F.3d at 967.

The question of reasonableness cannot be collapsed into the
antecedent evaluation on the merits; it is a distinct legal
standard.  *F.J. Vollmer*, 102 F.3d at 595.  The court's reasoning
on the merits, however, may be quite instructive in resolving the
substantial justification issue.  *Id.*  For instance, a finding on
the merits that an agency's decision lacked substantial evidence
generally implies that the agency's decision was unreasonable.
*Id.*  In addition, if an agency failed "to enforce a rule where it
plainly applied," it is much more likely that the agency's
decision was not substantially justified.  *Id.*

Defendants contend that their position, at both the agency
level and during litigation, was reasonable because they
reasonably construed the 1985 proposed order as encompassing
approval of AVA for treating inhalation anthrax.  In support of
this position, defendants point out that the proposed order
classified AVA as a Category I drug and did not limit its
approval to a particular route of exposure.  If this view of the
proposed order was reasonable, then the agency's procedures would
have been proper because the 2003 final order would have been the
logical outgrowth of the proposed order.

In the 2004 opinion, the Court concluded that the proposed order did not encompasses approval of AVA against inhalation anthrax, especially in the context of a potential biological attack as AVA is used in the AVIP. *Doe*, 341 F. Supp. 2d at 15. The Court reached this conclusion by focusing on two key statements in the proposed order. The first is that the proposed order found AVA safe and effective for the "limited circumstances" of its usage at that time, specifically inoculating individuals in certain industrial settings who worked with animal furs and hairs. *Id.* The second is that the proposed order, in analyzing the Brachman study, found that the lack of data permitted no meaningful analysis of the AVA's effectiveness against inhalation anthrax. *Id.* Thus, the public was not on notice that AVA would be deemed safe and effective against inhalation anthrax. *Id.*

The question of whether defendants' litigation position was substantially justified is a close one. Even conceding that the Court's analysis was correct, defendants make the argument that their view of the proposed order was still reasonable. They argue that because the proposed order did not explicitly limit its approval of AVA to any particular route of exposure, it is at least reasonable to interpret the proposed order as covering all routes of exposure. The Court, however, finds more persuasive the argument that the proposed order could not have meant to

7

approve AVA for inhalation anthrax when it explicitly stated that
it found no evidence to prove AVA's effectiveness against
inhalation anthrax.  In fact, the 2003 final order had to
directly contradict the scientific conclusions in the proposed
order regarding the Brachman study in order to support the
position that AVA was effective against inhalation anthrax.  *See
id.* at 7.  Given the explicit qualifications in the proposed
order and the reversal in analysis in the 2003 final order, the
Court concludes that defendants' litigation position was not
substantially justified under the EAJA.

In addition, for the government's position to be
substantially justified, the agency's actions also must have been
reasonable.  *Role Models*, 353 F.3d at 967.  Plaintiffs contend
that the defendants' actions were clearly unreasonable when they
instituted the AVIP program without any final FDA order approving
the usage of AVA.  *See Doe v. Rumsfeld*, 297 F. Supp. 2d 119,
133-34 (D.D.C. 2003) (concluding that AVIP program violated
federal law and entering preliminary injunction because the FDA
had not issued a final order and no study proved AVA's
effectiveness against inhalation anthrax).  Rather than appeal
the Court's conclusions, the FDA abruptly altered course and
issued a final order merely eight days after the Court's 2003
opinion.  Such a response is indicative of the unreasonableness
of the agency's initial stance.  Given the unreasonableness of

8

the agencies' initial position before the lawsuit, and their
sharp changes in December 2003 – issuing a final order after 18
years that contradicted the proposed order – the Court concludes
that the government was not substantially justified in this case.

## II. Prevailing Party Status

Defendants contend that plaintiffs cannot be considered a
prevailing party with regard to the appeal to the D.C. Circuit.
"Normally, a prevailing party is entitled to attorney's fees for
work done on appeal." *Jean v. Nelson*, 863 F.2d 759, 770 (11th
Cir. 1988). Some courts, though, have held that if plaintiffs
"did not prevail on any legal issue or obtain any additional
relief" on appeal, then plaintiffs have not prevailed at that
stage of the litigation. *Id.; see also Clark v. City of Los
Angeles*, 803 F.2d 987, 993 (9th Cir. 1986) (holding that
attorney's fees should not be paid for appellate work when
"nothing associated with the appeal contributed to [the]
favorable result achieved by litigation").

However, "the prevalent approach to determining whether a
plaintiff is a prevailing party on appeal is to inquire whether
the plaintiff has prevailed in the litigation as a whole."
*Schneider v. Colegio de Abogados de Puerto Rico*, 187 F.3d 30, 48
(1st Cir. 1999). Thus, one court in this district has rejected
the idea of "bifurcat[ing] a determination of whether plaintiffs
prevailed on appeal from whether plaintiffs prevailed at trial

9

for purposes of determining eligibility of fees." *Dougherty v. Barry*, 820 F. Supp. 20, 25 (D.D.C. 1993). Instead, because plaintiffs ultimately prevailed on their claims, the court found plaintiffs "eligible for the reasonable fees and costs incurred on both the trial and appellate levels, including fees and costs incurred in defending on appeal specific issues which were ultimately decided against them." *Id.* In support of this position as well is the statutory language, which speaks of awarding fees and costs to a prevailing party in a "civil action" and does distinguish between different stages of the action. *See* 28 U.S.C. § 2412(d)(1)(A); *Dougherty*, 820 F. Supp. at 25.

In this case, there is no question that plaintiffs have prevailed overall as they achieved the permanent injunctive relief that they sought. *See Role Models*, 353 F.3d at 966 (holding that plaintiffs prevailed where they won an injunction that forestalled an agency's action until the agency properly complied with relevant regulations). It is also clear that plaintiffs did not receive any additional relief on appeal, or an affirmation of their position, because the appeal was mooted by the government's actions. Therefore, the question for the Court is whether awarding fees for plaintiffs' work on appeal is "reasonable" given their overall prevailing party status. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (holding that once

10

a party is determined to be prevailing, a court must decide what
fees are "reasonable").

The Court concludes that plaintiffs are entitled to fees and
costs relating to the appeal.  Plaintiffs were litigating on
appeal the very same issues on which they succeeded in this
Court.  The reason plaintiffs did not further succeed on appeal
is because defendants mooted the appeal by giving plaintiffs the
exact result they sought: revised action by the FDA.  If
defendants intended to accede to plaintiffs, they could have
saved plaintiffs the expense of litigating the appeal by simply
not appealing this Court's decision.  As plaintiffs incurred
additional expenses only because defendants unnecessarily pursued
an appeal initially, it is reasonable that plaintiffs should be
reimbursed for these expenses as they ultimately prevailed.
Thus, the Court rejects defendants' argument for reducing
plaintiffs' fees.

## III.  Proper Rate for Attorneys and Staff

Defendants contend that plaintiffs utilize an improperly
high rate for calculating their attorneys' fees.  The EAJA
specifically provides that "attorney fees shall not be awarded in
excess of $125 per hour unless the court determines that an
increase in the cost of living or a special factor, such as the
limited availability of qualified attorneys for the proceedings
involved, justifies a higher fee."  28 U.S.C. § 2412(d)(2)(A).

Defendants contend that all attorneys should be reimbursed no more than the EAJA maximum of $125 plus a cost of living adjustment.[1]  Plaintiffs contend that their attorneys' special qualifications entitle them to higher rates for fees. Specifically, plaintiffs rely on the their attorneys' expertise in the combined areas of military justice, administrative law, and national security.

The Supreme Court has interpreted the EAJA's rate clause narrowly, holding that enhanced rates are permitted only for "attorneys having some distinctive knowledge or specialized skill." *Pierce*, 487 U.S. at 572.  As examples, the Court has referred to "an identifiable practice specialty such as patent law, or knowledge of foreign law or language." *Id.*  The D.C. Circuit has interpreted this to mean that fee enhancement is available only for lawyers whose specialty "requir[es] technical or other education outside the field of American law." *Waterman Steamship Corp. v. Maritime Subsidy Bd.*, 901 F.2d 1119, 1124 (D.C. Cir. 1990).  The D.C. Circuit has also stated that expertise in administrative law in a particular area, such as communications, railroads, or firearms, does not entitle

---

[1]  Defendants calculated the cost of living increase by using the Consumer Price Index for all Urban consumers. *See Role Models*, 353 F.3d at 969.  Using this method, the maximum rate allowed for each year is $138.25 for 2000, $142.18 for 2001, $144.43 for 2002, $147.72 for 2003, $151.65 for 2004, $156.79 for 2005, and $161.05 for 2006. Defs.' Opp. at 19 n.6.

attorneys to enhanced fees under the EAJA. *F.J. Vollmer*, 102
F.3d at 598-99. The Circuit has also rejected the claim that
expertise in federal election law justifies a fee enhancement.
*In re Sealed Case 00-5116*, 254 F.3d 233, 236 (D.C. Cir. 2001).
Finally, this Court has previously rejected the assertion that
expertise in military administrative law is a basis for a fee
enhancement. *Lynom v. Widnall*, 222 F. Supp. 2d 1, 6-7 (D.D.C.
2002) ("Plaintiff's counsel's extensive experience in military
law is simply insufficient to warrant enhanced fees.").
Therefore, the Court concludes that plaintiffs are not entitled
to attorneys' fees more than the EAJA maximum of $125 plus a cost
of living adjustment.

Adjusting the billable rates for plaintiffs' attorneys will
require an extensive recalculation of plaintiffs' fee request.
The Court will not undertake this endeavor, but instead will deny
plaintiffs' motion for attorneys' fees without prejudice to
reconsideration of an amended request in compliance with this
opinion. As plaintiffs' request suffers from additional flaws,
the Court will provide further guidance for plaintiffs.

Plaintiffs have also sought fees for work done by legal
assistants. Plaintiffs have the burden of justifying the rates
for which these individuals are billed. *Role Models*, 353 F.3d at
969-70. Plaintiffs, however, have not submitted any information
about the relevant market rate and have "not even taken the basic

13

step of submitting an affidavit detailing the non-attorneys'
experience and education." *See id.* at 970.  Plaintiffs are
therefore required to justify the rates for the legal assistants
in their amended fee request.

## IV. Proper Accounting of Billable Hours and Costs

Under this Circuit's law, plaintiffs have the burden of
establishing the reasonableness of their fee request, and
"supporting documentation must be of sufficient detail and
probative value to enable the court to determine with a high
degree of certainty that such hours were actually and reasonably
expended." *Role Models*, 353 F.3d at 970.  In assessing
reasonableness, prevailing counsel "must make a good faith effort
to exclude from a fee request hours that are excessive, redundant
or otherwise unnecessary." *Hensley*, 461 U.S. at 434.  One
disfavored practice is submitting time records that "lump
together multiple tasks, making it impossible to review their
reasonableness." *Role Models*, 353 F.3d at 971.  Another flaw in
time records is inadequate detail, such as records that only
describe work as "research," "writing," or "participating in
teleconference." *Id.*  Finally, duplication of effort is another
basis on which fee requests can be deemed excessive.  *Id.* at 972.
Defendants contend that plaintiffs' fee request suffers from all
of these problems.  In addition, defendants contend that

14

plaintiffs' requested billable hours must be reduced for a variety of specific reasons, each of are analyzed in turn.

### A.  Media Contacts

Defendants contend that 29.5 hours should deducted from plaintiffs' request because they seek reimbursement for media contacts.  "In this circuit, the government cannot be charged for time spent in discussions with the press."  *Role Models*, 353 F.3d at 973.  Plaintiffs concede this argument.  Therefore, these hours should not be included in the amended fee request.

### B. Travel Time

Defendants contend that 16 hours should deducted from plaintiffs' request because they seek reimbursement for 32 hours of travel time.  Travel is time is supposed to be compensated at half the attorney's hourly rate.  *See Cooper v. U.S. R.R. Retirement Bd.*, 24 F.3d 1414, 1417 (D.C. Cir. 1994).  Plaintiffs concede this argument.  Therefore, these hours should not be included in the amended fee request.

### C. Admission to the Court

Defendants contend that 8.7 hours should deducted from plaintiffs' request because they seek reimbursement for time spent seeking admission to this Court.  A fee request cannot include such time because this Circuit has held that "the cost of joining the bar of this court [is] an expense of doing business not chargeable to clients – much less to the federal government."

15

*Role Models*, 353 F.3d at 973.  Plaintiffs concede this argument. Therefore, these hours should not be included in the amended fee request.

### D. Recovery for Matters Outside the Litigation

Defendants contend that plaintiffs' fee request inappropriately seeks reimbursement for matters outside this litigation.  Plaintiffs are only entitled to fees and costs arising in this "civil action."  28 U.S.C. § 2412(d)(1). Defendants specifically challenge plaintiffs' requests for reimbursement for (1) work on a Seventh Circuit case, (2) work related to a separate FOIA lawsuit, and (3) work related to the notice-and-comment period that resulted in the FDA's final order in 2005.  This last request relates to work that occurred after this Court's final judgment and appears more connected to plaintiffs' separate litigation over the 2005 order.  *See Doe v. Von Eschenbach*, 06-2131-RMC (D.D.C. 2006); *see also NAACP v. Donovan*, 554 F. Supp. 715, 720 (D.D.C. 1982) (indicating that fees are not available for work related to rulemaking proceedings).  Therefore, unless they provide a convincing explanation, plaintiffs should not seek reimbursement for these matters in the amended fee request.

### E. Work on an Unfiled Motion

Defendants contend that plaintiffs inappropriately seek reimbursement for work on a motion that was never filed.  This

16

motion was plaintiffs' motion for an order to show cause why
defendants should not be held in contempt for violating the
Court's permanent injunction.  The work on this motion, totaling
31.3 hours, occurred in February 2005, after the Court's
permanent injunction was entered.  Plaintiffs briefly claim that
this work was necessary to preserve the integrity of the
injunction.

Defendants argue that it is unreasonable to allow fees to be
paid for this work because it may have been unnecessary.  The
needlessness of the work was potentially unrevealed because
defendants never had the opportunity to oppose the motion.
Plaintiffs have not refuted this possibility because they have
not explained why the motion was necessary and yet never filed.
Without such an explanation, the Court cannot fully evaluate the
reasonableness of plaintiffs' request.  Therefore, unless they
provide a fuller explanation, plaintiffs should not seek
reimbursement for work on this motion in the amended fee request.

**F. Clerical Matters**

Defendants contend that plaintiffs inappropriately seek
reimbursement for clerical or administrative work.  Purely
clerical or secretarial tasks, which do not require the skills of
an attorney or legal assistant, cannot be included in a fee
petition.  *See Role Models*, 353 F.3d at 973.  Plaintiffs' fee
request includes numerous entries for updating files, downloading

17

documents, and sending documents.  Many of these tasks appear clerical or secretarial, and plaintiffs have not explained how the tasks require the skills of at least a paralegal.  Therefore, unless they provide an explanation, plaintiffs should not seek reimbursement for this work in the amended fee request.

### G. Attorney Zaid's Vague Entries

Defendants contend that many billing entries for attorney Mark Zaid are too vague to allow the Court to evaluate their reasonableness.  The D.C. Circuit has held that billing entries describing work only as "research," "writing," or "participating in teleconference" are inadequately detailed for fee petition purposes.  *Id.* at 971.  Many of Zaid's entries describe his work only as "E-mails," "Tel. conv" or "Online research."  Under the Circuit's standard, these entries are clearly too vague.  One possible remedy is to reduce plaintiffs' fee by certain percentage because of the vague entries.  *See id.* at 973 (allowing reimbursement for only fifty percent of the attorney hours that plaintiff requested because of "inadequate documentation, failure to justify the number of hours sought, inconsistencies, and improper billing entries").  Unless these entries are more detailed in plaintiffs' amended fee request, the Court will utilize this remedy.

18

### H.   Excessive Time on Appeal

Defendants contend that plaintiffs seek excessive
reimbursement for work related to the appeal.  Plaintiffs
retained twelve additional lawyers (besides the main attorneys –
Zaid and John Michels) to work on the appeal and, by defendants'
calculation, devoted 578 hours to the appeal.  Defendants argue
that it was excessive to involve twelve new lawyers on the case,
and that 578 hours was unnecessary as many of the legal issues
involved had been fully researched and discussed for proceedings
in this Court.  Plaintiffs briefly claim that such a large number
of attorneys and hours was necessary because of the "complexity
of the case and the fact that the record is so voluminous."  In
light of plaintiffs' perfunctory explanation, the utilization of
twelve new attorneys on appeal appears unreasonably excessive.
As a remedy, defendants recommend a 50% reduction in fees for the
extra twelve attorneys.  Unless plaintiffs' amended fee request
includes a more complete explanation for the work on appeal, the
Court will utilize this remedy.

### I. Expenses

Defendants challenge plaintiffs' request for expenses
related to its team of investigators.  Plaintiffs seek $15,000
for "its team of investigators and factual researchers who
assisted counsel in securing documents, analyzing the
administrative record, preparing a chronology of administrative

19

action regarding AVA and document management services."
Plaintiffs identify these individuals by name, but have not
supported this request with any details as to these individual's
activities other than to reference the times that they appear in
the attorneys' billing records.  Thus, the Court has no basis for
assessing the amount of time that these individuals devoted to
this case, what they did, how much they were paid, and thus
whether the requested reimbursement was reasonable.  Therefore,
unless they provide more complete documentation, plaintiffs
should not seek reimbursement for these expenses in the amended
fee request.

**J. Costs**

Defendants contend that most of plaintiffs' requested costs
cannot be reimbursed.  Under the EAJA, costs are limited to those
"enumerated in section 1920 of this title."  28 U.S.C. §
2412(a)(1).  As pertinent here, section 1920 limits recovery for
costs to (1) fees of the clerk or marshal, (2) fees for
transcripts, (3) fees for printing and witnesses, and (4) fees
for copying.  28 U.S.C. §§ 1920(1)-(4).  Plaintiffs, however,
have sought costs for overhead, secretarial services, taxi fares,
messenger costs, telephone bills, postage, meals, and travel,
which are not compensable in this circuit.  *See, e.g.*, *Hirschey
v. FERC*, 777 F.2d 1, 6 (D.C. Cir. 1985) (holding that taxi fares,
overhead, and secretarial services cannot be reimbursed); *Mass.*

*Fair Share v. Law Enforcement*, 776 F.2d 1066, 1069 (D.C. Cir. 1985) (holding that travel expenses, telephone bills, and postage are not compensable under EAJA). The only properly charged costs sought by plaintiffs are fees for copying and hearing transcripts. Thus, plaintiffs' amended request for costs should be limited to only those costs.

### CONCLUSION

The Court concludes that plaintiffs are entitled to fees and costs for litigating this action, including on appeal, because plaintiffs are the prevailing party and the government's position was not substantially justified. Plaintiffs' request for attorneys' fees and costs, however, contains flaws that preclude the Court from determining the proper amount of fees and costs in this case. Therefore, plaintiffs' motion for attorneys' fees is **DENIED without prejudice** to reconsideration of an amended request in compliance with this opinion. Plaintiffs are directed to file an amended motion for attorneys' fees in light of this opinion by no later than September 28, 2007. In the alternative, if the parties seek to negotiate a fee award, the parties shall file a joint status report and recommendation for future proceedings by no later than September 28, 2007. An appropriate Order accompanies this Memorandum Opinion.

**Signed:    Emmet G. Sullivan**
**United States District Judge**
**August 21, 2007**

21