**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**


THOMAS L. REMPFER, *et al.*,          :
                                       :
          Plaintiffs,                  :
                                       :
     v.                                      Civil Action No. 05-2350 (JR)
                                       :
U.S. DEPARTMENT OF AIR FORCE     :
BOARD FOR CORRECTION OF MILITARY :
RECORDS, *et al.*,                     :
                                       :
          Defendants.                  :


**MEMORANDUM**


          Plaintiffs Thomas L. Rempfer and Russell E. Dingle[1]
were officers and pilots with the Connecticut Air National Guard
("CTANG").  Their complaint alleges that they were forced to
resign after they refused to comply with an illegal order to be
vaccinated for anthrax.  Under the Administrative Procedure Act
and the Declaratory Judgment Act, plaintiffs seek judicial review
of their underlying terminations and of the orders of the Air
Force Board for Correction of Military Records ("AFBCMR") denying
their applications for record correction and other relief.
Pursuant to Fed. R. Civ. P. 12(b)(1) and (b)(6), the defendants
move to dismiss the complaint.  For the reasons explained below,
that motion will be **granted** in part and **denied** in part.

---

          [1] Mr. Dingle died in September 2005 and is represented in
this action by Jane Dingle, the executor of his estate.

**Background**

A. Factual Background

In December 1997, the Department of Defense announced a policy under which all members of the armed forces would be vaccinated for anthrax. Compl. at ¶ 5. The Anthrax Vaccination Immunization Program ("AVIP") went into effect in March 1998. Id. at ¶ 6. Colonel Walter Burns, the Wing Commander of plaintiffs' CTANG unit, assigned Rempfer and Dingle to Tiger Team Alpha, whose job it was to investigate the AVIP "in order to allay unit concerns." Id. at ¶ 8. The Tiger Team raised concerns about what it characterized as the off-label, experimental and investigational use of Anthrax Vaccine Adsorbed ("AVA") against inhalation anthrax. Although these concerns were relayed up the chain of command by Colonel Burns, questions that Rempfer and Dingle had raised about the efficacy and safety of the vaccine were never answered to their personal satisfaction. Faced with an order to be vaccinated or be disciplined, both plaintiffs sought reassignment from CTANG to the U.S. Air Force Reserves. Rempfer was honorably discharged from CTANG on March 25, 1999, as was Dingle, on April 3, 1999. Both were immediately transferred to the Air Force Reserves.

The final Officer Performance Reports ("OPRs") completed by plaintiffs' superiors at CTANG prior to their discharges made no reference to their duties on Tiger Team Alpha

or to their objections to the anthrax vaccination program.
Following their discharges, both plaintiffs filed applications
with the Air Force Board for Correction of Military Records
asserting that the anthrax vaccination program was illegal and
that they had been improperly discharged due to their refusal to
be inoculated.  A.R. 0003TLR-0010TLR; A.R. 0004RED-0008RED.  Both
requested amendment of their OPRs to reflect their duties with
Tiger Team Alpha as well as compensatory relief for back pay and
lost promotions.  Rempfer also sought reinstatement as a CTANG
pilot.  In support of their contention that the vaccination order
was illegal, both applications relied upon Doe v. Rumsfeld, 297
F. Supp. 2d 119 (D.D.C. 2003), in which Judge Sullivan enjoined
the Department of Defense from proceeding with involuntary
anthrax vaccinations based on the conclusion that, as of December
2003, AVA had not been licensed or approved for use against
inhalation anthrax.

        The AFBCMR denied both plaintiffs' applications for
record correction.  In a letter dated April 25, 2005, the AFBCMR
informed Rempfer of its conclusion that there was insufficient
evidence of error or injustice to warrant amendment of his OPR
and that it lacked authority to reinstate him in the CTANG.
Compl. ¶ 20; A.R. 0008TLR-0009TLR.  The Board stated the
following in regard to Rempfer's constructive discharge claim:

        [T]he Board notes [that] the Chief, Administrative
        Law Division, states that Doe v. Rumsfeld is still

> being litigated.  Therefore, it would not be
> prudent for the Board to take any other action on
> this application until the litigation has been
> finalized.  Should the plaintiffs prevail against
> the Secretary of Defense, the Board would be
> willing to reconsider the applicant's requests.
> Therefore, we find no compelling basis at this
> time to recommend granting the relief sought in
> this application.

A.R. 0008TLR- 0009TLR.  Dingle's application was denied on the

same grounds on March 6, 2006.  A.R. 0003RED-0007RED.  Both

plaintiffs filed for reconsideration, and were notified in March

2007 that their claims had again been denied.  Pls.' A.R.

0018RED-0020RED.[2]  In these decisions, the Board noted

developments in the Doe v. Rumsfeld litigation and concluded that

the Doe plaintiffs "did not in fact prevail against the Secretary

of Defense."  Pls.' A.R. 0006TLR; Pls.' A.R. 0020RED.  As such

the Board found "no compelling basis to recommend granting the

relief sought in this application."  Id.  On April 20, 2007,

plaintiffs filed their first amended complaint in this case,

seeking APA and Declaratory Judgment Act review of their

underlying discharges and of the AFBCMR decisions denying their

applications for record correction and other relief.

---

[2] The AFBCMR's reconsideration decisions are not included in
the version of the administrative record submitted to the Court
by the defendants.

B. Legal Framework

Background on the AFBCMR and on the contours of the Doe
v. Rumsfeld litigation is needed in order to put the plaintiffs'
claims in context.

1. AFBCMR

The AFBCMR is a civilian board that is empowered under
authority delegated to it by the Secretary of Defense to amend
military records.  10 U.S.C. § 1552.  Records may be corrected
when "necessary to correct an error or remove an injustice."  Id.
at § 1552(a)(1).  The Board "normally decides cases on the
evidence of the record."  32 C.F.R. § 865.2c).  Although it is
not an investigative body, the Board may, in its discretion, hold
hearings or call for the submission of additional evidence.  Id.
In proceedings before the Board, the applicant "has the burden of
providing sufficient evidence of probable material error or
injustice."  32 C.F.R. § 865.4(a).

2. Doe v. Rumsfeld

The plaintiffs in the Doe litigation were members of
the armed forces who, like Rempfer and Dingle, were ordered to
submit to anthrax vaccination.  In a suit filed on March 18,
2003, the Doe plaintiffs argued that AVA was an investigational
drug unapproved for use against inhalation anthrax.  As such,
they maintained that the AVIP violated 1) 10 U.S.C. § 1107, a law
which prohibits, absent a waiver from the President, the

- 5 -

administration of new, investigational drugs or drugs unapproved
for their intended use to service members without their informed
consent; 2) Executive Order 13139, 64 Fed. Reg. 54175 (Sept. 30,
1999), which states that each individual service member must give
his informed consent before the Department of Defense can
administer an investigational drug and that presidential waivers
will be granted only "when absolutely necessary"; and
3) Department of Defense Directive 6200.2, which formally adopted
these requirements.  While AVA had long been licensed for use
against cutaneous (skin) anthrax, the Doe plaintiffs' main
contention was that it had not been tested or licensed for use
against inhalation anthrax, protection against which was the goal
of the military's vaccination program.  The defendants argued
that AVA's license covered use against inhalation anthrax and
that, accordingly, it was not an investigational drug under the
relevant FDA regulations, 21 C.F.R. § 601.25.  In his
December 22, 2003 opinion, Judge Sullivan sided with the
plaintiffs, concluding that, given the military's intended use,
"AVA is an investigational drug and a drug being used for an
unapproved purpose."  Doe, 297 F. Supp. 2d at 135.  Judge
Sullivan granted the Doe plaintiffs' request for a preliminary
injunction enjoining the defendants, in the absence of a
presidential waiver, from inoculating service members with AVA.

Eight days after Judge Sullivan issued his preliminary injunction, the FDA took action on a proposed rule regarding AVA that had been pending for eighteen years.  See Rumsfeld v. Doe, 341 F. Supp. 2d 1, 6 (D.D.C. 2004).  In a final rule and order issued on December 30, 2003, the FDA found that AVA was safe and effective "independent of the route of exposure" and, consequently, should not be classified as investigational in regard to protection against inhalation anthrax.  69 Fed. Reg. 255, 260 (Jan. 5, 2004).  On October 27, 2004, after finding that the FDA failed to follow notice and comment procedures required by the APA and by its own regulations, Judge Sullivan vacated this rule and order.  Doe, 341 F. Supp. 2d at 16.  With the FDA's final rule and order vacated, the case reverted back to where it stood when the preliminary injunction was first issued on December 22, 2003.  Given the clear statutory prohibition on forced exposure to investigational drugs, 10 U.S.C. § 1107, Judge Sullivan issued a permanent injunction, requiring that "[u]nless or until FDA follows the correct procedures to certify AVA as a safe and effective drug for its intended use, defendant DoD may no longer subject military personnel to involuntary anthrax vaccinations absent informed consent or Presidential waiver." 341 F. Supp. 2d at 16.

While the case was on appeal, the FDA initiated a notice and comment period and, in December 2005, issued a new

final order, "explicitly finding AVA efficacious against

inhalation anthrax." Doe v. Rumsfeld, 501 F. Supp. 2d 186, 188

(D.D.C. 2007)(discussing 70 Fed. Reg. 75180 (Dec. 19, 2005)).

Because the injunction remained in effect only "[u]nless and

until FDA properly classifies AVA as a safe and effective drug

for its intended use," Doe, 341 F. Supp 2d at 19, the Court of

Appeals held that the injunction had dissolved by its own terms.

Doe v. Rumsfeld, 127 Fed. App'x 327 (D.C. Cir. 2006).  The appeal

was dismissed as moot. Id. at 328.

C. Procedural Posture

        In this case, the defendants have filed a motion to

dismiss.  Defendants assert that Counts I and III, seeking

judicial review of the plaintiffs' underlying

resignations/constructive discharges, are untimely.  They also

argue that Count II, for APA review of the AFMCMR decisions

denying record correction and other relief, fails on the merits

and should be dismissed.

**Analysis**

A. Counts I and III

        Pursuant to Fed. R. Civ. P. 12(b)(1), the defendants

assert that the Court lacks subject matter jurisdiction to review

plaintiffs' claims in Count I and III because they are untimely.

Both counts are rooted in the same set of allegations: that

plaintiffs were illegally ordered to be vaccinated with AVA and

that, when they refused, they were forced out of the CTANG.

While Count I is for APA review of the defendants' actions, Count

III, pled under the Declaratory Judgment Act, is functionally

identical in that it seeks a declaration that defendants' actions

leading up to plaintiffs' purported constructive discharges were

illegal.  Under 28 U.S.C. § 2401(a), civil actions "commenced

against the United States shall be barred unless the complaint is

filed within six years after the right of action first accrues."

This limitation period applies to claims brought under the

Administrative Procedure Act and the Declaratory Judgment Act.

See Impro Products, Inc. v. Block, 722 F.2d 845, 850 n.8 (D.C.

Cir. 1983); P&V Enters. v. United States Army Corps of Eng'rs,

466 F. Supp. 2d 134 (D.D.C. 2006).  Each plaintiff filed more

than six years after his discharge.  Rempfer was discharged on

March 25, 1999.  Dingle was discharged on April 3, 1999.  This

action was not filed until December 8, 2005.

        Plaintiffs nonetheless assert that Counts I and III are

timely because 1) the statute of limitations was automatically

tolled while they sought redress from the AFBCMR and 2) alleged

misconduct by the defendants entitles them to equitable tolling.

Neither of these assertions is correct.

        To understand the effect of AFBCMR review on the

statute of limitations, it is necessary to keep in mind that

there are two kinds of claims that can be brought by a service

member challenging his discharge.  A claim seeking review of the
underlying discharge is distinct from a claim seeking review of
an adverse decision by a Corrections Board -- "the focus of the
former is on the action of discharge officials whereas the focus
of the latter is on the action of the [Corrections] Board."
Blassingame v. Secretary of Navy, 811 F.2d 65, 72 (2d Cir. 1987)
rev'd on other grounds after remand 866 F.2d 556 (1989).  For
claims challenging the discharge itself, the "§ 2401(a)
limitation period begins to run when a service member's discharge
is final."  Kendall v. Army Bd. For Correction of Military
Records, 996 F.2d 362, 366 (D.C. Cir. 1993) (citing Walters v.
Secretary of Defense, 725 F.2d 107, 114 (D.C. Cir. 1983)).  In
other words, Board of Corrections review does not delay the
accrual of a cause of a action arising directly from an allegedly
illegal discharge.  Walters, 725 F.2d at 114.  When the plaintiff
is challenging an adverse decision by the Board, that claim
"accrues at the time of the final agency decision, or the
exhaustion of all administrative remedies, rather than at the
time when the underlying discharge or alleged coerced resignation
occurred."  Lebrun v. England, 212 F. Supp. 2d 5, 11 (D.D.C.
2002) (citing Blassingame, 811 F.2d at 71; Dougherty v. United
States Navy Bd. for Corr. of Naval Records, 784 F.2d 499, 501-02
(3d  Cir. 1986); Geyen v. Marsh, 775 F.2d 1303, 1306 (5th Cir.
1985); Smith v. Marsh, 787 F.2d 510, 512 (10th Cir. 1986)).

Because Counts I and III arise directly from plaintiffs'
allegedly coerced resignations -- which occurred more than six
years ago -- these claims are untimely.

Equitable tolling is not available to the plaintiffs
because the Court of Appeals "has long held that section 2401(a)
creates 'a jurisdictional condition attached to the government's
waiver of sovereign immunity.'" P&V Enters. v. United States
Army Corps of Eng'rs, No. 07-5060, slip op. at 11 (D.C. Cir.
Feb. 19, 2008) (quoting Spannaus v. U.S. Dep't of Justice, 824
F.2d 52, 55 (D.C. Cir. 1987)).  However, even if the Court of
Appeals were to reconsider and reverse its position on the
jurisdictional nature of § 2401(a) in light of intervening
Supreme Court precedent,[3] the plaintiffs could not show that they
are entitled to equitable tolling, which is available "only in
extraordinary and carefully circumscribed circumstances." Smith-
Haynie v. District of Columbia, 155 F.3d 575, 580 (D.C. Cir.
1998) (internal citation omitted).  The gist of plaintiffs'
argument in favor of tolling is that "the records that would
prove their constructive discharge and compelled resignations
were in the possession of the military," which was "less than
forthcoming about what had happened."  [Dkt. 20 at 9-10].

---

[3] See John R. Sand & Gravel Co. v. United States, 128 S. Ct.
750, 755-56 (2008); Bowles v. Russell, 127 S. Ct. 2360, 2365-66
(2007); Irwin v. Department of Veterans Affairs, 498 U.S. 89, 93-
96 (1990).

Plaintiffs' grievance here is that it took two years, from 1999

until 2001, for Rempfer's FOIA requests to be resolved and for

him to receive all of his records.  While "[e]quitable tolling

permits a plaintiff to avoid the bar of the limitations period if

despite all due diligence she is unable to obtain vital

information bearing on the existence of her claim," Smith-Haynie,

155 F.3d at 579, plaintiffs cannot make the requisite showing of

diligence in this case.  Plaintiffs have not explained how

Rempfer's difficulty in receiving his records affected Dingle's

claims, nor have they pointed to any action by the defendants

from 2001 up until the limitations period elapsed years later in

2005 that prevented them from actively and timely pursuing their

claims.

B. Count II

        Count II asserts that the AFBCMR decisions at issue

violate the APA because they are "arbitrary, capricious, an abuse

of discretion, or otherwise not in accordance with law."  5

U.S.C. § 706(2)(A).  Pursuant to Fed. R. Civ. P. 12(b)(6), the

defendants move to dismiss this claim on the merits, arguing that

plaintiffs cannot show that the AFBCMR deviated from the

standards of decision-making required under the APA.  See

Marshall County Health Care v. Shalala, 988 F.2d 1221, 1226 (D.C.

Cir. 1993) (explaining that when an agency action is challenged,

"[t]he entire case on review is a question of law" which may be resolved on a Rule 12(b)(6) motion to dismiss).

Congress has granted the Secretary of Defense broad discretion in deciding whether to correct a military record. Under 10 U.S.C. § 1552(a), the Secretary (and, by delegation, a civilian corrections board) is authorized to act *when he considers it necessary* to correct an error or remove an injustice." Id. § 1552(a) (emphasis added).  In certain circumstances, this statute allows the Board of Corrections to decide "that it is not necessary to alter an applicant's military record in order to correct even an undisputed error or to remove even a conceded injustice."  Kreis v. Secretary of the Air Force, 866 F.2d 1508, 1514 (D.C. Cir. 1989).  For example, it would be within the Board's discretion "not to correct an error upon which nothing turns by reason of mootness, lack of harm to the person in question, or inability by such correction to redress the harm claim."  Id.  At the same time, the Board's discretion is not so broad as to render its decisions unreviewable – it must still "give a reason that a court can measure, albeit with all due deference, against the 'arbitrary or capricious' standard of the APA."  Id. at 1514-15; see also Cone v. Caldera, 223 F.3d 789, 791 (D.C. Cir. 2000) (explaining that decisions of military boards of correction are subject to an "unusually deferential application of the arbitrary or capricious standard . . . .

calculated to ensure that the courts do not become a forum for
appeals by every soldier dissatisfied with his or her ratings, a
result that would destabilize military command and take the
judiciary far afield of its area of competence") (internal
citation and quotation marks omitted).

### 1. Rempfer's Application for Record Correction

Turning first to Thomas Rempfer's case, he requested
i) that his Officer Performance Report be amended to include
details of his work with Tiger Team Alpha; ii) that his discharge
be documented as an illegal constructive termination; iii) that
he receive "direct back pay, longevity, lost 'command pilot'
rating, and reinstatement to rank commensurate with [his]
position upon return, plus lost pay for lost rank"; and
iv) reinstatement as a CTANG pilot.  A.R. 0010TLR-0012TLR.

#### *a. OPR Amendment*

The Board denied Rempfer's request to amend his Officer
Performance Report, stating that "an OPR is considered accurate
as written and without rating chain support the Board is not
inclined to change the report."  A.R. 0008TLR.  In requesting
amendment, Rempfer had the burden of proving that omission of his
Tiger Team duties in his OPR constitutes material error or
injustice.  32 C.F.R. § 865.4(a).  Before the Board and before
this Court, Rempfer has failed to show that his CTANG supervisor
was required to mention to his role on the Tiger Team, or that

there are concrete, adverse consequences flowing from the
omission of these duties.  As such, the AFBCMR's refusal to amend
is neither arbitrary or capricious nor otherwise in violation of
law.

                  *b. Reinstatement*

        The AFBCMR denied this request, explaining that it
lacks the authority to require the Connecticut Air National Guard
to reinstate Rempfer.  A.R. 0008TLR.  Rempfer, whose discharge
order was signed by the Governor of Connecticut, has not shown
otherwise.  <u>See</u> Dkt. 11, Ex. 2 at 4.  This decision will be
affirmed.

           *c. Constructive Discharge and Compensatory Relief*

        In denying Rempfer's request that his (alleged)
constructive discharge be documented as illegal and that he be
compensated for it, the AFBCMR relied solely on the fact that
"<u>Doe v. Rumsfeld</u> is still being litigated[,]" reasoning that "it
would not be prudent to take any other action on this application
until the litigation has been finalized."  A.R. 0008TLR.  In
other words, rather than decide Rempfer's claim on the merits,
the Board punted.  In response to Rempfer's request for
reconsideration, the Board made no explicit mention of
constructive discharge and compensatory relief claims and instead
stated the following:

        We originally agreed that should the
        plaintiffs in <u>Doe v. Rumsfeld</u> prevail we

> would reconsider the applicant's request to
> change his OPR for the period 9 July 1998 to
> 14 December 1998 to more fully represent his
> accomplishments.  After careful and
> deliberate review of the HQ USAF/JAA
> advisory drafted 19 September 2006, we
> conclude that the plaintiffs in Doe v.
> Rumsfeld did not in fact prevail against the
> Secretary of Defense.  Therefore, in the
> absence of evidence to the contrary, we find
> no compelling basis to recommend granting
> the relief sought in this application.

Pls.' A.R. 0005TLR-0006TLR.  This statement merits at least two

responses.  First, it is not an accurate characterization of the

Board's original decision, which denied Rempfer's OPR claim on

the merits while reserving judgment on his constructive discharge

claims.  Second, it does not accurately describe the outcome of

the Doe litigation.  As Judge Sullivan explained in an opinion

awarding attorneys' fees to the Doe plaintiffs, "there is no

question that the plaintiffs have prevailed overall as they

achieved the permanent injunctive relief that they sought."  Doe

v. Rumsfeld, 501 F. Supp. 1d 186, 191 (D.D.C. 2007).  That the

injunction dissolved on its own terms before the Court of Appeals

could review the underlying controversy hardly diminishes the Doe

plaintiffs' success: "The reason plaintiffs did not further

succeed on appeal is because defendants mooted the appeal by

giving plaintiffs the exact result they sought: revised action by

the FDA."  Id.

Rempfer's constructive discharge and compensatory

relief claims must accordingly be remanded to the AFBCMR.  When

an agency has "entirely failed to consider an important aspect of
the problem [or has] offered an explanation for its decision that
runs counter to the evidence before [it]," the agency's decision
cannot be upheld under the APA's arbitrary and capricious
standard of review.  Motor Vehicle Mfrs. Ass'n v. State Farm Mut.
Auto. Ins. Co., 463 U.S. 29, 43 (1983).  In failing to address
Rempfer's constructive discharge and compensatory relief claims,
the Board's reconsideration decision falls short of the decision-
making standards required by the APA.  Moreover, even if the
reconsideration decision could be construed as actually deciding
these claims, it could not be upheld on the Board's reasoning.
Contrary to the Board's conclusion, the plaintiffs in the Doe
litigation clearly prevailed.  To base denial of Rempfer's
constructive discharge and compensatory relief claims on the
fiction that the Doe plaintiffs lost would be arbitrary and
capricious.

### 2. Dingle's Application for Record Correction

Russell Dingle requested I) that his Officer
Performance Report be amended to include details of his work with
Tiger Team Alpha; ii) that his discharge be documented as an
illegal constructive termination; and iii) that he receive "back
pay and allowances, plus lost rank/promotion and points caused by
the illegal constructive discharge."  A.R. 0005RED.

*a. OPR amendment*

In its initial decision, the Board denied Dingle's
request to have his OPR amended for the exact same reasons that
it denied Dingle's request.  A.R. 0006RED.  Because Dingle has
likewise failed to show either material error or injustice
resulting from the Board's decision on this claim, that decision
must be upheld.

*b. Constructive Discharge and Compensatory Relief*

In Dingle's initial application to the AFBCMR, the
Board deferred ruling on his constructive discharge and
compensatory relief claims for the same reason as in Rempfer's
case – the Doe litigation remained pending.  A.R. 0006RED-
0007RED.  In its reconsideration decision, the Board likewise
refused to address these claims head-on, stating as it had in
Rempfer's case that Dingle's OPR would not be amended because
"the plaintiffs in Doe v. Rumsfeld did not in fact prevail
against the Secretary of Defense."  Pls.' A.R. 0020RED.  For the
reasons already stated, this decision cannot be sustained in
accordance with Section 706(2)(A) of the APA.

## Conclusion

Taken as a whole, Judge Sullivan's decisions in Doe v.
Rumsfeld conclude that, prior to the FDA's December 2005
rulemaking, it was a violation of federal law for military
personnel to be subjected to involuntary AVA inoculation because

- 18 -

the vaccine was neither the subject of a presidential waiver nor

licensed for use against inhalation anthrax.  While the

undisturbed factual and legal findings of the <u>Doe</u> litigation are

clear, their impact on Rempfer and Dingle's claims before the

AFBCMR is not.  Other courts have affirmed the legality of pre-

2005 orders subjecting military personnel to involuntary anthrax

vaccination, although they did so without giving detailed

consideration to the implications of the FDA's licensing

requirements.  <u>See</u> <u>Mazares v. Dep't of the Navy</u>, 302 F.3d 1382,

1385 (Fed. Cir. 2002); <u>O'Neil v. Sec. of the Navy</u>, 76 F. Supp. 2d

641, 645 (W.D. Pa 2001).

On remand, the Board must reach the issue and explain

its conclusions about the merits of plaintiffs' constructive

discharge claims and their accompanying demands for compensatory

relief.  This Court does not assume that the AFBCMR must

necessarily pass on the legality of pre-2005 involuntary AVA

vaccination in order to decide plaintiffs' constructive discharge

claims.  Should the Board address that underlying question on

remand, this Court takes no position on whether the AFBCMR ought

consider itself bound by <u>Doe</u>'s legal and factual conclusions.

That said, the basis of the Board's conclusions may impact the

kind of deference they are owed should plaintiffs again seek

federal court review.  For example, it is unlikely an

interpretation by the AFBCMR of federal statutes governing the

drug approval process would be entitled to significant deference.

See S. Co. Servs. v. FCC, 313 F.3d 574, 579 (D.C. Cir. 2002)

("Chevron deference to an agency's interpretation of a statute is

due only when 'it appears that Congress delegated authority to

the agency generally to make rules carrying the force of law, and

that the agency interpretation claiming deference was promulgated

in the exercise of that authority.'") (quoting United States v.

Mead Corp., 533 U.S. 218, 226-27 (2001)).

An appropriate order accompanies this memorandum.


                                    JAMES ROBERTSON
                            United States District Judge